KM

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Matthew Phillip Solan,
Plaintiff,
v.
State of Arizona, *et al.*,
Defendants.

No. CV-24-02061-PHX-JJT (DMF)

**ORDER**

Self-represented Plaintiff Matthew Phillip Solan, who is confined in the Arizona State Hospital, has filed a civil rights Complaint (Doc. 1) pursuant to the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) paid the filing and administrative fees. The Court will order Defendant State of Arizona to answer Counts One and Four of the Complaint and will dismiss the remaining claims and Defendants without prejudice.

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does

not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe [self-represented litigant's] filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a self-represented prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II. Complaint

In his four-count Complaint, Plaintiff sues Defendants State of Arizona, Arizona Department of Health Services (ADHS) Cabinet Executive Officer Jennifer L. Cunico, and ADHS Deputy Director/Arizona State Hospital (ASH) Chief Executive Officer Michael R. Sheldon. Plaintiff seeks declaratory and injunctive relief and monetary damages.

Plaintiff is 35 years old and diagnosed with multiple disabilities including autism spectrum disorder, Post-Traumatic Stress Disorder, and Chronic Inflammatory Response Syndrome (Doc. 1 at 3-4.)[1] Plaintiff was admitted to the ASH Forensic Hospital on April 1,

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

TERMPSREF

2020, after being adjudicated Guilty Except Insane, and is designated as Seriously Mentally Ill.[2] According to Plaintiff, his criminal sentence was suspended "by substantive modifications to [Arizona Revised Statutes section] 13-502(D), which came into effect on January 1, 2023." (*Id.* at 7.)

In 2019, Plaintiff was separated from his service dog, Foxy, when he was arrested and placed in a detention facility. (*Id.* at 8.) Upon arriving at ASH, Plaintiff "requested a reasonable accommodation for Foxy to live with him." (*Id.*) The request was denied due to security, health, and safety concerns, and "an alleged burden on staff resources." (*Id.*) Plaintiff contested the decision, but the accommodation was repeatedly denied. Plaintiff filed a lawsuit and Motion for Preliminary Injunction in this Court, *Solan v. Arizona State Hospital*, CV-20-02209-PHX-JJT (DMF), contending ASH's refusal to accommodate his service animal violated the ADA. On March 22, 2022, the Court granted Plaintiff's Motion for Preliminary Injunction and ordered ASH to conduct a particularized assessment to determine whether reasonable modifications could be made to allow Plaintiff to have Foxy while housed at the Forensic Hospital and whether Foxy specifically would be disruptive to the health or safety of other patients in Plaintiff's unit. (*Id.* at 9.) According to Plaintiff, ASH's then Chief Executive Officer delivered a Particularized Assessment letter that did not conform with the Court's Order and included "outrageous accusations" that Plaintiff had touched Foxy inappropriately or intended to do so. (*Id.* at 10-11.) On April 6, 2022, attorney Holly Geiszl filed a Notice of Appearance on Plaintiff's behalf. (*Id.* at 12.) On July 13, 2022, Plaintiff was informed that Foxy had died. (*Id.*) The parties later stipulated to the dismissal of CV-20-02209 as moot.

Plaintiff, "[f]aced with the imminent choice to either clone Foxy or terminate his temporal existence and join with Foxy on the astral plan," opted to clone Foxy and

---

[2] On March 12, 2020, Plaintiff was convicted in the Coconino County Superior Court of one count of aggravated assault and sentenced to a 7.5-year term of imprisonment in the Arizona Department of Corrections, under the jurisdiction of the Psychiatric Security Review Board, and committed to ASH. *See* https://apps.supremecourt.az.gov/publicaccess/minutes.aspx, search "Court" for "Coconino County Superior" and "Case Number" for "CR-201900357"; select hyperlink for "3/12/2020 Minute Entry") (last accessed Nov. 13, 2024).

"commissioned a somatic cell culture from Foxy's tissue samples." (*Id.* at 13.) In July 2023, Plaintiff sold his house and used the proceeds to obtain a puppy that was a genetic clone of Foxy. (*Id.* at 13-14.) The cost of the procedure was $50,000. (*Id.* at 40.) The new puppy was born in November 2023, and Plaintiff "named the reincarnated puppy 'Foxy.'"[3] (*Id.* at 13.)

Plaintiff's "general agent" took custody of the puppy and provided basic training and care. (*Id.* at 14.) In May 2024, Foxy II completed advanced obedience and foundational service animal training. After several weeks of training, Foxy II "could consistently perform Deep Pressure Therapy (DPT), basic alerting tasks, and operate peaceably in public as a social buffer." (*Id.*) Plaintiff contends that "from that point, though the date of this Complaint, Foxy [II] met the definition of a service animal under the ADA." (*Id.* at 15.)

On June 13, 2024, Plaintiff "submitted [a] reasonable accommodation request letter to Defendant Sheldon via U.S.P.S certified mail," notifying ASH that Plaintiff was seeking a reasonable accommodation for Foxy II. (*Id.*) The letter explained that Foxy had been cloned and that Foxy II had completed professional training to be a service dog and was healthy, fully vaccinated, and well-trained. (*Id.*) The letter also explained Plaintiff's substantial investment in cloning and training. (*Id.*)

On July 5, 2024, ASH responded with a one-page denial letter stating that the "Hospital will not modify its existing policies, practices and/or procedures to allow for a service animal at the Forensic Hospital." (*Id.* at 16.) The Hospital based its denial on the same therapeutic, security, financial, and staffing concerns raised in the previous lawsuit. Plaintiff contends the assertion that Plaintiff intends to have sexual relations with the dog "is patently false, has no basis in reality, and accordingly has no evidentiary support," as is the contention that the presence of Plaintiff's service animal would be counter-therapeutic. (*Id.* at 17.)

. . . .

---

[3] To avoid confusion, the Court will refer to this animal as "Foxy II."

Plaintiff contends he has experienced "distress, anguish, and heightened mental health symptoms, including hyper-vigilance, nightmares, flashbacks, sensory overload, increased anxiety, suicidal ideation, and self-injurious stimming behavior, without his service animal present to perform the tasks that alleviate these symptoms." (*Id.* at 18.) Plaintiff has also been forced to pay expenses to board Foxy II with his "general agent," past the time needed for her training. (*Id.*)

In **Count One**, Plaintiff claims he is a qualified individual under the ADA and Defendants wrongfully denied Plaintiff reasonable accommodation of a service dog, Foxy II. Plaintiff contends Defendants were required to conduct a fact-specific investigation to determine what constitutes a reasonable accommodation. Plaintiff asserts that after receiving his request for a reasonable accommodation, the State never consulted Plaintiff or any qualified experts but instead summarily denied the requests and "unleashed an outrageous attack on Plaintiff's relationship with Foxy." (*Id.* at 23.) Plaintiff claims the State continues to discriminate against Plaintiff on the basis of his disabilities, thereby denying him the benefits of the services, programs, or activities of ASH, in violation of the ADA. (*Id.*)

In **Count Two**, Plaintiff claims Defendant have violated Title III of the ADA. According to Plaintiff, ASH and the land on which it is located are not owned by the State, but are owned by the ASH Trust, which is administered by the ADHS Director. (*Id.* at 19-20.) Plaintiff asserts he is a special beneficiary of the ASH Trust and has standing to sue the Trustee because he is a patient confined on the real property of the ASH Trust, and "his subsistence is contingent upon the daily corody provided out of the ASH Trust corpus by the Trustee through her agents." (*Id.* at 20.) Plaintiff claims Defendant Cunico is "ex officio trustee of the ASH Trust, and as such . . . held legal title to, and administrative responsibilities over, the ASH land and facilities, and as such was owner of ASH for the purposes of 42 U.S.C. § 12182(a)." (*Id.* at 25.) Plaintiff asserts that by denying Plaintiff's request to be accompanied by Foxy II on the ASH property, Defendant Cunico violated Title III of the ADA. (*Id.*)

In **Count Three**, Plaintiff alleges Defendants retaliated against Plaintiff, in violation of 42 U.S.C. § 12203, by making false accusations of animal abuse and bestiality against Plaintiff. (*Id.* at 26.) Plaintiff alleges the retaliation was in response to Plaintiff "making an eminently reasonable request for a service animal accommodation, and/or for opposing . . . the State's illegal anti-service dog policies and/or practices." (*Id.*) Plaintiff claims he suffered "humiliation, anxiety, indignity, and significant mental and emotional anguish." (*Id.*)

In **Count Four**, Plaintiff claims Defendants' actions violated Section 504 of the Rehabilitation Act (RA) and asserts ASH receives federal funds.

## III. Failure to State a Claim

### A. Title II Claims against Individual Defendants

Under the plain language of Title II of the ADA, a public entity must deny Plaintiff the benefit of a service or program. Therefore, Plaintiff may not maintain an action against individual officers or officials in their individual capacity. *Walsh v. Nevada Dept. of Human Resources*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("individual defendants cannot be held personally liable for violations of the ADA"). Accordingly, the Court will dismiss the ADA claims against the individually named Defendants.

### B. Title III Claim

To state a claim under Title III of the ADA, a plaintiff must show that "(1) []he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); 42 U.S.C. §§ 12182(a)-(b). Private entities are considered "public accommodations" if "the operations of such entities affect commerce." 42 U.S.C. § 12181(7). These include entities such as hotels, restaurants, theaters, stores, amusement parks, and gymnasiums. (*Id.*)

The Arizona State Hospital is a public hospital charged with the care and treatment of persons with mental disorders and is under the control of the director of the Arizona

Department of Health Services. *See* Ariz. Rev. Stat. § 36-202. Further, patients in the Forensic Hospital, such as Plaintiff, are "court-ordered for pre- or post-trial treatment as a result of the criminal justice system due to a mental health issue." *See* Arizona Department of Health Services, https://www.azdhs.gov/az-state-hospital/index.php#about-home [https://perma.cc/T46H-JRF5]. Accordingly, Plaintiff cannot bring a claim under Title III of the ADA because the Arizona State Hospital is not a private entity and does not provide public accommodations. The Court will dismiss Count Two.

**C. Retaliation**

To establish a prima facie case of retaliation under the ADA, a Plaintiff "must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse . . . action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).

Plaintiff alleges Defendants retaliated against him for filing an ADA claim by making false statements of animal abuse and bestiality against him. This claim is based on the assessment letter, attached to the Complaint as Exhibit A, that was initially prepared for CV-20-02209. However, the letter is signed by Aaron Bowen, who is not a Defendant in this action, and Plaintiff does not allege any specific facts regarding retaliatory actions by the individual Defendants named in this action. Moreover, the assessment letter contains statements recorded by various medical professionals and staff in progress notes and an April 2022 interview of Plaintiff. Plaintiff has not alleged facts demonstrating a causal connection between his ADA claims and the recording of these allegedly false statements; Plaintiff does not contend the medical professionals or staff were aware of his ADA claims and recorded the statements in the progress notes in response to Plaintiff's ADA claims. Plaintiff therefore fails to state a claim in Count Three and the Court will dismiss this claim.

. . . .

. . . .

. . . .

## IV. Claims for Which an Answer Will be Required

Plaintiff has adequately stated claims under the ADA and RA in Counts One and Four, respectively. The Court will require Defendant State of Arizona to answer these claims.

## V. Warnings

### A. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B. Copies

Plaintiff must serve Defendant, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### C. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Counts Two and Three are **dismissed** without prejudice.

(2) Defendants Cunico and Sheldon are **dismissed** without prejudice.

(3) If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15

of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(4) Defendant State of Arizona must answer Counts One and Four.

(5) The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendant State of Arizona.

(6) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(8) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(j)(2) of the Federal Rules of Civil Procedure and Rule 4.1(c) of the Arizona Rules of Civil Procedure. The notice to Defendant must include a copy of this Order.

(10) If Defendant agrees to waive service of the Summons and Complaint, Defendant must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(11) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(j)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(12) Defendant must answer the relevant portions of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(13) This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 19th day of November, 2024.

Honorable John J. Tuchi
United States District Judge