KM

1
2
3
4
5
6

# IN THE UNITED STATES DISTRICT COURT

7

## FOR THE DISTRICT OF ARIZONA

8
9
10
11
12
13
14

| | |
|---|---|
| Matthew Phillip Solan, | No.    CV-24-02061-PHX-JJT (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| State of Arizona, *et al.*, | |
| Defendants. | |

15    Self-represented Plaintiff Matthew Phillip Solan, who is confined in the Arizona

16  State Hospital and has paid the filing and administrative fees, filed a civil rights Complaint

17  pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), the

18  Rehabilitation Act (RA), and state tort law. On November 18, 2024, Plaintiff filed a First

19  Amended Complaint (Doc. 6).

20    In a November 20, 2024 Order (Doc. 5), the Court ordered Defendant State of

21  Arizona to answer Counts One and Four of the Complaint and dismissed the remaining

22  claims and Defendants without prejudice.[1] The Court will vacate the November 20, 2024

23  Order, order Defendant State of Arizona to answer Counts One and Four of the First

24  Amended Complaint, and dismiss the remaining claims and Defendants without prejudice.

25  . . . .

26  . . . .

27

28

---

[1] The Clerk of Court docketed the First Amended Complaint on November 20. 2024, and, therefore, the Court was unaware that it had been filed when it issued the November 20 Order.

TERMPSREF

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe [self-represented litigant's] filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a self-represented prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

. . . .

## II.    First Amended Complaint

In his seventeen-count First Amended Complaint, Plaintiff sues Defendants State of Arizona, Arizona Department of Health Services (ADHS) Cabinet Executive Officer Jennifer L. Cunico, ADHS Deputy Director/Arizona State Hospital (ASH) Chief Executive Officer Michael R. Sheldon, former ADHS Deputy Director/ASH Chief Executive Officer Aaron Bowen, ASH Chief Medical Officers Steven Kwoh and Flowers, Psychiatric Nurse Practitioner Kindra Ochoa, Behavioral Health Technicians Lea'cher Carter and Unique Coleman, John Does 1-100, Jane Does 1-100, Black Corporations 1-10, and White Entities 1-10. Plaintiff seeks declaratory and injunctive relief and monetary damages.

Plaintiff is 35 years old and diagnosed with multiple disabilities including autism spectrum disorder, Post-Traumatic Stress Disorder, and Chronic Inflammatory Response Syndrome. (Doc. 6 at 5.)[2] Plaintiff was admitted to the ASH Forensic Hospital on April 1, 2020, after being adjudicated Guilty Except Insane, and is designated as Seriously Mentally Ill.[3] (*Id.* at 13.)

In 2019, Plaintiff was separated from his service dog, Foxy, when he was arrested and placed in a detention facility. (*Id.* at 14.) Upon arriving at ASH, Plaintiff "requested a service animal accommodation for Foxy to live with him." (*Id.*) The request was denied due to security, health, and safety concerns, and "a nebulous administrative burden." (*Id.* at 15.) Plaintiff contested the decision, but the accommodation was repeatedly denied. Plaintiff filed a lawsuit and Motion for Preliminary Injunction in this Court, *Solan v. Arizona State Hospital*, CV-20-02209-PHX-JJT (DMF), contending ASH's refusal to accommodate his service animal violated the ADA. On March 22, 2022, the Court granted

---

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

[3] On March 12, 2020, Plaintiff was convicted in the Coconino County Superior Court of one count of aggravated assault and sentenced to a 7.5-year term of imprisonment in the Arizona Department of Corrections, under the jurisdiction of the Psychiatric Security Review Board, and committed to ASH. *See* https://apps.supremecourt.az.gov/publicaccess/minutes.aspx, search "Court" for "Coconino County Superior" and "Case Number" for "CR-201900357"; select hyperlink for "3/12/2020 Minute Entry") (last accessed Nov. 27, 2024).

Plaintiff's Motion for Preliminary Injunction and ordered ASH to conduct a particularized assessment to determine whether reasonable modifications could be made to allow Plaintiff to have Foxy while housed at the Forensic Hospital and whether Foxy specifically would be disruptive to the health or safety of other patients in Plaintiff's unit. (*Id.* at 16.) According to Plaintiff, ASH's then Chief Executive Officer delivered a Particularized Assessment letter that did not conform with the Court's Order and included "an outrageous, defamatory attack on Plaintiff's character" by stating that Plaintiff had touched Foxy inappropriately or intended to do so. (*Id.* at 17-18.) On April 6, 2022, attorney Holly Geiszl filed a Notice of Appearance on Plaintiff's behalf. (*Id.* at 19.) On July 13, 2022, Plaintiff was informed that Foxy had died. (*Id.*) The parties later stipulated to the dismissal of CV-20-02209 as moot.

Plaintiff, "[f]aced with the imminent choice to either clone Foxy or terminate his temporal existence and join with Foxy on the astral plan," opted to clone Foxy and "commissioned a somatic cell culture from Foxy's tissue samples." (*Id.*) In July 2023, Plaintiff sold his house and used the proceeds to obtain a puppy that was a genetic clone of Foxy. (*Id.* at 20.) The cost of the procedure was $50,000. (*Id.* at 73.) The new puppy was born in November 2023, and Plaintiff "named the reincarnated puppy 'Foxy.'"[4] (*Id.* at 20.)

Plaintiff's "general agent" took custody of the puppy and provided basic training and care. (*Id.* at 21.) In May 2024, Foxy II completed advanced obedience and foundational service animal training. After several weeks of training, Foxy II "could consistently perform Deep Pressure Therapy (DPT), basic alerting tasks, and operate peaceably in public as a social buffer." (*Id.*) Plaintiff contends that "from that point, through the date of this Complaint, Foxy [II] met the definition of a service animal under the ADA." (*Id.*)

On June 13, 2024, Plaintiff "submitted [a] reasonable accommodation request letter to Defendant Sheldon via U.S.P.S certified mail," notifying ASH that Plaintiff was seeking a reasonable accommodation for Foxy II. (*Id.* at 22.) The letter explained that Foxy had

---

[4] To avoid confusion, the Court will refer to this animal as "Foxy II."

been cloned and that Foxy II had completed professional training to be a service dog and was healthy, fully vaccinated, and well-trained. (*Id.*)

On July 5, 2024, ASH responded with a one-page denial letter stating that the "Hospital will not modify its existing policies, practices and/or procedures to allow for a service animal at the Forensic Hospital." (*Id.*) ASH based its denial on the same therapeutic, security, financial, and staffing concerns raised in the previous lawsuit. Plaintiff contends the assertion that Plaintiff intends to have sexual relations with the dog "is patently false, has no basis in reality, and accordingly has no evidentiary support," as is the contention that the presence of Plaintiff's service animal would be counter therapeutic. (*Id.* at 23.)

Plaintiff alleges Defendants' "interference with Foxy [II]" has "destroyed [his] therapeutic relationship with providers." (*Id.* at 26.) He claims that throughout 2024, Defendant Coleman "made various lewd and defamatory statements about Plaintiff and Foxy [II] and that on May 22, 2024, Defendant Carter made similar derogatory statements and commented on Plaintiff's genitals. (*Id.*)

Plaintiff contends he has experienced "distress, anguish, and heightened mental health symptoms, including hyper-vigilance, nightmares, flashbacks, sensory overload, increased anxiety, suicidal ideation, and self-injurious stimming behavior, without his service animal present to perform the tasks that alleviate these symptoms." (*Id.* at 27.) Plaintiff has also been forced to pay expenses to board Foxy II with his "general agent," past the time needed for her training. (*Id.*)

In **Count One**, Plaintiff claims he is a qualified individual under the ADA and Defendants wrongfully denied Plaintiff the reasonable accommodation of a service dog, Foxy II. Plaintiff contends Defendants were required to conduct a fact-specific investigation to determine what constitutes a reasonable accommodation. Plaintiff asserts that after receiving his request for a reasonable accommodation, the State never consulted Plaintiff or any qualified experts but instead summarily denied the requests and "unleashed an outrageous attack on Plaintiff's relationship with Foxy." (*Id.* at 33.) Plaintiff claims the

State continues to discriminate against Plaintiff on the basis of his disabilities, thereby denying him the benefits of the services, programs, or activities of ASH, in violation of the ADA. (*Id.*)

In **Count Two**, Plaintiff claims Defendants have violated Title III of the ADA. According to Plaintiff, ASH and the land on which it is located are not owned by the State, but are owned by the ASH Trust, which is administered by the ADHS Director. (*Id.* at 29-30.) Plaintiff asserts he is a special beneficiary of the ASH Trust and has standing to sue the Trustee because he is a patient confined on the real property of the ASH Trust and "his subsistence is contingent upon the daily corody provided out of the ASH Trust corpus by the Trustee through her agents." (*Id.* at 30.) Plaintiff claims the Trustee "held legal title to, and administrative responsibilities over the ASH land and its appurtenant medical facilities, and as such, was owner of ASH for the purposes of 42 U.S.C. § 12182(a)." (*Id.* at 35.) Plaintiff asserts that by denying Plaintiff's request to be accompanied by Foxy II on the ASH property, the Trustee violated Title III of the ADA. (*Id.*)

In **Count Three**, Plaintiff alleges Defendants retaliated against Plaintiff, in violation of 42 U.S.C. § 12203, by making false accusations of animal abuse and bestiality against Plaintiff. (*Id.* at 36.) Plaintiff alleges the retaliation was in response to Plaintiff "making an eminently reasonable request for a service animal accommodation, and/or for opposing . . . the State's illegal anti-service[-]dog policies and/or practices." (*Id.*) Plaintiff claims he suffered "humiliation, anxiety, indignity, and significant mental and emotional anguish." (*Id.*)

In **Count Four**, Plaintiff claims Defendants' actions violated Section 504 of the Rehabilitation Act (RA) and asserts ASH receives federal funds. (*Id.* at 37.)

In **Count Five**, Plaintiff claims Defendants Cunico, Sheldon, Kwoh, Flowers, Ochoa, and Carter violated his Eighth Amendment rights. Plaintiff claims these Defendants "knew that Plaintiff had serious mental health and developmental disability related needs" but "failed to accommodate Plaintiff's developmental disability related needs." (*Id.* at 38.) He claims these Defendants "made purposeful and conscious decisions to disregard well-

established disability law" regarding service animal access under the ADA and Arizonans with Disabilities Act and were deliberately indifferent to Plaintiff's serious medical need for service animal accommodations and/or alternative aids. Plaintiff asserts these Defendants' deliberate indifference caused "a substantial worsening of Plaintiff's mental health conditions, and psychiatric damages for which he will require years if not a lifetime of care, services, and treatment." (*Id.* at 39.)

In **Count Six**, Plaintiff claims Defendants Cunico and Sheldon violated his due process rights by depriving him of property without due process. Plaintiff asserts he has a valid property interest in Foxy II and "incurred expenses in excess of $60,000.00 in cloning, transporting, training, and maintaining Foxy [II]." (*Id.* at 40.) Plaintiff contends Defendants Cunico and Sheldon have "eroded Plaintiff's property interests in Foxy [II] by barring Foxy [II] from accompanying Plaintiff in ASH's facilities without an objective, evidence-based assessment of Foxy [II]'s impact, instead relying on discriminatory, speculative, and defamatory assumptions about Plaintiff." (*Id.* at 40.)

In **Count Seven**, Plaintiff alleges Defendants Sheldon and other John or Jane Doe Defendants conspired "to derive Plaintiff of his civil rights, including his right to reasonable service animal accommodation and his right to equal protection," in violation of 42 U.S.C. § 1985(3). (*Id.* at 42-43.) Plaintiff contends Defendants were "motivated by discriminatory animus against Plaintiff as a disabled individual dependent on a service animal to manage disabilities" and upheld Defendant Bowen's denial of a service animal "without any attempt to conduct a valid particularized assessment." (*Id.* at 42-43.) Plaintiff alleges Defendants "categorically denied [Plaintiff's] requests" to provide appropriate documentation for Foxy II and issued "blanket refusals without evidence-based justifications or individualized assessments." (*Id.* at 43.) Plaintiff claims this was a "systematic attempt to improperly deny Plaintiff, and all similarly situated individuals, access to service animal accommodations . . . on equal footing with other members of the community." (*Id.* at 43.) Plaintiff claims he suffered emotional distress, exacerbation of his mental health symptoms, damage to his reputation, and financial losses. (*Id.*)

In **Count Eight**, Plaintiff alleges Defendants Ochoa, Coleman, and numerous John and Jane Doe Defendants violated 42 U.S.C. § 1986 by failing to prevent or aid in the preventing of the conspiracy alleged in Count Seven. Plaintiff states he "constantly complained" to Defendants "about the conspiracy and the imminent harm that Foxy [II]'s exclusion was causing him," but Defendants failed to act. (*Id.* at 44.)

In **Count Nine**, Plaintiff raises a state law negligence claim. Plaintiff asserts "each Defendant owed a duty of due care to Plaintiff, including a heightened duty of care based on Defendants' special relationship to Plaintiff as his health care providers and caretakers." (*Id.* at 46.) Plaintiff contends Defendants "were negligent, grossly negligent, and intentionally breached their duty of care to Plaintiff, by discriminating against him on the basis of his developmental disabilities and refusing to provide him reasonable accommodations." (*Id.*) Plaintiff alleges Defendants violated multiple state statutes regulating the care of mentally ill persons and this constitutes negligence per se. Plaintiff asserts the breaches of duty foreseeably caused him to suffer emotional distress including "hyper-vigilance, flashbacks, sensory overload, increased anxiety, suicidal ideation and self-injurious behaviors without Foxy [II] present to . . . alleviate these symptoms." (*Id.* at 47.)

In **Count Ten**, Plaintiff raises a state law claim for intentional infliction of emotional distress. Plaintiff claims Defendants' "callous" denial of his service dog and "actions in falsely and fraudulently accusing Plaintiff of bestiality and animal abuse, in an attempt to legitimize Defendants' unlawful exclusion of Foxy [II] from ASH" constitute extreme and outrageous behavior. (*Id.* at 49.) He claims Defendants acted with the "intent to cause, or with reckless disregard for the probability of causing Plaintiff to suffer significant emotional distress, including hyper-vigilance, flashbacks, sensory overload, increased anxiety, suicidal ideation and self-injurious behaviors, as well as engage in self-harm." (*Id.*)

In **Count Eleven**, Plaintiff raises a state law claim for "invasion of privacy (false light)." (*Id.* at 50.) Plaintiff contends Defendants Bowen, Sheldon, Carter, and Coleman

"falsely accused Plaintiff of engaging or planning to engage in, inappropriate and illegal sexual activities with Foxy [II]." (*Id.*) Plaintiff asserts the statements were "made to or in the presence of ASH staff and/or patients" and "were highly offensive, defamatory, and cast Plaintiff in a false light that would be highly objectionable to a reasonable person." (*Id.*) Plaintiff "attempted to set the record straight," but Defendants "continued to make similar statements, intensifying the false light in which Plaintiff was cast." (*Id.*) Plaintiff claims Defendants "acted with actual malice or reckless disregard for the truth in making these statements in that they knew the statements were false or made no effort to verify their veracity before disseminating them." (*Id.*) As a result, Plaintiff suffered emotional distress.

In **Count Twelve**, Plaintiff asserts a state law claim for "libel, slander, [and] defamation of character" against Defendant Bowen. (*Id.* at 51.) Plaintiff claims he "never had sexual relations of any nature with Foxy [II], her predecessor, or any other nonhuman animal"; "does not intend to have sexual relations of any nature with Foxy [II] or any . . . nonhuman animal"; and has never "claimed to have had sexual relations of any nature with Foxy [II], her predecessor, or any other nonhuman animal, or to have intended to have any such sexual relations." (*Id.*) Plaintiff alleges Defendant Bowen "published the Particularized Assessment letter knowing [it] contained statements which implicated Plaintiff in bestiality and animal abuse and knowingly and/or negligently failing to ascertain . . . that such statements were false." (*Id.*) Plaintiff contends Defendant Sheldon "published the Denial Letter" knowing it contained "the same statements" and knowingly or negligently failed to ascertain the veracity of the statements. (*Id.*)

Plaintiff asserts Defendants Carter and Coleman "each made defamatory statements about Plaintiff in front of other ASH patients and knowingly or negligently failed to ascertain the veracity of the statements." (*Id.* at 52.)

Plaintiff claims Defendants' statements caused serious harm to his reputation and credibility, including denial of a service animal accommodation.

. . . .

In **Count Thirteen**, Plaintiff raises a state law claim for "breach of trust." (*Id.* at 53.) Plaintiff alleges "the Trustee was never authorized by law to delegate away the duties of care, loyalty, and prudence that she owed to Plaintiff as a special beneficiary of the ASH Trust." (*Id.*) Plaintiff claims the "Trustee held statutory and general fiduciary duties to avoid discrimination against the beneficiaries of the ASH Trust on the basis of disability" and by prohibiting Foxy II from entering onto the ASH Trust property, "discriminated against Plaintiff on the basis of his disabilities." (*Id.*) Plaintiff further alleges the "Trustee breached the ASH Trust by knowingly or negligently violating Plaintiff's right to enjoy and use the ASH Trust property, and benefits thereof to which he was entitled, free from discrimination." Plaintiff claims the breach of fiduciary duties caused Plaintiff to suffer "humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish." (*Id.* at 54.) Plaintiff also asserts that the trusteeship was invalidated by "Arizona State Senate v. Hobbs" and that the Trustee is "personally liable to Plaintiff for damages caused by the illegal policies she promulgated and/or ratified as a de facto trustee." (*Id.*)

In **Count Fourteen**, Plaintiff asserts a claim of "tortious interference with a prospective economic relationship." (*Id.* at 55.) Plaintiff contends he as established "an economic relationship with ViaGen and All Dogs Unleashed to support his ability to engage in professional and daily activities by mitigating his disabilities with the assistance of Foxy [II]." (*Id.*) Plaintiff alleges Defendant Sheldon was aware of Plaintiff's economic interest in Foxy II's presence and assistance but "intentionally interfered by denying Foxy [II] access to ASH, which directly prevented Plaintiff from benefiting from the intended and anticipated economic advantages associated with Foxy [II]'s services." (*Id.*)

**Count Fifteen** is a claim for "trespass to chattels." (*Id.* at 56.) Plaintiff states he has a possessory and ownership interest in Foxy II, "including an exclusive right to possess Foxy [II] while at ASH as an accommodation for his disabilities." (*Id.*) Plaintiff contends Defendant Sheldon "knowingly, wrongfully, and without Plaintiff's consent, exercised control over Foxy [II] by preventing her access to ASH, despite knowledge of Plaintiff's documented ownership interest and accommodation needs." (*Id.*) Plaintiff claims

Sheldon's actions were arbitrary and "exceeded his jurisdiction as ASH's CEO and were inconsistent with Plaintiff's rightful control over Foxy [II] as his personal property." (*Id.*)

In **Count Sixteen**, Plaintiff alleges Defendants Sheldon and "other John or Jane Doe Defendants . . . conspired to interfere with Plaintiff's possessory rights in Foxy [II] and/or intentionally caused Plaintiff emotional distress." He claims Defendants acted "with the shared purpose of denying Plaintiff's reasonable service animal accommodations and interfering with Plaintiff's established rights to possession and use of Foxy, and the economic advantage Plaintiff intended to derive therefrom." (*Id.* at 57.) Plaintiff alleges Defendants committed "various overt and unlawful acts" in furtherance of the conspiracy, including "summarily denying Plaintiff's accommodation requests and arbitrarily excluding Foxy [II] from friend and family visitation sessions with Plaintiff, and from Plaintiff's Animal Assisted Therapy." (*Id.*)

In **Count Seventeen**, Plaintiff raises a claim for "loss on consortium." (*Id.* at 58.) Plaintiff claims that "Foxy [II] is not a pet—she is Plaintiff's autism service animal and venerated familiar." (*Id.*) Plaintiff claims he and Foxy II "share an unseverable [sic] spiritual bond, and a unique and indispensable relationship characterized by mutual affection, companionship, support, assistance, and interdependency" and that as a result of Defendants' conduct, he has suffered "loss of consortium with Foxy [II]." (*Id.*) Plaintiff contends that Foxy II should be accorded status as a person because she is the beneficiary of a trust established by Plaintiff and because, according to Plaintiff, the Arizona Legislature amended Arizona Revised Statutes section 1-215 to strike the word "dogs" from the definition of personal property. Plaintiff asserts that while he "claims a property interest in Foxy [II] under the bill of sale, Foxy [II] is now a *person*, and the personal property status historically ascribed to dogs is inadequate." (*Id.* at 59.) Plaintiff argues he is "entitled to a declaration pursuant to A.R.S. § 12-1832 to confirm that Foxy [II] is indeed a person, and how her legal personhood status affects Plaintiff's rights under ViaGen's Bill of Sale, in light of the 2015 changes to A.R.S. § 1-215." (*Id.*)

. . .

1  **III.    Failure to State a Claim**

2        **A.     ADA Title II Claims against Individual Defendants – Count One**

3        Under the plain language of Title II of the ADA, a *public entity* must deny Plaintiff

4  the benefit of a service or program. Therefore, Plaintiff may not maintain an action against

5  individual officers or officials in their individual capacity. *Walsh v. Nevada Dep't of Hum.*

6  *Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("individual defendants cannot be held

7  personally liable for violations of the ADA"). Accordingly, the Court will dismiss the ADA

8  claims against the individually named Defendants.

9        **B.     ADA Title III Claim – Count Two**

10        To state a claim under Title III of the ADA, a plaintiff must show that "(1) []he is

11  disabled within the meaning of the ADA; (2) the defendant is a private entity that owns,

12  leases, or operates a place of public accommodation; and (3) the plaintiff was denied public

13  accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc.*,

14  481 F.3d 724, 730 (9th Cir. 2007); 42 U.S.C. §§ 12182(a)-(b). Private entities are

15  considered "public accommodations" if "the operations of such entities affect commerce."

16  42 U.S.C. § 12181(7). These include entities such as hotels, restaurants, theaters, stores,

17  amusement parks, and gymnasiums. (*Id.*)

18        The Arizona State Hospital is a public hospital charged with the care and treatment

19  of persons with mental disorders and is under the control of the director of the Arizona

20  Department of Health Services. *See* Ariz. Rev. Stat. § 36-202. Further, patients in the

21  Forensic Hospital, such as Plaintiff, are "court-ordered for pre- or post-trial treatment as a

22  result of the criminal justice system due to a mental health issue."[5] Accordingly, Plaintiff

23  cannot bring a claim under Title III of the ADA because the Arizona State Hospital is not

24  a private entity and does not provide public accommodations. The Court will dismiss Count

25  Two.

26  . . . .

27  _____

28        [5] *See* https://www.azdhs.gov/az-state-hospital/index.php#about-home [https://perm a.cc/T46H-JRF5]

1

## C.    Retaliation – Count Three

To establish a prima facie case of retaliation under the ADA, a Plaintiff "must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse . . . action; and (3) there was a causal link between the two." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).

Plaintiff alleges Defendants retaliated against him for filing an ADA claim by making false statements of animal abuse and bestiality against him. This claim is based on the assessment letter, attached to the Complaint as Exhibit A, which was initially prepared pursuant to the court's order in CV-20-02209. The assessment letter contains statements recorded by various medical professionals and staff in progress notes and an April 2022 interview of Plaintiff. Plaintiff has not alleged facts demonstrating a causal connection between his ADA claims and the recording of these allegedly false statements; Plaintiff does not contend the medical professionals or staff were aware of his ADA claims and recorded the statements in the progress notes in response to Plaintiff's ADA claims. Plaintiff therefore fails to state a claim in Count Three and the Court will dismiss this claim.

## D.    Eighth Amendment – Count Five

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure

to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Plaintiff claims Defendants Cunico, Sheldon, Kwoh, Ochoa, and Carter were deliberately indifferent to his serious medical needs when they denied his request to have Foxy II as a service dog with him in the ASH facility. Plaintiff's allegations are insufficient to state an Eighth Amendment claim. Plaintiff does not allege he is being denied care for his mental health conditions. Plaintiff has only alleged Defendants denied his preferred treatment, a service animal. Plaintiff has demonstrated, at best, a difference of opinion regarding his medical care; this does not amount to deliberate indifference. The Court will dismiss Count Five for failure to state a claim.

### E.    Property – Counts Six and Fifteen

In Count Six, Plaintiff claims Defendants Cunico and Sheldon violated his Fourteenth Amendment rights by depriving him of property without due process. Plaintiff

asserts he has a valid property interest in Foxy II and incurred more than $60,000.00 in cloning, transporting, training, and maintaining Foxy II. In Count Fifteen, Plaintiff claims he has a possessory and ownership interest in Foxy II, "including an exclusive right to possess Foxy [II] while at ASH as an accommodation for his disabilities" and that Defendant Sheldon committed the tort of trespass to chattels when he exercised control over Foxy II by preventing her access to ASH.

As an initial matter, Plaintiff has failed to establish that Foxy II was taken from him. Although Plaintiff owns Foxy II, Plaintiff has never had physical possession of Foxy II because Foxy II was cloned and born after Plaintiff's entrance into ASH. Accordingly, although Plaintiff may be prohibited from possessing Foxy II while confined in ASH, Foxy II was not taken from him.

And Plaintiff's ability to *possess* any property is necessarily limited by the fact of his confinement in ASH pursuant to criminal proceedings. *See Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. . . . A detainee simply does not possess the full range of freedoms of an unincarcerated individual."). Courts have found that when property policies prohibit specific items, but inmates or detainees are allowed to keep the items outside of the institution, no property interest is implicated, and no process is due. *See e.g., Graham v. Sharp*, CV-10-05563 (SRC), 2011 WL 2491347, at *15-16 (D.N.J. June 20, 2011) (finding no constitutionally-recognized property interest for civil detainees in the continued ownership of previously authorized electronic devices in the face of newly implemented regulations that would prohibit and confiscate these devices); *Davis v. Powers*, CV-08-05751 FDB/KLS, 2010 WL 2163134, at *10-11 (W.D. Wash. Apr. 16, 2010) (finding no property interest when a television had to be returned because it was in conflict with regulations); *Trenton v. Schriro*, CV-06-02905-PHX-MHM (DKD), 2007 WL 2572345, at 1–2 (D. Ariz. Sept. 4, 2007) (no property right for previously allowed typewriter where plaintiff had the option to mail it home rather than have it confiscated); *Dunbar v. ADOC*,

CV-08-00420-PHX-SMM (MEA), 2008 WL 2038026, at \*4 (D. Ariz. May 12, 2008) (finding no property right deprivation for confiscation of a television pursuant to prison regulations); *see also Knight v. Yarborough*, CV-03-01210-AG (VBK), 2011 WL 4550190, at \*18 (C.D. Cal. Aug. 22, 2011) (noting that "[i]nmates do not have a constitutional right to keep, or to dispose of contraband materials as they wish."). Because Plaintiff maintains ownership of Foxy II outside of ASH, no deprivation has occurred and no protected property right has been implicated. The Court will dismiss Counts Six and Fifteen for failure to state a claim.[6]

### F.    Conspiracy – Counts Seven, Eight, and Sixteen

To state a claim under § 1985(3), a plaintiff must allege facts to support (1) the existence of a conspiracy, (2) to deprive him of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).

Additionally, there must be some racial or other class-based, invidiously discriminatory animus behind the conspirators' action. *Id.* To make a showing of class-based animus, a plaintiff must allege that he is a member of a class of persons that the courts have designated as a suspect or quasi-suspect class "requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) ("Generally, our rule is that section 1985(3) is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and

---

[6] The Court notes Plaintiff's property rights are distinct from his right to reasonable accommodations under the ADA.

1   warrant special federal assistance in protecting their civil rights." (internal citations and

2   quotations omitted)).

3       Although the ADA makes clear that protection of the disabled from discrimination

4   in employment, public services, and public accommodation, was necessary to eradicate

5   historical segregation and discrimination, disabled persons are not deemed a suspect or

6   quasi-suspect class. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 445 (1985)

7   (declining to deem mentally disabled individuals "quasi-suspect"); *Bd. of Trustees of Univ.*

8   *of Ala. v. Garrett*, 531 U.S. 356 (2001) (upholding *Cleburne*'s conclusion); *Tennessee v.*

9   *Lane*, 541 U.S. 509 (2004) (same); *Chasse v. Humphreys*, 2008 WL 486208, *4 (D. Or.

10  Nov. 3, 2008) ("[T]he [Supreme] Court has indicated, even in the context of claims brough

11  directly under the ADA, that disabled persons are not a suspect class or quasi-suspect class

12  for equal protection claims."). Accordingly, Plaintiff has failed to state a § 1985 claim in

13  Count Seven and the Court will dismiss this claim.

14      Because Plaintiff has failed to state a § 1985 claim, he has also failed to state a claim

15  under § 1986. *See Trerice v. Pedersen,* 769 F.2d 1398, 1403 (9th Cir. 1985) ("[A] cause of

16  action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section

17  1985."). Accordingly, the Court will dismiss Count Eight.

18      In Count Sixteen, Plaintiff brings a claim for civil conspiracy. To state a claim for

19  civil conspiracy, a Plaintiff must show "two or more individuals agree and thereupon

20  accomplish an underlying tort which the alleged conspirators agreed to commit." *Wells*

21  *Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395*, 38 P.3d

22  12, 37 (Ariz. 2002). "[A] claim for civil conspiracy must include an actual agreement."

23  (*Id.*) The Court "need not, however, accept as true allegations that . . . are merely

24  conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v.*

25  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on other grounds*, 275 F.3d

26  1187 (9th Cir. 2001); *see also Karim-Panahi*, 839 F.2d at 626 ("A mere allegation of

27  conspiracy without factual specificity is insufficient.").

28  . . . .

1    Plaintiff has not made any factual allegations to support an agreement among
2    Defendants. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of
3    action, supported by mere conclusory statements, do not suffice."). Nor is there a
4    "conspiracy" simply because Defendants engaged in the same conduct. *See Myers v. City*
5    *of Hermosa Beach*, 299 F. App'x 744, 747 (9th Cir. 2008) ("Before a conspiracy claim can
6    be sustained, a plaintiff must show a meeting of the minds by the so-called conspirators. . . .
7    [T]he evidence adduced must demonstrate more than the mere fact that two people did or
8    said the same thing; the evidence must actually point to an agreement.") (citations omitted);
9    *cf. Ting v. United States*, 927 F.2d 1504, 1512-13 (9th Cir. 1991) (finding insufficient
10   evidence that defendants "conspired" to distort the facts surrounding a shooting, although
11   the agents had a post-shooting meeting to discuss the plaintiff's arrest, failed to explain an
12   injury to the plaintiff's arm, and allegedly made false statements regarding the
13   circumstances of the shooting). Plaintiff's allegations are too vague and conclusory to
14   support a claim that Defendants actually agreed to engage in tortious conduct against
15   Plaintiff. Thus, the Court will dismiss without prejudice Count Sixteen.

16   ### G.    Negligence and Intentional Infliction of Emotional Distress - Counts Nine and Ten
17

18   In Counts Nine and Ten, Plaintiff raises claims for negligence and intentional
19   infliction of emotional distress. Plaintiff claims all named Defendants breached their duty
20   of care and acted with the intent to cause Plaintiff to suffer emotional distress. Plaintiff has
21   not alleged what *each* individual Defendant did or failed to do to cause him harm. *See Rizzo*
22   *v. Goode*, 423 U.S. 362, 371-72, 377 (1976) (a plaintiff must allege that he suffered a
23   specific injury as a result of the conduct of a particular defendant and he must allege an
24   affirmative link between the injury and the conduct of that defendant). Accordingly,
25   Plaintiff's allegations are therefore too vague to state a claim and the Court will dismiss
26   Counts Nine and Ten.

27   . . . .

28   . . . .

1

### H.    Breach of Trust – Count Thirteen

2    In Count Thirteen, Plaintiff alleges the ASH Trustee, Defendant Cunico, violated

3    her duty of care to Plaintiff as a special beneficiary of the ASH Trust. Plaintiff claims the

4    Trustee has a general fiduciary duty to avoid discrimination on the basis of disability

5    against the beneficiaries of the ASH Trust. Plaintiff contends that prohibiting Foxy II on

6    ASH grounds is a breach of those duties. However, Plaintiff also argues that "Defendant

7    Cunico's trusteeship is contingent upon her official tenure as Director of ADHS" and that

8    "as cabinet Executive Officer of ADHS, Arizona State Senate v. Hobbs implicitly

9    invalidates the trusteeship." Plaintiff asserts the "Trustee cannot claim legitimacy by tacit

10   procuration either as Plaintiff does not assent to her trusteeship." Plaintiff contends the

11   Trustees is therefore "personally liable to Plaintiff for damages caused by illegal policies

12   she promulgated and/or ratified as a *de facto* trustee."

13   Plaintiff's allegations are muddled and too vague to state a claim for relief. Plaintiff

14   appears to seek damages based on his alleged status a special beneficiary of the ASH Trust

15   while at the same time arguing the trust itself is invalid. The Court will dismiss Count

16   Thirteen for failure to state a claim.

17

### I.    Tortious Interference with Economic Relationship – Count Fourteen

18   A plaintiff asserting a claim of tortious interference must allege "(1) the existence

19   of a valid business expectancy; (2) the interferer's knowledge of the business expectancy;

20   (3) the interferer intentionally induced or caused termination of the business expectancy;

21   and (4) damage suffered as a result of termination of the business expectancy." *Dube v.*

22   *Likins*, 167 P.3d 93, 99 (Ariz. Ct. App. 2007). Plaintiff claims he established economic

23   relationships with ViaGen and All Dogs Unleashed, Defendant Sheldon was aware of those

24   relationships, and Defendant Sheldon interfered with those relationships by prohibiting

25   Foxy II from entering ASH.

26   Plaintiff's allegations and supporting documentation demonstrate he contracted

27   with ViaGen for cloning of Foxy II and with All Dogs Unleashed for Foxy II's training.

28   Plaintiff's allegations also show both contracts were completed; in exchange for money

from Plaintiff, ViaGen produced a clone of the original Foxy, and All Dogs Unleashed completed service training for Foxy II. Plaintiff's ability to possess Foxy II while confined in the Forensic Hospital is not part of his contracts or business relationships with either ViaGen or All Dogs Unleashed. Plaintiff therefore fails to state a claim for tortious interference and the Court will dismiss Count Fourteen.

### J.    Loss of Consortium – Count Seventeen

In Count Seventeen, Plaintiff asserts a claim for loss of consortium. In Arizona, "a cause for loss of consortium is . . . limited to spouses, parents, and children." *Kaufman v. Langhofer*, 222 P.3d 272, 279 (Ariz. Ct. App. Dec. 22, 2009). Arizona courts have found it unreasonable to "expand tort law to allow [an animal's] owner to recover emotional distress or loss of companionship damages when such damages cannot be recovered for the injury to or loss of close human friends, siblings, and nonnuclear family members such as grandparents, grandchildren, nieces, nephews, aunts, and uncles." *Id*. Accordingly, Plaintiff fails to state a claim in Count Seventeen and the Court will dismiss it.

### K.    Claims for Which an Answer Will be Required

Plaintiff has adequately stated claims under the ADA and RA in Counts One and Four, respectively. The Court will require Defendant State of Arizona to answer these claims. Plaintiff has also adequately stated a claim for invasion of privacy/false light in Count Eleven against Defendants Bowen, Sheldon, Carter, and Coleman, and for defamation in Count Twelve against Defendants Bowen and Sheldon. The Court will require Defendants Bowen Sheldon, Carter, and Coleman to answer Count Eleven and Defendants Bowen and Sheldon to answer Count Twelve.

## IV.    Warnings

### A.    Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

TERMPSREF

**B.    Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**C.    Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)    The November 20, 2024 Order (Doc. 5) is **vacated**.

(2)    Counts Two, Three, Five through Ten, and Thirteen through Seventeen are **dismissed**.

(3)    Defendants Cunico, Flowers, Kwoh, Ochoa, John Does 1-100, Jane Does 1-100, Black Corporations 1-10, and White Entities 1-10 are **dismissed**.

(4)    If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(5)    Defendant State of Arizona **must answer** Counts One and Four of the First Amended Complaint; Defendants Bowen, Sheldon, Carter, and Coleman **must answer** Count Eleven; and Defendants Bowen and Sheldon **must answer** Count Twelve.

(6)    The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 6), this Order, and both summons and request for waiver forms for Defendant State of Arizona, Bowen, Sheldon, Carter, and Coleman.

**TERMPSREF**

(7)     Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9)     The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(10)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure and Rule 4(j)(2) of the Federal Rules of Civil Procedure and Rule 4.1(c) of the Arizona Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(11)     A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service..

(12)     The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)     personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) and/or Rule 4(j)(2) of the Federal Rules of Civil Procedure; and

(b)     within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(13)    Defendants must answer the relevant portions of the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(14)    Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(15)    This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 10th day of December, 2024.

Honorable John J. Tuchi
United States District Judge