☑ FILED        ___ LODGED
___ RECEIVED   ___ COPY

JAN 2 1 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

**MATTHEW PHILLIP SOLAN**
501 North Twenty-Fourth Street
Phoenix, Arizona, 85008-6056
Tel:    1.970.FOX.9611
Fax:    1.970.844.1733
Email: legal@fox-ranch.com

*Plaintiff in propria persona*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Phillip Solan,<br>          *Plaintiff,*<br><br>*v.*<br><br>The State of Arizona, *et al.,*<br>          *Defendants.* | Case no. CV24-02061-PHX-JJT-DMF<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**<br><br>FRCP 15(a)(2); LRCiv 15.1(b) |

COMES NOW Plaintiff Matthew Phillip Solan, and hereby moves for leave to file a Second Amended Complaint in accordance with Rule 15(a)(2) F.R.Civ.P. and LRCiv 15.1(b). A strike-through copy of the proposed Second Amended Complaint is attached as Exhibit A.

Plaintiff desires to amend his First Amended Complaint to correct the deficiencies identified by the Court in its Screening Order (Doc. 8) and to reduce the length of the operative complaint by removing claims he no longer wishes to pursue. Plaintiff has not conferred with Defendants as they have yet been served, and accordingly seeks the Court's leave to amend the First Amended Complaint.



**BACKGROUND**

Plaintiff filed his original Complaint on August 13, 2024 under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA), challenging actions by the State of Arizona and its agents regarding their denial of Plaintiff's service animal accommodation request.

On November 13, 2024, Plaintiff filed a First Amended Complaint as a matter of right pursuant to Rule 15(a)(1), F.R.Civ.P., to include various federal constitutional claims and state tort claims related to his ADA and RA claims. The First Amended Complaint was docketed on November 20, 2024.

On November 20, 2024, the Court issued a screening order with respect to Plaintiff's initial complaint, and on December 10, 2024 the Court supplanted its initial order with a revised screening order responsive to Plaintiff's First Amended Complaint. In its second screening order (the "Screening Order"), the Court dismissed several of Plaintiff's claims for failure to properly state a claims upon which the Court could grant relief.

Plaintiff intends to amend his retaliation, negligence, IIED, and trespass to chattel claim claims to address the deficiencies noted by the Court, and to comport them with the minimum pleading standards established by the 9th Circuit and Supreme Courts.

Plaintiff has further resolved to withdraw his Title III, Fifth and Eighth Amendment, 42 U.S.C. §§ 1985 and 1986, civil conspiracy, breach of trust, tortious interference with a prospective economic relationship, and loss of consortium claims without prejudice.



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    Extreme Liberality is the Standard for Consideration

3   Federal Rule of Civil Procedure 15(a)(2) and Local Rule 15.1 allow amendments with

4   court approval or written consent from opposing counsel. Leave should be "freely given

5   when justice so requires." The Ninth Circuit interprets Rule 15(a) with "extreme

6   liberality," permitting amendments unless there is undue prejudice, bad faith, or futility.

7   *See* Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990).

8

### II.    No Undue Prejudice to Defendants

9   Defendants will not be unduly prejudiced because the proposed amendments do not

10   alter the underlying factual allegations but merely refine the claims to meet pleading

11   requirements, and because Defendants have not yet been served and have therefore not

12   expended resources responding to the original or First Amended Complaint.

13

### III.    The Proposed Amendments Are Not Futile

14   The Court has provided clear guidance on how Plaintiff's claims could be rectified.

15   The proposed Second Amended Complaint complies with this guidance, specifically:

16       a.  The amended ADA retaliation claim asserts that Plaintiff engaged in a

17           protected activity under the ADA, suffered adverse actions by specific

18           defendants, and presents facts demonstrating a causal connection between

19           Plaintiff's self-advocacy and the adverse actions.

20       b.  The negligence and IIED claims now identify specific injuries caused by

21           particular defendants and establish an affirmative link between the injuries and

22           their actions.



MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

c.  The trespass to chattel claim now pleads the nature of Plaintiff's possession of Foxy and cites supporting authorities.

**IV.    Justice Requires that Leave Should Be Granted**

Where, as here, an action is brought by a Plaintiff confined in an inpatient psychiatric hospital, the pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *See* Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). Notwithstanding the myriad artificial barriers to legal knowledge the Arizona State Hospital has erected, this litigant has endeavored to proceed in good faith and true confluence with the customs of this Court–it is therefore in the interest of Justice that he be afforded all reasonable opportunities to amend his pleadings to properly present his legitimate claims.

**CONCLUSION**

For the reasons outlined above. Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Leave to File the Second Amended and issue an updated order directing the appropriate defendants to respond to Plaintiff's claims.

**SIGNED, SEALED, AND DATED** this 13th day of January, 2024.



**Matthew Phillip Solan**
Plaintiff in *Pro. Per.*

legal@fox-ranch.com
501 North 24th Street
Phoenix, AZ 85008
+1 (970) 369-9611

**EXHIBIT A**

1   **MATTHEW PHILLIP SOLAN**
    501 North Twenty-Fourth Street
2   Phoenix, Arizona, 85008-6056
    Tel:    1.970.FOX.9611
3   Fax:    1.970.844.1733
    Email: legal@fox-ranch.com
4
    *Plaintiff in propria persona*
5

6

7              **IN THE UNITED STATES DISTRICT COURT**

8                **FOR THE DISTRICT OF ARIZONA**

9   Matthew Phillip Solan,                | Case no.CV24-02061-PHX-JJT-DMF
                            *Plaintiff,*  |
10                                        | **VERIFIED**

11  *v.*                                  | **SECOND** ~~FIRST~~ **AMENDED COMPLAINT FOR RESTITUTION,**
                                          | **DAMAGES, AND**
12  The State of Arizona; Jennifer L. Cunico; | **DISGORGEMENT, AND FOR**
    Michael R. Sheldon; Aaron Bowen~~,~~; ~~Calvin J.~~ | **INJUNCTIVE, DECLARATORY,**
13  ~~Flowers; Steven Kwoh; Kindra Ochoa,~~ | **AND OTHER RELIEF**
    Lea'cher Carter~~,~~; and, Unique Coleman~~,~~; ~~John~~ |
14  ~~Does 1-100; Jane Does 1-100; Black~~ | CIVIL
    ~~Corporations 1-10; and White Entities 1-10,~~ |
15                          *Defendants.*  | **JURY TRIAL DEMANDED**

16

17          COMES NOW Plaintiff Matthew Phillip Solan, one of the people of the United

18  States and State of Arizona ("Plaintiff"), and hereby complains against the State of

19  Arizona, Jennifer L. Cunico, Michael R. Sheldon, Aaron Bowen, ~~Calvin J. Flowers,~~

20  ~~Steven Kwoh, Kindra Ochoa,~~ Lea'cher Carter, and Unique Coleman~~, John Does 1-100,~~

21  ~~Jane Does 1-100, Black Corporations 1-10, and White Entities 1-10~~ (collectively,

22  "Defendants"), charging as follows:

                            Page 1 of 73



1

**INTRODUCTION**

2      Plaintiff is a developmentally disabled man embroiled in a multi-year dispute with

3  the State of Arizona (the "State") over his right to service animal accommodations.

4  Plaintiff brought an action before this Court in 2020 to challenge the denial of his service

5  animal accommodation request by the Arizona State Hospital ("ASH"). *See* Solan v.

6  Arizona State Hospital, 2:20-cv-02209 (D. Ariz.). After Plaintiff's service animal passed

7  away in 2022, the prior case was dismissed. Plaintiff consequently paid a substantial sum

8  to have his partner resurrected through a Somatic Cell Nuclear Transfer ("SCNT")

9  cloning process, and the cloned Foxy puppy ("Foxy") was born on November 9, 2023,

10  flown into Arizona, and trained to perform various tasks to assist Plaintiff in managing

11  the effects of his neurodevelopmental disabilities. Plaintiff made a new request for a

12  service animal accommodation on June 17, 2024, which the State summarily denied in a

13  scandalous and defamatory letter issued on July 5, 2024, and without conducting a

14  particularized assessment of Plaintiff's request.

15      This lawsuit is brought pursuant to ~~the Ku Klux Klan Act of 1871, 42 U.S.C. §~~

16  ~~1983 *et seq.* ("§1983"),~~ the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131

17  *et seq.,* 28 C.F.R. Part 35 ("Title II"), 42 U.S.C. §§ 12181 *et seq.,* 28 C.F.R. Part 36

18  ("Title III"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, 45 C.F.R.

19  Part 84 ("Section 504"), the Arizonans with Disabilities Act, A.R.S. §§ 11-1024, 41-1491

20  *et seq.,* A.A.C. §§ R10-3-401, *et seq.* (the "AzDA"), and the common law to rectify

21  Defendants' discriminatory policies and practices, remedy their egregious wrongs and

22  oppressions, and redress the extreme harm they are inflicting upon Plaintiff.

MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 85008-6056

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# ~~TABLE OF CONTENTS~~

~~Caption~~ .................................................................................................................. ~~1~~

~~Introduction~~ ........................................................................................................... ~~2~~

~~Table of Contents~~ ................................................................................................. ~~3~~

~~Jurisdiction and Venue~~ ........................................................................................ ~~4~~

~~Parties~~ .................................................................................................................... ~~5~~

   ~~Plaintiff~~ ............................................................................................................ ~~5~~

   ~~Foxy~~ .................................................................................................................. ~~6~~

   ~~Defendants~~ ........................................................................................................ ~~7~~

~~Statement of Facts~~ .............................................................................................. ~~13~~

   ~~General Averments~~ ........................................................................................ ~~13~~

   ~~Foxy the First~~ ................................................................................................. ~~15~~

   ~~Foxy the Second~~ ............................................................................................ ~~19~~

   ~~The Insane Asylum Trust~~ .............................................................................. ~~28~~

~~Statement of Claims~~ ........................................................................................... ~~31~~

   ~~1. Violations of Title II's Prohibition On Discrimination~~ .............................. ~~31~~

   ~~2. Violations of Title III's Prohibition On Discrimination~~ ............................ ~~34~~

   ~~3. Violations of the ADA's Prohibition On Retaliation~~ ................................. ~~36~~

   ~~4. Violations of Section 504 of the Rehabilitation Act~~ .................................. ~~40~~

   ~~5. Violations of the Eight Amendment~~ .......................................................... ~~41~~

   ~~6. Regulatory Taking Without Due Process~~ .................................................. ~~43~~

   ~~7. Conspiracy to Interfere with Civil Rights~~ ................................................ ~~45~~

MATTHEW PHILLIP SOLAN
501 North Twenty-fourth Street
Phoenix, Arizona 85008-6456

8. Failure to Prevent Conspiracy Against Civil Rights .................................................. 47

9. Negligence, Gross Negligence, Negligence Per Se ................................................... 49

10. Intentional Infliction of Emotional Distress ........................................................... 55

11. Invasion of Privacy (False Light) ........................................................................... 58

12. Libel, Slander, Defamation of Character ................................................................ 59

13. Breach of Trust ...................................................................................................... 61

14. Tortious Interference with a Prospective Economic Relationship .......................... 63

15. Trespass to a Chattels ............................................................................................ 64

16. Civil Conspiracy ................................................................................................... 67

17. Loss of Consortium ............................................................................................... 68

Demand for Relief ........................................................................................................ 70

Demand for Jury Trial ................................................................................................... 72

Reservation of Rights .................................................................................................... 72

Verification and Execution ............................................................................................ 73

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and Article III of the U.S. Constitution, as this action arises under the Americans with Disabilities Act and other federal laws and constitutional provisions. The Court has jurisdiction over Plaintiff's claims for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 because Plaintiff is, *ad litem*, a citizen of the United States, and because this action is being commenced to



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1  secure equitable and other relief for deprivations by Defendants, under color of state

2  law, of rights belonging to Plaintiff which are secured by the U.S. Constitution and

3  various civil rights acts of the United States.

4  3.  This Court has supplemental jurisdiction over Plaintiff's state law claims under 28

5  U.S.C. § 1367(a) because such claims arise from the same nucleus of facts that

6  Plaintiff's federal claims are based on.

7  4.  More than 60 days have elapsed since Plaintiff timely served a Notice of Claim

8  ("NOC") on all known Defendants, and the demand in the NOC ~~Notice of Claim~~ is

9  therefore denied as a matter of law pursuant to A.R.S. § 12-821.01(E).

10  5.  This Court has jurisdiction over Defendants as they each reside in this district or

11  otherwise have sufficient contacts therein to subject them to personal jurisdiction.

12  6.  Plaintiff grants personal jurisdiction to the Court for adjudication of this matter only.

13  7.  Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391 because the

14  acts and omissions giving rise to this Complaint occurred within this district, and

15  because the properties subject of this action are situated within this district.

16  ## PARTIES

17  PLAINTIFF

18  8.  Plaintiff is a 35-year-old man who suffers from multiple disabilities, including

19  Autism Spectrum Disorder ("ASD"), Post-traumatic Stress Disorder ("PTSD"), and

20  a Chronic Inflammatory Response Syndrome ("CIRS").

21  9.  These neurological and mental impairments substantially limit many of Plaintiff's

22  major life activities.



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

1   10. At all times material to this Complaint, Plaintiff was designated Seriously Mentally

2       Ill ("SMI"). *See* A.R.S. § 36-550.

3   11. At all times material to this Complaint, Plaintiff met the functional requirements for

4       a developmental disability. *See* A.R.S. § 36-551(20); 42 U.S.C. § 15002(8)(A).

5   12. At all times material to this Complaint, Plaintiff was a qualified individual with a

6       disability within the meaning of the ADA and AzDA. *See* 42 U.S.C. §§ 12132 and

7       12182; A.R.S. § 41-1492(6).

8   13. As a qualified individual with a disability, Plaintiff is specifically authorized by Title

9       II to be accompanied by his service animal in facilities operated by state and local

10      governments. *See* 42 U.S.C. § 12132; 28 C.F.R. § 35.136.

11  14. ~~Plaintiff is also authorized by Title III to be accompanied by his service animal in~~

12      ~~places of public accommodation. *See* 42 U.S.C. § 12182; 28 C.F.R. § 36.302.~~

13  15. Plaintiff's right to use a service animal~~, both in places of public accommodation, and~~

14      in places operated by public entities~~,~~ is also protected under the AzDA. *See* A.R.S.

15      §§ 11-1024(A), 41-1492.01(A)~~, 41-1492.02(A)~~.

16                                    FOXY

17  16. Foxy is one-year-old cloned Pomeranian mix and the successor to Plaintiff's former

18      service animal, and holds the same title, dignity, and prerogative as her predecessor.

19  17. At all times material to this Complaint, Foxy was an individually trained service

20      animal within the meaning of the ADA. *See~~,~~* 28 C.F.R. §§ 35.104 ~~and 36.104~~.

21  18. At all times material to this Complaint, Foxy was a service animal as defined under

22      Arizona law. *See* A.R.S. § 11-1024(M)(5).



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6656

19. At all times material to this Complaint, Plaintiff's ASH treatment plan listed "has a trained service animal" as Plaintiff's primary strength.

20. At all times material to this Complaint, and to the extent that natural law permits an individual to claim a property interest in another sentient being, Plaintiff held absolute, complete, and unencumbered title in and to Foxy pursuant to a bill of sale issued by Genetic Reflections LLC.

DEFENDANTS

21. At all times material to this Complaint, the State was a governmental entity responsible for administering care, supervision, and treatment to Plaintiff at ASH through the Arizona Department of Health Services ("ADHS"). *See* A.R.S. § 36-103.01(A)(1) & (B).

22. At all times material to this Complaint, ASH was Arizona's sole State-operated locked psychiatric treatment facility authorized to provide long-term inpatient psychiatric care to mentally ill adults committed by court order.

23. At all times material to this Complaint, the State was "public entity" ~~and the ASH was a "public accommodation"~~ within the meaning of the AzDA. *See* A.R.S. §§ 41-1492(12)(a)~~b) and 41-1492 (11)(f), respectively~~.

24. ~~At all times material to this Complaint, ASH was under the charge and control of the Director of ADHS. *See* A.R.S. § 36-202(D).~~

25. The statutory duties of the Director of ADHS include prescribing forms of complaints, certificates of mental illness, and commitments; adopting rules for the commitment of persons with mental illness to ASH; and adopting rules for the

MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1    administration of ASH. *See* A.R.S. § 36-204.

2    26.  At all times material to this Complaint, Defendant Jennifer L. Cunico ("Cunico")

3    was employed by the State as the Cabinet Executive Officer of ADHS; and during

4    the same period she was acting under color of law and within the course and scope

5    of her employment in each of her employment roles.

6    27.  At all times material to this Complaint, Cunico was *de facto* Director of ADHS. *See*

7    Arizona State Senate v. Hobbs, No. CV2023019899, (Super. Ct. Ariz. Maricopa Cty.)

8    28.  At all times material to this Complaint, Cunico was the chief policymaker of ADHS,

9    and is sued in her official capacity.

10   29.  At all times material to this Complaint, Cunico was trustee of the charitable trust that

11   owns the ASH real property and appurtenant facilities. *See* State v. Coerver, 100

12   Ariz. 135 (1966). In that capacity she is referred to hereinafter as the "Trustee."

13   30.  On information and belief, Cunico and Jane or John Doe, are married to each other.

14   The acts described in Plaintiff's Complaint were performed in furtherance of the

15   Cunico's marital community. The true identity of Jane or John Doe Cunico is

16   unknown to Plaintiff at this time. However, Plaintiff will amend this Complaint

17   when the true name of Jane or John Doe Cunico becomes known.

18   31.  The statutory duties of the Chief Executive Officer and Superintendent of ASH

19   include carrying out the purposes for which ASH is maintained, deputizing any

20   qualified officer of ASH to perform any act the Superintendent is empowered to do,

21   estimating the probable daily per capita cost of treatment and maintenance of ASH

22   patients for each year and reporting that estimate to the Director, and providing the

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 850085-0656

1      Director a clinical assessment of ASH programs. *See* A.R.S. §36-206.

2   32.  At all times material to this Complaint, Defendant Michael R. Sheldon ("Sheldon")

3      was employed by the State as the Deputy Director of ADHS and Superintendent and

4      Chief Executive officer of ASH; and during the same period he was acting under

5      color of law and within the course and scope of his employment in each of his

6      employment roles.

7   33.  At all times material to this Complaint, Sheldon was the chief policymaker of ASH,

8      and is sued in his official capacity. Sheldon is also sued in his personal capacity for

9      libel and intentional infliction of emotional distress.

10  34.  ~~On information and belief, Sheldon and Jane or John Doe, are married to each other.~~

11     ~~The acts described in Plaintiff's Complaint were performed in furtherance of the~~

12     ~~Sheldon's marital community. The true identity of Jane or John Doe Sheldon is~~

13     ~~unknown to Plaintiff at this time. However, Plaintiff will amend this Complaint~~

14     ~~when the true name of Jane or John Doe Sheldon becomes known.~~

15  35.  At all times material to this Complaint, Defendant Aaron Bowen ("Bowen") was

16     employed by the State as the Deputy Director of ADHS and Superintendent and

17     Chief Executive Officer of ASH; and during the same period he was acting under

18     color of law and within the course and scope of his employment in each of his

19     employment roles. ~~Bowen is also sued in his personal capacity for libel and~~

20     ~~intentional infliction of emotional distress.~~

21  36.  ~~At all times material to this Complaint, Defendant Steven Kwoh ("Kwoh") was~~

22     ~~employed by the State as the acting Chief Medical Officer of ASH; and during the~~


MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 85008-4056

1   same period he was acting under color of law and within the course and scope of his

2   employment in each of his employment roles.

3   37.  On information and belief, Kwoh and Jane or John Doe, are married to each other.

4        The acts described in Plaintiff's Complaint were performed in furtherance of the

5        Kwoh' marital community. The true identity of Jane or John Doe Kwoh is unknown

6        to Plaintiff at this time. However, Plaintiff will amend this Complaint when the true

7        name of Jane or John Doe Kwoh becomes known.

8   38.  At all times material to this Complaint, Defendant Calvin J. Flowers ("Flowers")

9        was employed by the State as the Chief Medical Officer of ASH; and during the

10       same period he was acting under color of law and within the course and scope of his

11       employment in each of his employment roles.

12  39.  On information and belief, Flowers and Jane or John Doe, are married to each other.

13       The acts described in Plaintiff's Complaint were performed in furtherance of the

14       Flowers' marital community. The true identity of Jane or John Doe Flowers is

15       unknown to Plaintiff at this time. However, Plaintiff will amend this Complaint

16       when the true name of Jane or John Doe Flowers becomes known.

17  40.  At all times material to this Complaint, Kindra Ochoa ("Ochoa") was employed by

18       the State as a Psychiatric Nurse Practitioner; and during the same period she was

19       acting under color of law and within the course and scope of her employment in

20       each of her employment roles.

21  41.  On information and belief, Ochoa and Jane or John Doe, are married to each other.

22       The acts described in Plaintiff's Complaint were performed in furtherance of the

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1   ~~choa's marital community. The true identity of Jane or John Doe Ochoa is unknown~~

2   ~~to Plaintiff at this time. However, Plaintiff will amend this Complaint when the true~~

3   ~~name of Jane or John Doe Ochoa becomes known.~~

4   42. ~~At all times material to this Complaint, Kindra Ochoa ("Ochoa") was employed by~~

5   ~~the State as a Psychiatric Nurse Practitioner at ASH; and during the same period she~~

6   ~~was acting under color of law and within the course and scope of her employment in~~

7   ~~each of her employment roles.~~

8   43. ~~On information and belief, Ochoa and Jane or John Doe, are married to each other.~~

9   ~~The acts described in Plaintiff's Complaint were performed in furtherance of the~~

10  ~~Ochoa's marital community. The true identity of Jane or John Doe Ochoa is~~

11  ~~unknown to Plaintiff at this time. However, Plaintiff will amend this Complaint~~

12  ~~when the true name of Jane or John Doe Ochoa becomes known.~~

13  44. At all times material to this Complaint, Lea'cher Carter ("Carter") was employed by

14  the State as a Behavioral Health Technician at ASH; and during the same period she

15  was acting under color of law and within the course and scope of her employment in

16  each of her employment roles.

17  45. ~~On information and belief, Carter and Jane or John Doe, are married to each other.~~

18  ~~The acts described in Plaintiff's Complaint were performed in furtherance of the~~

19  ~~Carter's marital community. The true identity of Jane or John Doe Carter is~~

20  ~~unknown to Plaintiff at this time. However, Plaintiff will amend this Complaint~~

21  ~~when the true name of Jane or John Doe Carter becomes known.~~

22  46. At all times material to this Complaint, Unique Coleman ("Coleman") was

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 85008-6656

1    employed by the State as a Behavioral Health Technician at ASH; and during the

2    same period she was acting under color of law and within the course and scope of

3    her employment in each of her employment roles.

4    47. ~~On information and belief, Coleman and Jane or John Doe, are married to each other.~~

5    ~~The acts described in Plaintiff's Complaint were performed in furtherance of the~~

6    ~~Coleman's marital community. The true identity of Jane or John Doe Coleman is~~

7    ~~unknown to Plaintiff at this time. However, Plaintiff will amend this Complaint~~

8    ~~when the true name of Jane or John Doe Coleman becomes known.~~

9    48. Every act and omission of the State and/or Cunico and/or Sheldon and/or Bowen

10    ~~and/or Kwoh and/or Flowers~~ and/or their, employees, representatives, servants, and

11    agents, as complained of herein, was performed under the color of the U.S. and/or

12    Arizona Constitution, and/or federal and/or State statutes, regulations, and codes.

13    49. ~~Defendants John Does 1-100, Jane Does 1-100, Black Corporations 1-10, and White~~

14    ~~Entities 1-10, inclusive, are individuals, corporations, partnerships, or business~~

15    ~~entities which caused the events complained of to occur in the State of Arizona.~~

16    50. ~~Plaintiff does not know the true identities of Defendants John Does 1-100, Jane Does~~

17    ~~1-100, Black Corporations 1-10, and White Entities 1-10. However, Plaintiff will~~

18    ~~amend this Complaint when the true identities of these Defendants become known.~~

19    51. On information and belief, the State is liable under the doctrines of respondeat

20    superior, principal/agency, and/or non-delegable duty for the actions of Defendants

21    Cunico, Sheldon, Bowen, ~~Kwoh, Flowers, Ochoa,~~ Carter, <u>and</u> Coleman, ~~John Does~~

22    ~~1-100, Jane Does 1-100, Black Corporations 1-10, and White Entities 1-10.~~

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6656

1

2

**STATEMENT OF FACTS**

GENERAL AVERMENTS

3  52. The ASH campus contains three licensed facilities. Of these, the ASH forensic

4      hospital (the "Forensic Hospital") is a licensed hospital that provides care and

5      treatment for patients who have been committed to reside at ASH pursuant to A.R.S.

6      § 13-502(D) after being found Guilty Except Insane ("GEI").

7  53. The patients residing in the Forensic Hospital include individuals with mental illness

8      and individuals with Serious Mental Illness. SMI individuals retain their civil rights

9      under State law, including the right to be free from unlawful discrimination. *See*

10     A.R.S. § 36-506; A.A.C. R9-21-201.

11 54. The Forensic Hospital also houses individuals with developmental disabilities. These

12     individuals likewise retain their civil rights under State law, including the right to be

13     free from unlawful discrimination. *See* A.R.S. § 36-551.01(A).

14 55. Every person with a developmental disability provided residential care by the State

15     also has the right to live in the least restrictive environment. *See* A.R.S. § 36-

16     506.01(C); 42 U.S.C. § 15009(a)(2); s*ee also* Olmsted v. L.C., 527 U.S. 581 (1999).

17 56. Plaintiff was admitted to ASH on or about April 1, 2020 after being adjudicated GEI

18     pursuant to A.R.S. § 13-502(D). The State continues to hold Plaintiff at ASH against

19     his will, in the most restrictive treatment environment the State offers.

20 57. The sentencing court ordered ASH to provide Plaintiff "all treatment necessary to

21     treat [his] mental illness." *See* State v. Solan, CR20190035 (Super. Ct. Ariz.

22     Coconino Cty.).



MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 850818-6056

58. <u>On information and belief, by operation of A.R.S. § 1-245, Plaintiff's criminal sentence was suspended by substantive modifications to A.R.S. § 13-502(D) which came into effect on January July 1, 2023. Notwithstanding, Plaintiff remains committed to ASH under the jurisdiction of the sentencing court.</u>

59. In 1993, at age 3, Plaintiff was first evaluated for a neurodevelopmental disability and diagnosed with Attention Deficit Hyperactivity Disorder.

60. By age 11, Plaintiff was formally diagnosed with an ASD following a series of evaluations conducted as part of his Individualized Education Plan.

61. In 2005, Plaintiff's diagnosis was confirmed as a "Cerebral Dysfunction manifesting as Asperger's syndrome" by Dr. Karen Bresnahan, M.D in Boston, Massachusetts.

62. In 2016, Dr. Daniel Cagua-Koo M.D. ("Dr. Cagua-Koo") clarified Plaintiff's ASD as a form of autoimmune encephalopathy resulting from his CIRS.

63. In 2021, ASH confirmed ASD as Plaintiff's primary psychiatric diagnosis.

64. <u>Prior to his admission to ASH and preceding pretrial confinement,</u> Plaintiff utilized a service animal for managing the effects of his ASD and comorbid mental health conditions. But for the State's exclusion of Foxy from ASH, Plaintiff would be utilizing Foxy for this purpose.

65. ~~Defendants have not provided any alternative aids that sufficiently supplant Foxy.~~

66. ~~Due to the absence of Foxy and/or sufficient alternative aids, Plaintiff has been unable to effectively engage in any of the treatment programs and services offered by ASH over the entirety of his commitment, now exceeding 4 ½ years.~~

MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

1

<u>FOXY THE FIRST</u>

2    67. Plaintiff and the original Foxy were violently separated in 2019 when Plaintiff was

3         carried off by sheriff's deputies to a county detention facility. Plaintiff was

4         subsequently committed to ASH and admitted without Foxy.

5    68. Upon arriving at ASH, Plaintiff requested a service animal accommodation for the

6         original Foxy to live with him. This request was denied by ASH's former Chief

7         Compliance Officer, Margaret McLaughlin, citing the supposedly secure nature of

8         ASH, unspecified health and safety concerns, and a nebulous administrative burden.

9    69. Plaintiff contested ASH's denial multiple times, and with the assistance of the

10        Arizona Center for Disability Law, submitted a formal demand letter to ASH's legal

11        counsel. However, the accommodation Plaintiff required was repeatedly denied.

12   70. This led Plaintiff to file a lawsuit and a Motion for Preliminary Injunction in the

13        United States District Court for the District of Arizona.

14   71. Plaintiff testified that without Foxy, his ability to engage in treatment programs had

15        severely declined, his social anxiety had worsened, and his overall mental health was

16        deteriorating.

17   72. Plaintiff contended that ASH's refusal to accommodate his service animal violated

18        Title II of the ADA.

19   73. The State argued that admitting Foxy would impose undue administrative burdens

20        and potentially disrupt the hospital environment.

21   74. The State also claimed Plaintiff couldn't care for Foxy independently and her

22        presence would somehow affect ASH's safety and security.



75. However, Plaintiff successfully demonstrated that the necessary modifications were minimal and within the scope of ADA requirements, and that he could and would take full responsibility for Foxy's care.

76. On March 22, 2022, the Court issued an order granting Plaintiff's motion for a preliminary injunction. *See* Solan v. Arizona State Hospital *supra* at Doc. 84. The Court found that Plaintiff was likely to succeed on the merits of his ADA claim, and plainly stated that ASH had violated the ADA, noting that ASH's concerns regarding Foxy were speculative and not based on actual risks.

77. ASH was ordered to conduct a particularized assessment of Plaintiff's request to determine whether reasonable modifications could be made to accommodate Foxy without fundamentally altering ASH's services.

78. Specially, ASH was required to "...conduct a particularized assessment of Plaintiff's request to have Foxy accompany him at the Forensic Hospital in accordance with the ADA and the relevant Code of Federal Regulations to determine: 1) whether reasonable modifications to its policies, practices, and procedures could be made that would permit Plaintiff the use of Foxy while housed at the Forensic Hospital; and 2) whether Foxy specifically (as distinct from "service dogs" generally) would be disruptive to the health or safety of other patients at Plaintiff's current housing unit, including Plaintiff's roommate, based on reasonable judgment that relies on current medical knowledge or the best available objective evidence and includes an assessment of individual patients at Plaintiff's current housing unit and the effect Foxy may have on them, including the probability that injury will actually occur;"

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

and "[u]pon conclusion of this assessment…inform Plaintiff, in writing, whether [ASH] will permit Foxy to accompany him while at the Forensic Hospital, and include therewith a detailed discussion of the above-ordered assessment."

79. The order required that "Defendant's assessment must identify which policies, practices, or procedures are of concern, and explain why each could, or could not, be modified in compliance with the ADA and the relevant Code of Federal Regulations," and reiterated that "[r]eliance on the profile of Forensic Hospital patients is not sufficient. The assessment must consider whether specific patients would have specific difficulties with the present of Foxy." *Internal quotes omitted.*

80. ASH was given 45 days to complete the particularized assessment and provide a detailed written determination (the "Particularized Assessment letter").

81. On information and belief, two weeks before the provided 45 day period had elapsed, Aaron Bowen, ASH's prior Superintendent and Chief Executive Officer ("Bowen"), tendered his two-week notice of resignation.

82. Several days before the 45 day period had elapsed, Bowen issued the Particularized Assessment letter and directed an ASH grievance investigator to deliver it to Plaintiff on the ASH Cottonwood unit. *See* Exhibit A.

83. The Particularized Assessment letter did not conform in nearly any respect to the Court's requirements. It reiterated many of the same affirmative defenses the Court had dismantled in its order, and it did not attempt to explain how Foxy specifically, as distinct from service dogs generally, would be disruptive to the health or safety of other patients on Plaintiff's treatment unit, as required by the Court's injunction.

84. The Particularized Assessment letter did not include–as also required by the injunction–an assessment of individual patients at Plaintiff's housing unit, the effect Foxy may have on them, or the probability that injury would actually occur to them.

85. While the Particularized Assessment letter did enumerate certain policies that may have needed to be altered, it did not explain why these policies could not be altered, or how their alteration would impose a substantive administrative and financial burden on the State.

86. Most egregiously, the letter concluded with an outrageous, defamatory attack on Plaintiff's character and the nature of his relationship with Foxy.

87. The Particularized Assessment letter stated, "while you ask ASH to consider Foxy to be a psychiatric service animal, statements that you have made to ASH staff and patients indicate that you consider her to be something other than an animal that is individually trained to perform a task or work that is directly related to your disability, which is how the ADA defines 'service animal.'"

88. Bowen claimed in the letter that "ASH has received information that you have either touched Foxy inappropriately in the past or contemplate doing so in the future," and asserted that Plaintiff had stated, "if I were to roast Foxy, she would look like a Cornish game hen, but she probably would not taste like it."

89. The Particularized Assessment letter also claimed that Plaintiff had "talked to another patient about sticking [his] fingers in Foxy's rectum and noted that [his] hand would not fit because it was too big," and that Plaintiff had said he was "saving [himself] for [his] fiancée Foxy, who has not consented to intercourse as of yet."



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

90. Plaintiff made no such statements. All of ASH's assertions that Plaintiff has engaged, or intends to engage in sexual conduct of any nature, or otherwise harm Foxy are categorically false, have no basis in reality, and accordingly have absolutely no evidentiary support.

91. On information and belief, these outrageous accusations were made up by the State after it lost the motion for a preliminary injunction; they were never brought up beforehand–neither in the pleadings, nor during the course of Plaintiff's so-called mental health treatment at ASH.

92. Not a single member of any of Plaintiff's ASH treatment teams have ever asked Plaintiff if he touched Foxy inappropriately or if he intended to; this topic has never come up in treatment, as it is entirely contrived by the State.

93. On information and belief, Bowens' attacks on Plaintiff's character were a deliberate attempt to divert attention from Plaintiff's valid claims and derail his litigation.

94. Holly R. Gieszl, Esq. ("Ms. Gieszl"), entered her notice of appearance on April 6, 2022, and began working with Plaintiff to challenge the State's disgusting letter.

95. However, on July 13, 2022, Plaintiff was notified that Foxy had passed away.

### FOXY THE SECOND

96. Upon receiving the news of Foxy's untimely demise, Plaintiff contacted her caretakers and directed them to deliver Foxy's body to her veterinarian for a biopsy.

97. Ear cartilage extraction and strip biopsies were performed, and the tissue samples were same-day expressed to Genetic Reflections LLC d/b/a ViaGen Pets and Equine (hereinafter "ViaGen").



MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1    98. Faced with the imminent choice to either clone Foxy, or terminate his temporal

2        existence and join with Foxy on the astral plane, Plaintiff opted for the former, and

3        on July 15, 2022, entered a genetic preservation and cell storage contract with

4        ViaGen, and commissioned a somatic cell culture from Foxy's tissue samples.

5    99. On October 27, 2022, ViaGen issued Certificate of Preservation number V6624, and

6        on October 30, 2022 notified Plaintiff that approximately 1,140,000 of Foxy's

7        somatic cells had been cultured and cryogenically preserved.

8    100. Plaintiff directed his general agent Joseph Cowsert ("Mr. Cowsert") to remove all of

9        Plaintiff's personal effects, vehicles, and building materials from his homestead.

10   101. Plaintiff then contacted his real estate agent, Jerry Brown ("Mr. Brown"), and

11        directed Mr. Brown to list Plaintiff's house along with one third of the land it sat on.

12   102. Plaintiff then contacted Martin Land Surveyors and commissioned a 3-way parcel

13        split of Plaintiff's homestead.

14   103. On July 19, 2023, Martin Land Surveyor recorded the subdivision plat, and Mr.

15        Brown found a cash buyer, who tendered an offer around the beginning of July.

16   104. Plaintiff accepted the offer, received the funds in escrow, and on July 27, 2023

17        issued a warranty deed, which was executed by and through Mr. Cowsert.

18   105. On August 11, 2023, Plaintiff entered a canine cloning contract with ViaGen, and

19        paid them $25,000.00 as a down payment under the contract.

20   106. On November 9, 2023 a single cloned puppy was born in ViaGen's Rochester New

21        York genetic engineering facility. Plaintiff named the reincarnated puppy "Foxy."

22        *See* Exhibit B.

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6656

107. Plaintiff paid the balance of the cloning contract and on January 9, 2024, Foxy was flown from Rochester, New York to Phoenix, Arizona, and hand delivered by ViaGen's staff to Mr. Cowsert.

108. On January 13, 2024 ViaGen executed a formal bilateral deed of assignment styled as a bill of sale, conveying to Plaintiff all of ViaGen's right, title, and interest in and to Foxy. *See* Exhibit C.

109. Plaintiff then placed Foxy in bailment with Mr. Cowsert, who was directed to care for, protect, cosset, and train her.

110. Over the next several months, Mr. Cowsert performed Foxy's basic housetraining, and facilitated her visits to her veterinarian to complete her puppy vaccinations.

111. Once Foxy was sufficiently vaccinated, Mr. Cowsert reached out to All Dogs Unleashed in Prescott, Arizona, and contracted with them on Plaintiff's behalf to provide a multi week live-in training course for Foxy, where she would learn basic and advanced obedience, and foundational service animal skills. Foxy completed the course with flying colors on or about May 16, 2024. *See* Exhibit D.

112. Mr. Cowsert continued Foxy's task training over the next few weeks. She was trained to perform Deep Pressure Therapy ("DPT") and to act as a social buffer, which are tasks intended to help Plaintiff with grounding and coping with the effects of his neurodevelopmental disabilities and PTSD.

113. After several weeks of training based on All Dogs Unleashed's instructions, Foxy could consistently perform DPT, basic alerting tasks, and operate peaceably in public as a social buffer.



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 85008-6056

114. From that point, through the date of this Complaint, Foxy met the definition of a service animal under the ADA, as she was individually trained to do work or perform tasks for Plaintiff's benefit, and the work or tasks Foxy was trained to perform were directly related to Plaintiff's disabilities.

115. On June 11, 2024, Plaintiff sent Coconino County notice that Foxy had been cloned and would assume the same county service dog ID number as her progenitor if the County did not object. The notice provided Foxy's updated microchip number, rabies vaccine certificate, sterilization status, and home address.

116. Coconino County responded by issuing a service animal license for Foxy under the original dog number and service dog tag number. *See* Exhibit E.

117. Foxy is now a healthy, 17-pound, young adult Pomeranian mix. *See* Exhibit F.

118. On June 13, 2024, Plaintiff submitted reasonable accommodation request letter to Defendant Sheldon via U.S.P.S. Certified Mail. *See* Exhibit G.

119. The Accommodation Request served to notify ASH that Plaintiff was asserting his rights under the ADA and the AzDA to a reasonable accommodation for Foxy.

120. Plaintiff's request explained that Foxy had been cloned, had completed professional training, and was now a *bona fide* service dog.

The Accommodation Request discussed how working Foxy had helped Plaintiff overcome self-isolation, and had enabled him begin to engage socially, travel, and start a business.

121. The letter also clarified that Foxy was healthy, fully vaccinated, and well-trained; and highlighted Plaintiff's substantial investment in Foxy's cloning and training.



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

122. Despite the clear guidance the Court previously provided to ASH as to what a particularized assessment must contain, ASH responded on July 5, 2024 with only a brief, one page denial letter (the "Denial Letter"). *See* Exhibit H.

123. After stating in the Denial Letter that "[t]he Hospital has extensively reviewed the Americans with Disabilities Act (ADA) regulations on service animals as part of its consideration of your initial and most recent request," the ASH administrators proclaim that "[t]he Hospital will not modify its existing policies, practices and/or procedures to allow for a service animal at the Forensic Hospital."

124. ASH bases its refusal to modify its policies, practices and/or procedures to accommodate Foxy on the following allegations:

a. "The Hospital has legitimate concerns that, based on your own personal statements, your past relationships and interactions with a 'service animal' have not only been counter-therapeutic, but also inappropriate (sexual in nature)."

b. "The facilities maintained by the Hospital, including the Forensic Hospital, are secure facilities and not accessible to the general public. Furthermore, the Hospital ONLY provides health care services at its facilities to individuals who are under court order for treatment (i.e., the Hospital does not provide health care services to the public at large)."

c. "There are legitimate medical and safety reasons to exclude a service animal from the Hospital."

d. "The presence of a service animal within an Arizona State Hospital facility would require the alteration of services, programs, and/or activities and would

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 85008-6656

1    fundamentally alter many typical functions of the Hospital."

2    e. "The proper handling of a service animal, including the toileting, feeding,

3       grooming and veterinary care could not feasibly be provided at the sole

4       responsibility of the patient. Such activities would require additional staff

5       resources and coordination."

6    125. Defendants' assertion that Plaintiff intends, or has stated intent to have sexual

7       relations with Foxy is patently false, has no basis in reality, and accordingly has no

8       evidentiary support. These statements are nothing more than an abridged recitation

9       of the libel promulgated by Bowen, who previously attempted to exclude Foxy from

10      ASH on the inane charge that Plaintiff might rape, murder, and eat her.

11   126. Defendants' assertion that the presence of Plaintiff's beloved service animal would

12      somehow be counter-therapeutic to Plaintiff is equally ludicrous, has no basis in

13      reality, and on information and belief, runs counter to the prevailing academic

14      literature pertaining to animal therapy for persons with ASD.

15   127. On information and belief, the other points raised in the Denial Letter are barred by

16      the doctrine of *res judicata* and/or collateral estoppel, based on the Court's prior

17      findings in Solan v. Arizona State Hospital *supra*.

18   128. Plaintiff also submitted an ASH "Special Visit Request Form" for a visit on July 17,

19      2024 (Plaintiff's birthday) with Ms. Gieszl, Josh Mozell, Esq. ("Mr. Mozell"), Mr.

20      Cowsert, and Foxy.

21   129. Plaintiff added a notice to the ~~request~~ form, informing ASH that the service animal

22      accommodation implicit in the visit request was mandatory by law.


MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

130. After two weeks had elapsed without a response, Plaintiff contacted Ms. Geiszl, who sent an email to the Assistant Attorney General Erin Cohen, Esq. ("Cohen").

131. Cohen responded on July 11, 2024 with a brief email which stated only, "ASH's response: Josh and Holly are approved. The dog is not allowed on our grounds."

132. A few days before the visit, ASH provided Plaintiff a copy of the visit request form marked "approved," but stating "No dogs are allowed on Campus." *See* Exhibit I.

133. Ms. Gieszl and Mr. Mozell attended the food visit, but due to ASH's no-service dog policy, both Foxy, and her interim caretaker, Mr. Cowsert, were excluded.

134. On October 5, 2024, Brad Smith, the owner of All Dogs Unleashed conducted an evaluation of Foxy and her training status and testified that "…it is my professional opinion that Foxy demonstrates a consistent ability to perform DPT and alerting tasks, provide grounding support, and serve as a social buffer for her handler. Foxy possesses all the qualities expected of a service dog, including acute sensitivity to her handler's emotional states, exceptional adaptability to stress, and the ability to remain focused and calm in disruptive situations…Foxy performs well on and off leash, consistently responds to her handler's verbal and nonverbal commands, and is fully housetrained. She displays no signs of aggression, and enjoys being picked up and handled by her trainers and strangers alike…Overall, Foxy is a friendly and well-adjusted animal, and has acquired the necessary skills and temperament to effectively assist her handler. I accordingly certify that Foxy is a fully trained service dog, and is prepared to serve as such for Mr. Solan." *See* Exhibit J.

135. Mr. Cowsert testified as well, stating "Foxy has been fully trained in advanced

obedience and essential service animal skills, and continues to receive ongoing training maintenance under my supervision, and under the advice and guidance of All Dogs Unleashed, to maintain and enhance her skills as a service animal…She performs tasks that are crucial for assisting Mr. Solan in managing the effects of his neurodevelopmental disabilities….Foxy is individually trained to perform Deep Pressure Therapy work, which historically has been instrumental in helping Mr. Solan cope with sensory processing and mitigating sensory overstimulation…Foxy is fully housetrained, very quiet, and gets along exceptionally well with all human and non-human animals she's come in contact with." *See* Exhibit K.

136. Defendants' continued interference with Foxy has also destroyed Plaintiff's therapeutic relationship with his providers, further impairing his treatment progress.

137. On numerous occasions throughout 2024, Defendant Lea'cher Carter ("Defendant Carter") and Defendant Unique Coleman ("Defendant Coleman") made various lewd and defamatory statements about Plaintiff and Foxy, in Plaintiff's presence and in front of other ASH patients, including "you eat dog p***y" and "you eat dog a**'".

138. On or about May 22, 2024, Defendant Carter openly made these statements and also declared that Plaintiff's "d*** is so small you need a magnifying glass to see it."

139. On or about August 13, 2024, Plaintiff served Notice of Claim ~~("NOC")~~ on the State of Arizona and Defendants Cunico, Sheldon, Bowen, Kwoh, Flowers, Ochoa, Carter, and Coleman, via U.S.P.S. Certified Mail, Restricted Delivery. *See* Exhibit L.

140. The NOC offered to settle all claims relating to Foxy for the sum certain of $33,000,000. All Defendants ~~so served~~ failed to pay, adjust, rebut, or respond to the

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 850018-0656

1       NOC.

2       141. On or about October 13, 2024, Plaintiff filed an administrative complaint with

3            ASH's Complains, Grievances and Appeals office (the "CGA Complaint"). ASH

4            summarily dismissed the CGA Complaint on November 8, 2024, stating in its

5            response letter: "In regards to your request to have your personal dog visit or live

6            with you at ASH, this issue cannot be handled through the Hospital's internal

7            complaint process, due to the litigation history…Based on the findings of this

8            investigation, your complaint is dismissed." *See* Exhibit M.

9       142. On information and belief, ~~there is~~ no mechanism exists to appeal the dismissal of

10           CGA Complaint, and based on ASH's admitted preclusion of Plaintiff's use of the

11           internal administrative resolution process in this matter, all administrative remedies

12           are exhausted as a matter law for the purposes of the Prison Litigation Reform Act.

13      143. As a result of Defendants' refusal to permit Foxy to accompany Plaintiff at ASH,

14           Plaintiff and his family have also been forced to pay out-of-pocket expenses to board

15           her with Mr. Cowsert past the time needed to train her.

16      144. From the date Plaintiff informed Defendants that Foxy had been cloned and

17           retrained as a service animal, through the filing of this Complaint, Plaintiff has

18           experienced distress, anguish, and heightened mental health symptoms, including

19           hyper-vigilance, nightmares, flashbacks, sensory overload, increased anxiety,

20           suicidal ideation, and self-injurious stimming behavior, without his service animal

21           present to perform the tasks that alleviate these symptoms.

22



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

145. On numerous occasions since the date Plaintiff informed Defendants that Foxy had been cloned and retrained as a service animal, Plaintiff engaged in self-injurious actions, including head banging and hair pulling. These self-injurious actions could have been prevented or immediately interrupted by Foxy.

146. Despite this, ASH callously dismissed Plaintiff's injuries and continued their attack of Foxy's status, falsely claiming in response to Plaintiff's CGA Complaint: "Your allegations of self-harm, anxiety, and suicidal ideation, due to not having the requested personal pet Foxy with you, are not supported by any recorded instance of your self-harm, anxiety, or suicidal ideation during the period in question."

THE INSANE ASYLUM TRUST

147. Arizona's Thirteenth Territorial Legislature appropriated $100,000 for the construction of an Arizona Insane Asylum. *See* Ariz. Laws 1885, No. 58. The same legislature authorized the Board of Supervisors of Maricopa County to issue bonds to the amount of $3500 for the purpose of purchasing 160 acres of land upon which to build the Insane Asylum. *See* Ariz. Laws 1885.

148. The Board of Supervisors of Maricopa County, acting pursuant to Ariz. Laws 1885, No. 53, issued bonds and applied the revenue therefrom to purchase, from the Most Worshipful Martin William Kales, the southwest quarter of section two, in township one, north of range three, east of Gila and Salt River Base and Meridian (the "Land")

149. On October 1, 1885, the Land was conveyed in trust to the Board of Directors of the Arizona Insane Asylum by a deed recorded at Book 12, Pages 114 through 121, Official Records of Maricopa County (the "Trust Deed"). This conveyance created a

MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0056

1    charitable trust (the "ASH Trust"). *See* Coerver *supra.*

2    150. The habendum of the Trust Deed incorporates by reference all the provisions of

3    Ariz. Laws 1885, No. 58 into the ASH Trust. *See* the Trust Deed at page 5 (requiring

4    that the "Directors of the Insane Asylum of Arizona and…their successors" shall

5    forever "hold all and singular [the ASH land] together with the appurtenances" for

6    the "use and benefit of the…Asylum in accordance with the provisions of said acts

7    of said Legislature.")

8    151. The Arizona Supreme Court confirmed the ASH Trust in 1966, holding the Trust

9    Deed created a charitable trust; the mentally ill of the State generally, and patients

10    confined at ASH specifically, being the beneficiaries thereof; and the members of

11    the Arizona State Hospital Board, as successors in office and in interest to the

12    original Directors of the Insane Asylum of Arizona, being the Trustees thereof. *See*

13    Coerver *supra.*

14    152. The *Coerver* court also specifically acknowledged that the ASH Trust Deed

15    incorporated the acts of the Territorial Legislature establishing the ASH (*i.e.*, Ariz.

16    Laws 1885, No. 53 and 58) into the terms of the ASH Trust. *See* Id.

17    153. In 1973, Arizona's Thirty-First Legislature passed legislation establishing the

18    ADHS, terminating the Arizona State Hospital Board, and transferring the board's

19    powers and duties to the Director of ADHS. *See* Ariz. Laws 1973 Ch. 158, §§ 34-45.

20    154. The establishment of ADHS, termination of the State Hospital Board, and transfer of

21    its powers were to become effective "at such time and to the extent that the governor

22    by executive order declares that the department of health services shall become


MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6656

1    operative and may be phased into effect, but in no event later than July 1, 1974." Id.

2    155. On May 1, 1975, Arizona Governor Jack Williams issued Executive Order No. 74-6,

3        ordering that "the authority, functions, programs, records, furnishings and property,

4        equipment, all unexpended and unencumbered funds and personnel…of the Arizona

5        State Hospital shall be transferred to the Department of Health Services…on May 1,

6        1974."

7    156. The Land and its appurtenant facilities which comprise ASH are not owned by the

8        State; they are still owned by the ASH Trust, and administered by the Director of the

9        Arizona Department of Health Services as *ex officio* trustee pursuant to *Coerver*.

10   157. A.R.S. § 38-211(A) provides that "[w]hen it is provided by law that a state officer

11       shall be appointed pursuant to this section, the governor shall nominate and with the

12       consent of the senate appoint such officer as prescribed in this section."

13   158. On information and belief, in response to a dispute with Senate Republicans,

14       Governor Hobbs withdrew Cunico's A.R.S. § 38-211 nomination and installed her

15       as an "Executive Deputy Director" and "Cabinet Executive Officer" over ADHS.

16   159. The Arizona Senate brought an action against Governor Hobbs challenging the

17       Governor's appointment of such "Executive Deputy Directors" to the various

18       departments of the State. *See* Arizona State Senate v. Hobbs *supra*.

19   160. On June 6, 2024, the Maricopa County Superior Court issued an under-advisement

20       ruling, holding that Governor Hobbs's installation of Executive Deputy Directors

21       constituted improper and unilateral appointment of *de facto* directors. *See* Id.

22   161. Defendant Cunico, as *de facto* Director of ADHS, is likewise *de facto* trustee of the

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

1  ~~ASH Trust, and in that capacity she shall be referred to hereinafter as the "Trustee".~~

2  162. ~~On information and belief, Plaintiff is a special beneficiary of the ASH Trust and has~~

3  ~~common law standing to sue the Trustee because: (a) he is a patient confined on the~~

4  ~~real property of the ASH Trust; and (b) his subsistence is contingent upon the daily~~

5  ~~corody provided out of the ASH Trust corpus by the Trustee through her agents.~~

6  163. ~~On information and belief, Plaintiff is also a charitable beneficiary of the ASH Trust~~

7  ~~with statutory standing to enforce the same as well. *See* A.R.S. § 14-1201(4); *see*~~

8  ~~*also* A.R.S. § 14-10405 ("The settlor of a charitable trust, *among others,* may~~

9  ~~maintain a proceeding to enforce the trust." *Emphasis added.*)~~

10  **STATEMENT OF CLAIMS**

11  **FOR THE FIRST CAUSE OF ACTION:**

12  VIOLATIONS OF TITLE II'S PROHIBITION ON DISCRIMINATION

13  164. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the

14  statements contained in the preceding paragraphs.

15  165. In 1990 the United States Congress found, *inter alia*, that laws were needed to more

16  fully protect "some 43 million Americans with one or more physical or mental

17  disabilities;" that "the Nation's proper goals regarding individuals with disabilities

18  are to assure equality of opportunity, full participation, independent living and

19  economic self-sufficiency for such individuals;" and that "the continuing existence

20  of unfair and unnecessary discrimination and prejudice denies people with

21  disabilities the opportunity to compete on an equal basis and to pursue those

22  opportunities for which our free society is justifiably famous…"

MATTHEW PHILIP SOLAN
501 NORTH TWENTY-SEVENTH STREET
PHOENIX, ARIZONA 85008-6056

166. Congress thus stated as its purpose in passing the ADA (42 U.S.C. § 12101(b)): "It is the purpose of this act…to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities…to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities…to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities [and] to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."

167. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation or denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.130.

168. Public entities include "[a]ny State or local government" and "[a]ny department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1); 28 C.F.R. § 35.104.

169. The specific prohibitions against discrimination include the requirement that: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability..." 28 C.F.R. § 35.130(b)(7)(i).

170. Title II's regulations further provide that a public entity shall modify its policies, practices, or procedures to permit the use of a service animal by an individual with a

MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6656

1    disability. 28 C.F.R. § 35.136(a).

2    171. ASH's duty on receiving a request for accommodation is well settled by case law

3    and applicable regulations. It is required to undertake a fact-specific investigation to

4    determine what constitutes a reasonable accommodation. Mere speculation that a

5    requested accommodation is infeasible falls short of the reasonable accommodation

6    requirement; ASH must gather sufficient information from Plaintiff and qualified

7    professionals to determine what accommodations are necessary.

8    172. Further, this Court already directed the State as to how ASH is required to conduct a

9    particularized assessment of Plaintiff's service animal accommodation request.

10   173. After receiving Plaintiff's most recent requests for a reasonable accommodation for

11   Foxy, through the filing of this Complaint, the State never consulted Plaintiff, and on

12   information and belief, did not consult any qualified experts either. Instead, it

13   summarily denied the requests, raised numerous issues previously rejected by the

14   Court, and unleashed an outrageous attack on Plaintiff's relationship with Foxy.

15   174. As of the date Plaintiff notified the State of his need for a service animal

16   accommodation, through the date of the filing of this Complaint, the State continues

17   to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the

18   basis of his disabilities, thus wrongly denying Plaintiff the benefits of the services,

19   programs or activities of ASH, in violation of Title II of the Americans with

20   Disabilities Act, 42 U.S.C. § 12132, and its implementing regulations including, but

21   not limited to 28 C.F.R. §§ 35.130 and 35.136.

22   175. As a direct and proximate result of the State's aforementioned acts, Plaintiff has

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1  suffered humiliation, hardship, anxiety, indignity, significant mental and emotional

2  anguish, and out-of-pocket expenses he would not have otherwise incurred.

3  176. Pursuant to 42 U.S.C. § 12133, Plaintiff is entitled to the remedies set forth in 29

4  U.S.C. § 794a. Plaintiff seeks damages, preliminary and permanent injunctions to

5  prohibit the State from excluding Foxy from ASH while Plaintiff is confined at

6  ASH, and a declaration stating the State violated Title II by excluding Foxy.

7  177. Plaintiff is entitled to, and seeks compensatory damages because the State's denial

8  of accommodations was a result of its officer's and employees' deliberate

9  indifference to Plaintiff's disability related needs and established disability law.

10  **AS FOR THE SECOND CAUSE OF ACTION:**

11  VIOLATIONS OF TITLE III'S PROHIBITION ON DISCRIMINATION

12  178. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the

13  statements contained in the preceding paragraphs.

14  179. Title III of the ADA provides in pertinent part: "No individual shall be discriminated

15  against on the basis of disability in the full and equal enjoyment of the goods,

16  services, facilities, privileges, advantages, or accommodations of any place of public

17  accommodation by any person who owns…or operates a place of public

18  accommodation." 42 U.S.C. §12182(a).

19  180. The ADA further provides that "it shall be discriminatory to afford an individual…

20  on the basis of a disability…directly, or through contractual, licensing, or other

21  arrangements with the opportunity to participate in or benefit from a good, service,

22  facility, privilege, advantage, or accommodation that is not equal to that afforded to

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

1    other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

2    181. Discrimination under Title III includes "a failure to take such steps as may be

3    necessary to ensure that no individual with a disability is excluded, denied services,

4    segregated or otherwise treated differently than other individuals because of the

5    absence of auxiliary aids and services…" 42 U.S.C. § 12182(b)(2)(A)(iii).

6    182. Title III further prohibits "a failure to make reasonable modification in policies,

7    practices, or procedures, when such modifications are necessary to afford such

8    goods, services, facilities, privileges, advantages, or accommodations to individuals

9    with disabilities…" 42 U.S.C. § 12182(b)(2)(A)(ii).

10   183. Under the DOJ's regulations implementing the ADA, "a public accommodation

11   shall modify policies, practices, or procedures to permit the use of a service animal

12   by an individual with a disability." 28 C.F.R. § 36.302(c)(1).

13   184. The ASH, as a licensed psychiatric hospital held in a quasi-public charitable trust,

14   and not in fee simple by the State, is a "place of public accommodation," within the

15   meaning of Title III of the ADA, rather than a public entity under Title II.

16   185. At all times material to this complaint the Trustee held legal title to, and

17   administrative responsibilities over the ASH land and its appurtenant medical

18   facilities, and was the owner of ASH for the purposes of 42 U.S.C. §12182(a).

19   186. By denying Plaintiff's request to be accompanied by Foxy on the ASH property, the

20   Trustee violated Title III of the ADA.

21   187. As a direct and proximate result of the Trustee's aforementioned acts, Plaintiff has

22   suffered humiliation, hardship, anxiety, indignity, significant mental and emotional



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

1   ~~anguish, and out-of-pocket expenses he would not have otherwise incurred.~~

2   188. ~~Pursuant to 42 U.S.C. §§ 12188(a) and 12205, Plaintiff is entitled to, and seeks~~

3   ~~declaratory and injunctive relief against the Trustee, reasonable attorneys' fees, and~~

4   ~~costs of suit.~~

5   189. ~~Plaintiff seeks preliminary and permanent injunctions restraining and enjoining the~~

6   ~~Trustee from denying Foxy entry to the ASH property while Plaintiff resides at the~~

7   ~~hospital.~~

8   190. ~~Plaintiff further seeks a declaration stating the Trustee violated Title III of the ADA~~

9   ~~by excluding Foxy from the premises.~~

10                       **AS FOR THE <u>SECOND</u> ~~THIRD~~ CAUSE OF ACTION:**

11              VIOLATIONS OF THE ADA'S PROHIBITION ON RETALIATION

12   191. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the

13        statements contained in the preceding paragraphs.

14   192. ~~Defendants State of Arizona, Cunico, Sheldon, Bowen, Carter, and Coleman shall be~~

15        ~~referred to in this Third Cause of Action as "Cause Third Defendants."~~

16   193. 42 U.S.C. § 12203 provides that "[n]o person shall discriminate against any

17        individual because such individual has opposed any act or practice made unlawful

18        by this chapter or because such individual…participated in any manner in…[a]

19        proceeding...under this chapter."

20   194. Further, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any

21        individual in the exercise… [of] any right granted or protected by [the ADA]." Id.

22   195. ~~On information and belief, Cause Third Defendants discriminated against Plaintiff~~

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1    and/or interfered with Plaintiff in the free exercise of his disability rights, by making

2    false accusations against Plaintiff of animal abuse and bestiality in response to

3    Plaintiff's eminently reasonable request for a service animal accommodation, and/or

4    for opposing the State's illegal anti-service animal policies and/or practices.

5    196. As a direct and/or proximate result of the Cause Third Defendants' acts and

6    omissions, Plaintiff suffered humiliation, indignity, and extreme distress.

7    197. Plaintiff engaged in multiple protected activities under the ADA, including filing an

8    ADA claim against ASH for its unlawful exclusion of Foxy. Plaintiff also opposed

9    ASH's illegal anti-service dog policies and practices through exhaustive negotiation,

10   declamation, demonstration, remonstration, and litigation.

11   198. On information and belief, prior to Plaintiff filing his first ADA claim in 2020, no

12   allegations of inappropriate conduct involving Foxy were raised in Plaintiff's

13   treatment records, progress notes, or otherwise. After Plaintiff's ADA claims were

14   filed, Defendant Bowen and various public servants acting under him, including

15   Plaintiff's former psychiatrist, Dr. Stephen O. Morris, and numerous unknown ASH

16   nurses and/or behavioral health technicians and/or other staff persons, engaged in a

17   deliberate and retaliatory campaign to humiliate, intimidate, and discredit Plaintiff.

18   199. As part of this campaign, ASH staff fabricated and disseminated false incident

19   reports suggesting Plaintiff had engaged in criminal conduct against Foxy. These

20   accusations were false, and on information and belief the ASH staff that wrote them

21   knew they were false, or made no reasonable attempt to verify their veracity.

22   200. These defamatory and retaliatory statements were first introduced to Plaintiff in the

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6656

1    Particularized Assessment Letter, shortly after the Court granted Plaintiff's motion.

2    The letter included detailed allegations purportedly based on Progress Notes and

3    Incident Reports recorded by ASH staff, and interviews with Plaintiff.

4  201. Defendant Bowen knowingly manipulated and misrepresented Plaintiff's statements

5    to create a false narrative of animal abuse. For instance, he claimed that Plaintiff

6    referred to Foxy as a "woman" and "co-sovereign" to suggest impropriety. In reality,

7    these appellations are genuine expressions of Plaintiff's ecocentric worldview and

8    rejection of human exceptionalism. This was reiterated by Plaintiff during the cited

9    interviews, but Bowen nevertheless disregarded this evidence and weaponized

10    Plaintiff's innocuous oratory to craft a malicious subterfuge.

11  202. Further, the progress notes and incident reports cited in the Particularized

12    Assessment Letter were recorded after Plaintiff filed his initial ADA claim, but

13    before the issuance of the Particularized Assessment letter. These notes and reports

14    had never been treated as credible or relevant by any of Plaintiff's inpatient

15    treatment teams, as evidenced by the total lack of treatment interventions for a

16    zoophilic disorder in Plaintiff's treatment plans.

17  203. In fact, Plaintiff's relationship with Foxy has never been called into question by any

18    of Plaintiff's ASH treatment teams, nor have any allegations of abuse or impropriety

19    with respect to Foxy ever been included in any of Plaintiff's treatment plans or

20    mental health assessments.

21  204. On information and belief, the temporal proximity between ASH's abrupt reliance

22    on these previously disregarded records demonstrates a retaliatory object.



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-4056

205. Later, on July 5, 2024, Defendant Sheldon responded to Plaintiff's eminently reasonable service animal accommodation request by summarily denying the same without conducting a proper assessment, and accusing Plaintiff of having a relationship with Foxy that was "sexual in nature."

206. On information and belief, Defendant Sheldon knew Plaintiff's relationship with Foxy was not sexual in nature, or recklessly failed to investigate the nature of Plaintiff's relationship with Foxy before making such an accusation.

207. On information and belief, these defamatory statements by Defendants Bowen and Sheldon were made with the intent to retaliate against Plaintiff for exercising his rights under the ADA, and to deter him from pursuing the disability accommodations to which he was and remains entitled.

208. By promulgating these scandalous communications, Defendants Bowen and Sheldon also destroyed Plaintiff's trust in ASH and its treatment teams, rendering him fully unable to participate in therapy. In fact, Plaintiff's current psychologist, Amanda Brimlow, canceled all of Plaintiff's therapy sessions on the grounds that she could not conduct trauma therapy as Plaintiff didn't "trust" her.

209. These Defendants' false allegations not only created a hostile and degrading environment that that disrupted Plaintiff's therapeutic progress, but also undermined his confidence in, and ultimately dissuaded Plaintiff from pursuing additional civil rights and tort claims that he would have otherwise brought against the State and its employees over the past 2½ years, including but not limited to documented assaults and batteries against Plaintiff's person by ASH staff.

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 85008-6056

210. The retaliation by Defendants Bowen and Sheldon also caused Plaintiff extreme distress, including heightened anxiety, depression, and suicidal ideation, exacerbating his mental health conditions.

211. Pursuant to 42 U.S.C. § 12203(c), Plaintiff is entitled to, and seeks the remedies and procedures available under 42 U.S.C. §§ 12133 and/or 12188, including damages, injunctive, and declaratory relief.

## AS FOR THE **THIRD** ~~FOURTH~~ CAUSE OF ACTION:

### VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

212. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the statements contained in the preceding paragraphs.

213. Section 504 of the Rehabilitation Act provides in pertinent part: "[N]o otherwise qualified individual with a disability...shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance..." *See* 29 U.S.C. § 794.

214. On information and belief, at all times material to this Complaint, the State through ASH, and/or the Trustee was a recipient of federal financial assistance within the meaning of Section 504, including but not limited to Medicare and Medicaid funds.

215. At all times material to this Complaint, Plaintiff has been a qualified individual with a disability (also referred to as a "handicapped person") within the meaning of Section 504 and met the eligibility requirements for the receipt of the aids, benefits, services, programs, and activities of ASH.



MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

216. State and/or Trustee, by their discriminatory exclusion of Foxy from accompanying Plaintiff at ASH, have violated Section 504 and its implementing regulations.

217. As a direct and/or proximate result of the discrimination aforesaid, Plaintiff suffered humiliation, hardship, anxiety, indignity, and significant mental and emotional harm.

218. Pursuant to 29 U.S.C. § 794a, Plaintiff is entitled to, and seeks damages, injunctive relief, and reasonable attorneys' fees and costs against the State and/or Trustee.

### AS FOR THE FIFTH CAUSE OF ACTION:

#### VIOLATIONS OF THE EIGHT AMENDMENT

219. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the statements contained in the preceding paragraphs.

220. Defendants Cunico, Sheldon, Kwoh, Flowers, Ochoa, and Carter referred to in this Fifth Cause of Action as "Cause Fifth Defendants."

221. 42 U.S.C. section 1983 provides, in pertinent part, that "[e]very person, who under color of any statute, ordinance, regulation, custom or usage of any state…subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured…"

222. The Eighth Amendment to the United States Constitution prohibits infliction of cruel and unusual punishment, including a failure to provide adequate medical care.

223. At all times material to this complaint, Plaintiff was a disabled individual enrolled in the State of Arizona's program for individuals deemed by the State to be mentally ill.

224. Plaintiff was confined to the custody of the ASH for restorative treatment by court

MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 85005-0056

1    order, after being adjudicated insane. Cause Fifth Defendants were responsible for

2    providing mental health care to Plaintiff at ASH.

3    225. Cause Fifth Defendants knew that Plaintiff had serious mental health and

4    developmental disability related needs. Cause Fifth Defendants, acting pursuant to

5    widespread customs and practices established and ratified by Defendant State of

6    Arizona, failed to accommodate Plaintiff's developmental disability related needs.

7    226. Cause Fifth Defendants made purposeful and conscious decisions to disregard well-

8    established disability law, including but not limited to the service animal access

9    requirements under the ADA and AzDA, instead relying on contrived and fraudulent

10    claims of animal abuse to justify their illegal exclusion of Plaintiff's service animal.

11    227. The responses by Cause Fifth Defendants to Plaintiff's serious disability needs

12    demonstrate deliberate indifference, as Cause Fifth Defendants knew Plaintiff faced

13    a serious medical need for service animal accommodations and/or alternative aids,

14    and Cause Fifth Defendants consciously disregarded that need, and the consequence

15    of their respective actions by failing to take reasonable measures to address it.

16    228. At no time did Cause Fifth Defendants assert or justify their exclusion of Foxy from

17    ASH based on lack of personnel, financial and other resources available to them, or

18    which they could reasonably obtain to facilitate Plaintiff's needed accommodations.

19    229. Cause Fifth Defendants' deliberate indifference to Plaintiff's disability related health

20    needs directly and/or proximately caused a substantial worsening of Plaintiff's

21    mental health conditions, and psychiatric damages for which he will require years if

22    not a lifetime of care, services, and treatment, entitling Plaintiff to compensatory,

MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1    consequential, and special damages in an amount to be determined at trial.

2    230. Plaintiff is entitled to punitive damages against Cause Fifth Defendants under 42

3    U.S.C. § 1983, in that the actions of these Defendants were taken maliciously,

4    willfully, or with a reckless disregard of Plaintiff's constitutional rights.

5    231. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and

6    pre-judgment interest, as allowable by federal law.

7    **AS FOR THE SIXTH CAUSE OF ACTION:**

8    REGULATORY TAKING WITHOUT DUE PROCESS

9    232. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the

10   statements contained in the preceding paragraphs.

11   233. Defendants Cunico and Sheldon are charged under this Sixth Cause of Action and

12   shall be referred to therein as "Cause Sixth Defendants."

13   234. The Fifth Amendment to the United States Constitution, as applied to the states

14   through the Fourteenth Amendment, provides that private property shall not be taken

15   for public use without just compensation.

16   235. Plaintiff's ownership interest in Foxy is a valid property interest within the meaning

17   of the Fifth Amendment.

18   236. Plaintiff incurred expenses in excess of $60,000.00 in cloning, transporting, training,

19   and maintaining Foxy. These expenses were made with the reasonable, investment-

20   backed expectation that Foxy would serve Plaintiff's specific needs as his service

21   animal while Plaintiff is confined at ASH, as guided by the plain language of the

22   ADA and the prior injunction requiring ASH to conduct a particularized assessment



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 85008-4056

1    to determine whether Foxy could accompany Plaintiff at ASH.

2    237. Cause Sixth Defendants and their agents, acting under color of state law, have

3    eroded Plaintiff's property interests in Foxy by barring Foxy from accompanying

4    Plaintiff in ASH's facilities without an objective, evidence-based assessment of

5    Foxy's impact, instead relying on discriminatory, speculative, and defamatory

6    assumptions about Plaintiff.

7    238. On information and belief, Cause Sixth Defendants' exclusion of Foxy from ASH

8    amounts to an unconstitutional regulatory taking, in that it deprived Plaintiff of the

9    full value of Foxy, her training, companionship, and support, provided no

10    compensation for the deprivation, and was effected with no legal process at all.

11    239. On information and belief, Plaintiff has no adequate remedy at law, as Defendants'

12    exclusion of Foxy deprives Plaintiff of the therapeutic benefits Foxy is trained to

13    provide, as well as the full use and enjoyment of his property interest in her without

14    just compensation, in violation of the Fifth Amendment's Takings Clause.

15    240. Cause Sixth Defendants' actions also lack a legitimate public purpose, as they do not

16    serve any clearly demonstrated health or safety interests that are based on current

17    medical knowledge or evidence; instead, the exclusion of Foxy was motivated by

18    animus or an arbitrary application of ASH's general policies, despite the

19    requirements for individualized assessment under the ADA and prior court orders.

20    241. As a direct and proximate result of Cause Sixth Defendants' actions, Plaintiff has

21    suffered substantial and irreparable harm, including financial loss, emotional

22    distress, loss of therapeutic benefits, and a significant exacerbation of his disability-



MATTHEW PHILIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1    related symptoms.

2    242. On information and belief, pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to just

3    compensation for this taking, as well as declaratory relief, and an injunction

4    prohibiting Cause Sixth Defendants' from taking Foxy without due process of law.

5    243. Plaintiff is also entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988,

6    pre-judgment interest, and costs as allowable by federal law.

7                    **AS FOR THE SEVENTH CAUSE OF ACTION:**

8                    CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

9    244. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the

10    statements contained in the preceding paragraphs.

11    245. Defendant Sheldon and other John or Jane Doe Defendants (hereinafter "Cause

12    Seventh Defendants"), acting in concert and under color of state law, conspired to

13    deprive Plaintiff of his civil rights, including his right to reasonable service animal

14    accommodation and his right to equal protection.

15    246. Cause Seventh Defendants' actions were motivated by their invidious discriminatory

16    animus against Plaintiff as a disabled individual dependent on a service animal to

17    manage disabilities, and in furtherance of a policy to deny all such accommodations,

18    regardless of the individual merits of a particular dog or needs of the patient.

19    247. Cause Seventh Defendants, through their official policies, actions, and statements,

20    treated Plaintiff as an "other" class of patient—one requiring a service animal for

21    psychiatric assistance—subject to particular scorn, derision, and hostility.

22    248. In Solan v. Arizona State Hospital, *supra*, this Court held that ASH may not broadly



MATTHEW PHILIP SOLAN
501 North Twenty-Fourth Street
Phoenix, Arizona 85008-6056

1    exclude all service animals without particularized assessments, enjoining ASH to

2    show how "Foxy specifically (as distinct from "service dogs" generally) would be

3    disruptive to the health or safety of other patients."

4    249. Despite the Court's prior order mandating a particularized assessment of Plaintiff's

5    accommodation request, Bowen refused to properly conduct this assessment; instead

6    citing baseless and defamatory claims about Plaintiff's purported prurient intents.

7    250. This refusal was upheld and repeated by Cause Seventh Defendants without any

8    attempt to conduct a valid particularized assessment, reflecting a systematic denial

9    of service animal accommodations for individuals who require them.

10   251. Cause Seventh Defendants' defamatory statements were designed to justify the

11   denial of Plaintiff's service animal accommodation request and prevent him from

12   receiving the care and accommodations he requires, and is entitled to by law.

13   252. Despite Plaintiff's numerous attempts to provide appropriate documentation for

14   Foxy, Cause Seventh Defendants' categorically denied his requests, issuing blanket

15   refusals without evidence-based justifications or individualized assessments.

16   253. These actions formed were part of a systematic attempt to improperly deny Plaintiff,

17   and all similarly situated individuals, access to service animal accommodations at on

18   equal footing with other members of the community.

19   254. As a direct and proximate result of Cause Seventh Defendants' conspiracy to

20   interfere with Plaintiff's civil rights, Plaintiff has suffered significant harm,

21   including emotional distress, exacerbation of his mental health symptoms,

22   reputational damage, financial losses, and total annihilation of his ability to function

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1      in ASH's restrictive and overstimulating environment.

2   255. Plaintiff is entitled to compensatory under 42 U.S.C. §§ 1985(3), as well as punitive

3      damages, in that the actions of these Cause Sixth Defendants' were taken

4      maliciously, willfully, or with a reckless disregard of Plaintiff's constitutional rights.

5   256. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-

6      judgment interest, and costs as allowable by federal law.

7                    **AS FOR THE EIGHTH CAUSE OF ACTION:**

8          FAILURE TO PREVENT CONSPIRACY AGAINST CIVIL RIGHTS

9   257. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the

10     statements contained in the preceding paragraphs.

11  258. Pursuant to 42 U.S.C. § 1986, "[e]very person who, having knowledge that any of

12     the wrongs conspired to be done, and mentioned in section 1985 of this title, are

13     about to be committed, and having power to prevent or aid in preventing the

14     commission of the same, neglects or refuses so to do, if such wrongful act be

15     committed, shall be liable to the party injured."

16  259. On information and belief, Defendant Sheldon and various John and Jane Doe

17     Defendants engaged in a conspiracy within the meaning of 42 U.S.C. § 1985(3) to

18     deprive Plaintiff of his civil rights, including the right to reasonable service animal

19     accommodations and to equal protection under the law.

20  260. Plaintiff constantly complained to all available treatment and unit staff who would

21     lend an ear, including Ochoa, Coleman, and numerous John and Jane Doe

22     Defendants (collectively, "Cause Eighth Defendants") about the conspiracy and the

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6036

1    imminent harm that Foxy's exclusion was causing him. These Defendants had actual

2    knowledge of conspiracy to exclude Foxy from ASH.

3    261. Cause Eighth Defendants owed a duty to report suspected neglect of Plaintiff, a

4    vulnerable adult, pursuant to A.R.S. § 46-454, and ASH's own internal policy,

5    which mandates reporting suspected neglect to Arizona Adult Protective Services.

6    262. Cause Eighth Defendants knew or should have known that the exclusion of

7    Plaintiff's service animal constituted neglect, as it denied Plaintiff therapeutic

8    support essential to managing his developmental disabilities.

9    263. Despite this knowledge, Cause Eighth Defendants, acting under the direction of

10   Cause Seventh Defendants, failed to report or otherwise intervene to prevent the

11   neglect and deprivation of Plaintiff's rights caused by the service animal exclusion,

12   in violation of the duties imposed by A.R.S. § 46-454.

13   264. Cause Eighth Defendants, by failing to act on this knowledge, and by not reporting

14   the suspected neglect to APS or taking any reasonable steps to prevent the wrongful

15   acts committed under the above pled § 1985(3) conspiracy, neglected their duty to

16   prevent harm to Plaintiff.

17   265. Cause Eighth Defendants told Plaintiff they would not report the oppressions of

18   Cause Seventh Defendants, claiming fear of termination; Defendants were aware of

19   the conspiracy and refused to take action to prevent it.

20   266. As a proximate result of Cause Eighth Defendants' neglect and/or refusal to act to

21   prevent the conspiracy, Plaintiff suffered significant harm, including emotional

22   distress, exacerbation of his mental health symptoms, and financial losses associated



1    with his inability to obtain a reasonable accommodation for his service animal.

2    267. Pursuant to 42 U.S.C. § 1986, Plaintiff is entitled to recover damages from Cause

3    Eighth Defendants for all harms that could have been reasonably prevented if they

4    had exercised reasonable diligence in performing their mandatory reporting

5    obligations and preventing the deprivation of Plaintiff's rights though Cause Seventh

6    Defendants' conspiracy.

7    ### AS FOR THE <u>FOURTH</u> NINTH CAUSE OF ACTION:

8    NEGLIGENCE, GROSS NEGLIGENCE, NEGLIGENCE PER SE

9    268. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the

10    statements contained in the preceding paragraphs.

11    269. At all times material to this Complaint, each Defendant owed a duty of due care to

12    Plaintiff, including a heightened duty of care based on Defendants' special

13    relationship to Plaintiff as his health care providers and caretakers.

14    270. At all times material to this Complaint, Defendants and the employees they oversaw

15    owed additional duties to Plaintiff under State and Federal law. These additional

16    duties include, but are not limited to those set forth in 42 U.S.C. §§ 12101 *et seq.,*

17    and 15001 *et seq.,* 29 U.S.C. § 794 *et seq.,* A.R.S. §§ 46-451 *et seq.,* 36-551 *et seq.,*

18    32-1631 *et seq.,* the AzDA, and implementing regulations including, but not limited

19    to 28 C.F.R. Parts 35 and 36, 45 C.F.R. Part 84, A.A.C. §§ R4-19-101 *et seq.,* R9-

20    21-201, *et seq.,* and R10-3-401, *et seq.*

21    271. At all relevant times, Plaintiff belonged to the class of persons for whose protection

22    these statutes and regulations were adopted.

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6456

272. The above cited statutes and their implementing regulations set forth substantive public policy that should have guided the actions of the ASH trustees, officers, employees, and treatment professionals.

273. Instead, Defendants were negligent, grossly negligent, and intentionally breached their duty of care to Plaintiff, by discriminating against him on the basis of his developmental disabilities, and refusing to provide him reasonable accommodations.

274. By their acts and omissions, Defendants violated numerous provisions of the above cited statutes and their implementing regulations. On information and belief, violations of these protective statutes and regulations constitute negligence *per se*.

275. Defendants' breaches of duty directly and/or proximately caused, were foreseeable in causing, and were substantial factors in causing Plaintiff to suffer significant emotional distress, including hyper-vigilance, flashbacks, sensory overload, increased anxiety, suicidal ideation and self-injurious behaviors without Foxy present to perform her tasks that alleviate these symptoms.

276. These breaches of duty also resulted in Plaintiff incurring out-of-pocket expenses for boarding Foxy. Such damages were reasonably foreseeable to Defendants.

277. Defendants acted with wanton disregard for Plaintiff's rights and welfare, disregarding State and Federal law, and the authority and prior rulings of this Court.

278. By virtue of Defendants' acts and omissions as alleged herein, Plaintiff is entitled to an award of compensatory damages in an amount according to proof.

279. On information and belief, each and every act of discrimination, retaliation, emotional abuse, harassment, and conversion charged herein constitutes a discrete

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1    ~~violation of one or more of the rules set forth under A.A.C. R9-21-201 *et seq*.~~

2    280. ~~On information and belief, each violation by each Defendant of a rule set forth under~~

3    ~~A.A.C. R9-21-201 *et seq*., which was committed in the course of caring for Plaintiff,~~

4    ~~is independently actionable under A.R.S. § 36-516, and gives Plaintiff a cause of~~

5    ~~action in an amount equal to the greater of $1000, or three times Plaintiff's actual~~

6    ~~damages, for each such violation.~~

7    281. ~~The Court previously found that the protections set forth in A.A.C. R9-21-201, *et*~~

8    ~~*seq*. did not apply to Plaintiff because A.A.C. R9-21-102 provides that "[t]his~~

9    ~~Chapter shall not apply to the Arizona Department of Corrections;" and because~~

10   ~~Plaintiff was allegedly incarcerated in the Arizona Department of Corrections~~

11   ~~("ADOC"). *See* Solan v. Arizona State Hospital, *supra*, at Doc. 11, p. 7-8.~~

12   282. ~~On information and belief, this is no longer the case. A.R.S. § 13-502(D) which~~

13   ~~ostensibly sentenced Plaintiff to ADOC was abrogated, repealed, and as of July 1,~~

14   ~~2023 superseded with language confirming that Plaintiff is committed to ASH under~~

15   ~~the care of ADHS, and is not sentenced to ADOC. *See* Id; A.R.S. §§ 1-245, 13-~~

16   ~~3992(E).~~

17   283. ~~On information and belief, the only portions of A.A.C. R9-21-201, *et seq*. that~~

18   ~~potentially do *not* apply to Plaintiff, are the right to give informed consent and to~~

19   ~~refuse treatment, to the extent these rights may be limited by A.R.S. § 13-3994. *See*~~

20   ~~R9-21-202(A)(4) (a patient has "the right to give informed consent to all behavioral~~

21   ~~health services and the right to refuse behavioral health services in accordance with~~

22   ~~A.R.S. §§ 36-512 and 36-513, except as provided for in A.R.S. §…13-3994.")~~

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

284. ~~On information and belief, Plaintiff is entitled to statutory damages pursuant to A.R.S. § 36-516 in the amount of $1000 for each violation by each Defendant of the A.A.C. R9-21 rules which did not cause actual damages to Plaintiff or which caused Plaintiff to suffer actual damages in an amount less than or equal to $333.33; and is entitled to mandatory treble damages pursuant to A.R.S. § 36-516 for rule violations causing actual damages in excess of that amount.~~

285. The Director of ADHS has charge and control of ASH. *See* A.R.S. § 36-202(D).

286. Defendant Cunico willfully assumed the duties of the ADHS Director.

287. At all times material to this Complaint, Defendant Cunico, as *de facto* Director of ADHS, had charge of ASH, and Defendant Sheldon was directly responsible for carrying out the purposes for which ASH is maintained. *See* A.R.S. § 36-206(A).

288. ASH is maintained for the care and treatment of persons with mental disorders and persons with other personality disorders or emotional conditions who will benefit from care and treatment. *See* A.R.S. 36-202(A).

289. ASH is required by law to have adequate facilities and equipment for enlightened and scientific treatment of nervous and mental diseases in accordance with approved methods of mental therapeutics, including, among other things, facilities for medical and psychiatric treatment with special attention to occupational therapy and other special therapies. *See* A.R.S. 36-201(C).

290. Defendants State, Cunico, and Sheldon administered Plaintiff's court-ordered care, treatment, and supervision through employed and/or contracted healthcare providers,

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6656

including, but not limited to, physicians, nurses, counselors, psychologists, rehabilitative specialists, social workers, case managers, supervisors, behavioral health technicians, administrative and staff.

291. Defendants State of Arizona, Cunico, and Sheldon had a duty to provide standard of care treatment, supervision, monitoring, and housing to Plaintiff and other patients housed at ASH in compliance with State and Federal law.

292. Defendant Cunico is charged with adopting rules for the administration of ASH and to carry out the purposes for which it is maintained. *See* A.R.S. § 36-204(5).

293. Defendant Cunico is only authorized to establish rules for the commitment of mentally ill persons that are not inconsistent with other provisions of law. *See* A.R.S. § 36-204(4); *see also* A.A.C. R9-21-210(A).

294. Defendant Cunico, her deputy Sheldon, and other public servants acting under them, established and/or ratified and/or enforced a blanket service animal ban at ASH, and excluded Foxy in violation of Title II of the ADA.

295. Absent a qualified exemption, none of which apply here, a blanket ban on service animals violates the ADA.

296. Further, the improper exclusion of a service animal is discrimination *per se*.

297. Defendants Cunico and Sheldon knew or should have known that ignoring State and Federal disability law and improperly excluding Plaintiff's service animal would cause Plaintiff to suffer loss of agency and cause him a variety of psychological and emotional injuries, and increase the risk of self-harm.

298. By excluding Foxy, the State, Cunico, and Sheldon did cause Plaintiff to suffer loss

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056



1    of agency, did cause Plaintiff serious psychological and emotional harm, including

2    but not limited to increased Autism meltdowns and increased difficulty with

3    emotional regulation, and did cause Plaintiff to engage in self-harm, including but

4    not limited to pulling out his hair, and banging his head into the walls.

5    299. Defendant State, Cunico, and Sheldon, by the aforesaid actions and omissions, each

6    breached the duties they owed to Plaintiff and were negligent.

7    300. Defendant State, Cunico, Sheldon, and other public servants acting under them,

8    violated Plaintiff's patient rights secured under A.A.C. Title 9, Chapter 21 and A.R.S.

9    § 36-516, including, but not limited to the right to be free from unlawful

10   discrimination while receiving inpatient behavioral health services from ASH.

11   301. These statutes and rules are designed to protect patients like Plaintiff by establishing

12   a duty of care owed by Defendants Plaintiff and others similarly situated.

13   302. Defendant State, Cunico, Sheldon, and other public servants acting under them,

14   violated these statutes during their administration of care and treatment to Plaintiff

15   while he was a patient at the ASH by, *inter alia*, discriminating against Plaintiff on

16   the basis of his neurodevelopmental disabilities by excluding Foxy, and ignoring the

17   devastating effects the exclusion was having on Plaintiff's level of functioning.

18   303. Despite this awareness, Defendant Sheldon, numerous public servants under him

19   knowingly and continuously pursued a course of conduct over the last 6 months,

20   which had no support under the law, fully knowing it would cause loss of agency,

21   psychological injury, and emotional damage, and risk of self-harm to Plaintiff.

22   304. On information and belief, the acts and omissions of Defendant State, Cuinco, and

1    Sheldon exceed mere negligence, and rise to the level of gross negligence.

2    305. On information and belief, the aforementioned acts and omissions were done in

3    violation of State and Federal law, and constitute negligence *per se*.

4    306. As a result of Defendants negligence, gross negligence, and negligence *per se*,

5    Plaintiff suffered injuries and other damages and losses as described herein and

6    which entitle Plaintiff to compensatory, consequential, and special damages in an

7    amount to be determined at trial.

8    307. The acts and omissions of Sheldon, in particular, were willful and wanton, and

9    demonstrated a callous disregard for the care of Plaintiff. For this Plaintiff seeks

10    hedonic, punitive, and exemplary damages against Defendant Sheldon.

11    308. On information and belief, pursuant to A.R.S. § 36-516 Plaintiff is entitled to treble

12    damages for the negligence of and/or cruel mistreatment by these Defendants.

13    **AS FOR THE FIFTH ~~TENTH~~ CAUSE OF ACTION:**

14    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

15    309. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the

16    statements contained in the preceding paragraphs.

17    310. Plaintiff's right to a reasonable service animal accommodation has been violated at

18    ASH for nearly 3 years, including the periods between April 1, 2024 and July 13,

19    2022, and July 5, 2024 through the date hereof.

20    311. Defendant Bowen and Defendant Sheldon consciously, willingly, and intentionally

21    implemented a blanket no-service-animal policy at ASH in violation of substantive

22    federal common law, statutes, and regulations, and in direct violation of this Court's

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

1    previous injunction.

2    312. These Defendants' actions, in callously, and improperly denying Plaintiff

3    accompaniment by his service animal, who provides desperately needed assistance,

4    including tasks not only to aid Plaintiff's daily functioning, but also to support his

5    mental health and ensure his safety from self-harm, constitute extreme and

6    outrageous behavior.

7    313. Bowen and Sheldon each consciously, willingly, and intentionally accused Plaintiff

8    of bestiality and/or zoophilia without credible evidence, and on information and

9    belief they did so in retaliation for Plaintiff's legal demands and actions made and

10    brought against ASH to enforce his disability rights.

11    314. These Defendants' actions, in falsely and fraudulently accusing Plaintiff of

12    bestiality, zoophilia, and/or animal abuse, in an attempt to legitimize their

13    Defendants' unlawful exclusion of Foxy from ASH, also constitutes extreme and

14    outrageous behavior.

15    315. Bowen and Sheldon each intended to cause emotional distress to Plaintiff, or acted

16    with reckless disregard for the probability of causing emotional distress Plaintiff,

17    and each knew or should have known that Plaintiff would be severely harmed by

18    their actions and inactions.

19    316. The respective actions of Bowen and Sheldon, in excluding Foxy from ASH,

20    retaliating against Plaintiff, and/or slandering plaintiff as aforesaid, caused Plaintiff

21    to suffer serious psychological and emotional harm, including but not limited to

22    increased Autism meltdowns and increased difficulty with emotional regulation, and



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 85008-6056

1   caused Plaintiff to engage in self-harm, including but not limited to pulling out his

2   hair, and banging his dead into the walls.

3   317. On information and belief, the statute of limitations with respect to Plaintiff's

4   negligence claim against Bowen is tolled pursuant to the continuing tort doctrine, as

5   Sheldon's negligence constitutes a continuation of Bowen's wrongful conduct.

6   318. As a result of Bowen's and Sheldon' respective acts and omissions, Plaintiff is

7   entitled to compensatory, hedonic, and punitive damages, in an amount to be proven

8   at at trial.

9   319. On information and belief, pursuant to A.R.S. §§ 36-516 and 36-517, Plaintiff is

10   entitled to treble damages for the cruel mistreatment by these Defendants.

11   320. At all times mentioned herein, Defendants' acts were done with the intent to cause,

12   or with reckless disregard for the probability of causing Plaintiff to suffer significant

13   emotional distress, including hyper-vigilance, flashbacks, sensory overload,

14   increased anxiety, suicidal ideation and self-injurious behaviors, as well as engage in

15   self-harm, without Foxy present to perform her tasks that alleviate these symptoms.

16   321. As a direct and proximate result of Defendants' acts, Plaintiff has suffered extreme

17   mental and emotional distress, and self-inflicted injuries.

18   322. Plaintiff is entitled to actual and exemplary damages according to proof.

19   323. On information and belief, Plaintiff is entitled to treble damages pursuant to A.R.S §

20   36-516 as Defendants' intentional infliction of emotional distress constitutes cruel

21   mistreatment of Plaintiff, a mentally disordered person, in violation A.R.S. § 36-517.

22   **AS FOR THE <u>SIXTH</u> ~~ELEVENTH~~ CAUSE OF ACTION:**


MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 85008-0056

INVASION OF PRIVACY (FALSE LIGHT)

324. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the statements contained in the preceding paragraphs.

325. Defendants Bowen, Sheldon, Carter, and Coleman ("Cause Sixth ~~Eleventh~~ Defendants") falsely accused Plaintiff of engaging or planning to engage in, inappropriate and illegal sexual activities with Foxy.

326. These statements, made to or in the presence of ASH staff and/or patients, were highly offensive, defamatory, and cast Plaintiff in a false light that would be highly objectionable to a reasonable person.

327. Plaintiff repeatedly attempted to correct Cause Sixth ~~Eleventh~~ Defendants and set the record straight; however, all or some of the Cause Sixth ~~Eleventh~~ Defendants continued to make similar statements, intensifying the false light in which Plaintiff was cast.

328. On information and belief, these Defendants acted with actual malice or reckless disregard for the truth in making these statements, in that they knew the statements were false or made no effort to verify their veracity before disseminating them.

329. As a direct and proximate result of Cause Sixth ~~Eleventh~~ Defendants' actions, Plaintiff has suffered severe emotional distress, significant damage to his reputation, and an exacerbation of his mental health symptoms.

330. Plaintiff is entitled to compensatory damages for the emotional distress, reputational damage, and exacerbation of mental health symptoms caused by these Defendants' actions. Plaintiff also seeks punitive damages Cause Sixth ~~Eleventh~~ Defendants.



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

## AS FOR THE <u>SEVENTH</u> ~~TWELFTH~~ CAUSE OF ACTION:

### LIBEL, SLANDER, DEFAMATION OF CHARACTER

331. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the statements contained in the preceding paragraphs.

332. A person who publishes a false and defamatory communication concerning a private person is subject to liability if they know that the statement is false and it defames the other, acts in reckless disregard of these matters, or acts negligently in failing to ascertain them.

333. Plaintiff has never had sexual relations of any nature with Foxy, her predecessor, or any other nonhuman animal, and does not intend to have sexual relations of any nature with Foxy or any or nonhuman animal; nor has Plaintiff ever claimed to have had sexual relations of any nature with Foxy, her predecessor, or any other nonhuman animal, or to have intended to have any such sexual relations.

334. Plaintiff has never been treated for a zoophilic or other disorder related animal abuse, and Bowen and Sheldon knew or should have known that ASH had never treated, attempted to treat, or suggested Plaintiff be treated for any such disorder.

335. Bowen published the Particularized Assessment letter knowing the same contained statements which implicated Plaintiff in bestiality and animal abuse, and knowing and/or negligently failing to ascertain the fact that such statements were false.

336. Sheldon published the Denial Letter knowing the same contained statements which implicated Plaintiff in bestiality and animal abuse, and knowing and/or negligently failing to ascertain the fact that such statements were false.



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6656

337. On information and belief, the aforementioned libelous publications of Bowen and Sheldon each constitute defamation *per se*, as they impute to Plaintiff criminal misconduct and serious moral turpitude; and Sheldon's Denial Letter constitutes a separate and distinct publication from that of Bowen's.

338. On information and belief, the statute of limitations with respect to Plainiff's claim against Bowen is tolled pursuant to the continuing tort doctrine, as Sheldon's defamatory statements constitute a continuation of Bowen's tortiuous misconduct.

339. Even if Bowen and Sheldon based their false statements on false reports of one or more disgruntled employees, they each had a non-delegable duty to inquire into the veracity of such reports before publishing the aforementioned libelous statements.

340. Carter and Coleman each made defamatory statements about Plaintiff in front of other ASH patients, including "you eat dog a\*\*," and "you eat dog p\*\*\*y," knowing and/or negligently failing to ascertain the fact that such statements were false.

341. As a direct and/or proximate cause of the defamatory statements of Bowen, Sheldon, Carter, and Coleman, Plaintiff suffered serious harm to his reputation and credibility, including denial of service animal accommodations by the State and/or Trustee.

342. Plaintiff suffered anxiety, indignity, and significant mental and emotional anguish as a direct and/or proximate result of these defamatory statements, for which Plaintiff is entitled to actual and compensatory damages.

343. Plaintiff seeks punitive damages against Bowen, Sheldon, Carter, and Coleman due to the egregious nature of the defamatory statements and the fact that these Defendants were Plaintiff's caretakers.



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

**AS FOR THE THIRTEENTH CAUSE OF ACTION:**

BREACH OF TRUST

344. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the statements contained in the preceding paragraphs.

345. Pursuant to the doctrine of *delegatus non potest delegare*, a person to whom an office or duty is delegated cannot lawfully devolve that duty on another unless she is expressly authorized to do so.

346. On information and belief, the Trustee was never authorized by law to delegate away the duties of care, loyalty, and prudence that she owed to Plaintiff as a special beneficiary of the ASH Trust. These duties remained with the Trustee, and she is liable for any breach of these duties, whether directly or through her agents.

347. On information and belief, the Trustee holds legal title to ASH pursuant to *Coerver* and is liable, as holder of the underlying fee, for acts committed on the real property, and in its appurtenant facilities, to the same extent as if she held title in fee simple.

348. The Trustee held statutory and general fiduciary duties to avoid discriminant against the beneficiaries of the ASH Trust on the basis of disability.

349. On information and belief, the Trustee, directly and/or through her agents' and subagents' course of conduct in prohibiting Foxy from entering onto the ASH Trust property, discriminated against Plaintiff on the basis of his disabilities.

350. On information and belief, the Trustee breached the ASH Trust by knowingly or negligently violating Plaintiff's right to enjoy and use the ASH Trust property, and benefits thereof to which he was entitled, free from discrimination.



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA, 85008-6056

351. An illegally appointed officer does not enjoy the immunities and protections that would typically apply to a legally appointed officer because the illegality of their appointment taints their actions with illegitimacy. To be sure, "[a] person who knowingly intrudes [her]self into a public office to which [s]he has not been elected or appointed…is guilty of a class 2 misdemeanor." *See* A.R.S. § 38-234.

352. On information and belief, Defendant Cunico's trusteeship is contingent upon her official tenure as Director of ADHS. As Cabinet Executive Officer of ADHS, Arizona State Senate v. Hobbs, *supra*, implicitly invalidates the trusteeship.

353. On information and belief, the Trustee cannot claim legitimacy by tacit procuration either, as Plaintiff does not assent to her trusteeship.

354. On information and belief, the Trustee is personally liable to Plaintiff for damages caused by the illegal policies she promulgated and/or ratified as a *de facto* trustee.

355. Even if the Trustee's authority was legitimate, the common law would impute personal liability for breaches of fiduciary duty of the nature charged herein.

356. On information and belief, the Trustee's aforementioned intentional or negligent breaches of the ASH Trust, and of the fiduciary duties she owed to Plaintiff directly and/or proximately caused Plaintiff to suffer humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish.

357. On information and belief, Plaintiff is entitled to recover damages in an amount to be determined at trial for the Trustee's breaches of trust.

358. On information and belief, Plaintiff is entitled to declaratory relief and the remedies of accounting and specific performance against the Trustee.


MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6656

1

**AS FOR THE FOURTEENTH CAUSE OF ACTION:**

2 ~~TORTIOUS INTERFERENCE WITH A PROSPECTIVE ECONOMIC RELATIONSHIP~~

3 359. ~~Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the~~

4 ~~statements contained in the preceding paragraphs.~~

5 360. ~~Plaintiff established an economic relationship with ViaGen and All Dogs Unleashed~~

6 ~~to support his ability to engage in professional and daily activities by mitigating his~~

7 ~~disabilities with the assistance of Foxy.~~

8 361. ~~Sheldon was fully aware of Plaintiff's economic interest in Foxy's presence and~~

9 ~~assistance, as the reasonable accommodation letter detailed the costs incurred for~~

10 ~~Foxy's cloning and training, and included a copy of ViaGen's $50,000 bill of sale.~~

11 362. ~~Despite this knowledge, Sheldon intentionally interfered by denying Foxy access to~~

12 ~~ASH, which directly prevented Plaintiff from benefiting from the intended and~~

13 ~~anticipated economic advantages associated with Foxy's services.~~

14 363. ~~Sheldon's denial of access was improper, arbitrary, and without privilege, as there~~

15 ~~was no justifiable basis related to ASH's operations. Sheldon's actions were not~~

16 ~~based on legitimate professional judgment or competitive interests but rather served~~

17 ~~to disrupt Plaintiff's anticipated economic benefit in improved professional and daily~~

18 ~~functioning.~~

19 364. ~~As a direct and proximate result of Sheldon's interference, Plaintiff has suffered~~

20 ~~significant economic losses, including the expenses associated with training and~~

21 ~~maintaining Foxy, all of which were rendered unproductive due to Foxy's exclusion~~

22 ~~from ASH, and for which Plaintiff is entitled to compensatory damages.~~



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 850085-0656

Page 63 of 73

1

**AS FOR THE <u>EIGHTH</u> <s>FIFTEENTH</s> CAUSE OF ACTION:**

2

TRESPASS TO <u>A</u> CHATTELS

3   365. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the

4          statements contained in the preceding paragraphs.

5   366. <u>ASH is not a prison and Plaintiff is not a prisoner. *See* Solan v. Arizona State</u>

6          <u>Hospital *supra*, Doc. 84 at 14:3-4.</u>

7   367. <u>Since Plaintiff's sentence was suspended by in 2023, Plaintiff has not been serving a</u>

8          <u>sentence at ASH; he is merely committed to the hospital for a period of treatment.</u>

9   368. <u>As a hospital patient receiving care from the State, Plaintiff "enjoys constitutionally</u>

10         <u>protected interests in...reasonably nonrestrictive confinement conditions..." *See*</u>

11         <u>Youngberg v. Romeo, 457 U.S. 307 (1982).</u>

12  369. <u>Whether Plaintiff's constitutionally protected right to possesses personal property</u>

13         <u>have been violated "must be determined by balancing his liberty interests against the</u>

14         <u>relevant state interests. If there is to be any uniformity in protecting these interests,</u>

15         <u>this balancing cannot be left to the unguided discretion of a judge or jury." Id.</u>

16  370. Plaintiff has a possessory and ownership interest in Foxy, including an exclusive

17         right to possess Foxy while at ASH as an accommodation for his disabilities.

18  371. <u>Plaintiff has reserved his power to possess Foxy. *See* Article II, Sec. 33 of the</u>

19         <u>Arizona Constitution. Plaintiff has not knowingly waived any right in Foxy and</u>

20         <u>would never willingly wave the right to maintain custody of Foxy under any</u>

21         <u>circumstance.</u>

22  372. <u>Nor does Plaintiff's commitment order expressly authorize ASH to suspend</u>

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

1    Plaintiff's right to possess Foxy while confined at ASH; it simply directs ASH to

2    provide the treatment needed by Plaintiff.

3    373. In order for Plaintiff's possession of a particular article of personal property to be

4    restricted, ASH must demonstrate that the property in question poses an imminent

5    threat of serious physical harm to Plaintiff or others. *See e.g.,* A.A.C. R9-21-208(A).

6    374. Defendant Sheldon has not done this; he has simply asserted a general power to

7    suspend Plaintiff's right of possession in Foxy with no statutory or common law

8    authority to support his actions.

9    375. The Restatement (Second) of Torts controls trespass to chattel claims in Arizona

10   absent an authority to the contrary. *See* Koepnick v. Sears Roebuck Co., 158 Ariz.

11   322, 762 P.2d 609 (Ariz. Ct. App. 1988), citing Fendler v. Phoenix Newspapers,

12   Inc., 130 Ariz. 475, 636 P.2d 1257 (App. 1981).

13   376. The tort of trespass to a chattel may be committed by intentionally dispossessing

14   another of the chattel, or using or intermeddling with a chattel in the possession of

15   another. *See* Restatement (Second) of Torts § 217 (1965).

16   377. One who commits a trespass to a chattel is subject to liability to the possessor of the

17   chattel if possessor is deprived of the use of the chattel for a substantial time. *See*

18   Restatement (Second) of Torts § 218 (1965).

19   378. A dispossession may be committed by intentionally "(a) taking a chattel from the

20   possession of another without the other's consent, or...(c) barring the possessor's

21   access to a chattel…"

22   379. Foxy's formal bailment ended when she completed her service animal training and

MATTHEW PHILLIP SOLAN
591 NORTH TWENTY-EIGHTH STREET
PHOENIX, ARIZONA 85008-6056

MATTHEW PHILLIP SOLAN
501 North Twenty-fourth Street
Phoenix, Arizona, 85008-0656

1   Plaintiff sought her admittance to ASH. Mr. Cowert's continued custody of Foxy is

2   not based on Plaintiff's proper consent, but solely out of necessity due to Defendant

3   Sheldon's unlawful interference with Plaintiff's right to possess her.

4   380. Mr. Cowsert intended to deliver Foxy to Plaintiff at ASH, and would have done so

5   immediately after her service dog training has completed, but for Defendant

6   Sheldon's adamant refusal to allow Foxy onto the ASH property.

7   381. Mr. Cowsert is Plaintiff's contracted agent, and Plaintiff directs nearly every aspect

8   of Foxy's date-to-day care. Even if Plaintiff did not have immediate custody of Foxy

9   after she was cloned, he has had, at the very least, constructive possession at all

10   times material to this Complaint.

11   382. Constructive possession is established when a person, though lacking such physical

12   custody, still has the power and intent to exercise control over the object. *See*

13   Henderson v. United States, 575 U.S. 622, 135 S. Ct. 1780, 1784, 191 L. Ed. 2d 874

14   (2005).

15   383. Defendant Sheldon trespassed against Plaintiff's chattel by repeatedly barring

16   Plaintiff's access to Foxy through the Denial Letter, the denial of Plaintiff's food visit

17   requests, and other requests for her accompaniment.

18   384. This interference has continued unabated for nearly 6 months, continues through the

19   date of filing this Complaint, and substantially obstructs Plaintiff's proper and

20   intended use of his property.

21   385. Sheldon knowingly, wrongfully, and without Plaintiff's consent, exercised control

22   over Foxy by preventing her access to ASH, despite knowledge of Plaintiff's

1    ~~documented ownership interest and accommodation needs.~~

2    386. Sheldon's actions were arbitrary, exceeded his jurisdiction as ASH's CEO, and were

3        inconsistent with Plaintiff's rightful control over Foxy as his personal property.

4    387. As a direct and proximate result of Sheldon's intentional interference with Plaintiff's

5        possessory interest in Foxy, Plaintiff has suffered damages, including but not limited

6        to the costs associated with training and maintaining Foxy, the value of Foxy's

7        intended service, and other consequential losses arising from his inability to use

8        Foxy as intended.

9    388. Plaintiff is entitled to <u>nominal damages for the trespass,</u> compensatory damages

10      equal to the fair market value of Foxy's services as a trained service animal

11      <u>computed over the period she remains separated from Plaintiff due to Defendant</u>

12      <u>Sheldon's actions,</u> and any additional special damages resulting from Sheldon's

13      intentional interference with Plaintiff's enjoyment of Foxy.

14    389. ~~Plaintiff seeks punitive damages due to the willful, arbitrary, and callous nature of~~

15      ~~Sheldon's trespasses, and the serious harm they have caused. Plaintiff also seeks a~~

16      ~~Writ of Replevin to regain custody of Foxy and restore his possessory rights in her.~~

17               **~~AS FOR THE SIXTEENTH CAUSE OF ACTION:~~**

18                   ~~CIVIL CONSPIRACY~~

19    390. ~~Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the~~

20      ~~statements contained in the preceding paragraphs.~~

21    391. ~~On information and belief, Sheldon and other John or Jane Doe Defendants~~

22      ~~(hereinafter "Cause Sixteenth Defendants") conspired to interfere with Plaintiff's~~



MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-0656

1    possessory rights in Foxy and/or to intentionally cause Plaintiff emotional distress.

2    392. Cause Sixteenth Defendants knowingly agreed to undertake these tortious actions,

3    acting with the shared purpose of denying Plaintiff's reasonable service animal

4    accommodations and interfering with Plaintiff's established rights to possession and

5    use of Foxy, and the economic advantage Plaintiff intended to derive therefrom.

6    393. In furtherance of this conspiracy, Cause Sixteenth Defendants committed various

7    overt and unlawful acts, including but not limited to summarily denying Plaintiff's

8    accommodation requests, and arbitrarily excluding Foxy from friend and family

9    visitation sessions with Plaintiff, and from Plaintiff's Animal Assisted Therapy.

10   394. As a direct and proximate result of Cause Sixteenth Defendants' conspiratorial

11   actions, Plaintiff has suffered damages, including financial losses, emotional

12   distress, loss of intended benefits from contracts with third parties, and deprivation

13   of lawful rights to use Foxy as his service animal.

14   395. Plaintiff is entitled to compensatory damages for the injuries caused by Cause

15   Sixteenth Defendants' conspiracy. Given the malicious and intentional nature of their

16   conduct, Plaintiff also seeks punitive damages.

17   **AS FOR THE SEVENTEENTH CAUSE OF ACTION:**

18   **LOSS OF CONSORTIUM**

19   396. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the

20   statements contained in the preceding paragraphs.

21   397. Studies reflect the profound role pets play in human lives, with 95% of pet parents in

22   the United States considering their pets family members, and 98% attributing

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

1    specific health benefits to this relationship.[1] One study even found that over 8% of

2    adults would save the life of a dog over that of a human, if forced to choose.[2]

3    398. Here, Foxy is not a pet she is Plaintiff's autism service animal and venerated

4    familiar. Plaintiff and Foxy share an unseverable spiritual bond, and a unique and

5    indispensable relationship characterized by mutual affection, companionship,

6    support, assistance, and interdependency.

7    399. As a direct and proximate result of Defendants' wrongful conduct and the resulting

8    separation from Foxy, Plaintiff has suffered loss of consortium with her, including

9    loss of essential support and assistance provided by Foxy, emotional distress due to

10    the loss of Foxy's companionship and support, loss of independence and increased

11    difficulty in managing his disability during his inpatient stay at ASH, and a complete

12    loss of enjoyment of life.

13    400. Historically, Arizona courts have been reluctant to award emotional damages for the

14    loss or injury of dogs, adhering to the view that dogs are "personal property." *See*

15    Roman v. Carroll, 621 P.2d 307 (Ariz. App., 1980); State v. Hernandez, 121 Ariz.

16    544, 592 P.2d 378 (App. 1979). However, Arizona's Fifty-second Legislature, in

17    passing House Bill 2088 (2015), amended A.R.S. § 1-215, striking the word "dogs"

18    from the definition of personal property.

---

[1] The Human Animal Bond Research Institute. HABRI. https://habri.org/. Published March 5, 2020.

[2] Wilks, Caviola, Kahane, and Bloom (2020). Children Prioritize Humans Over Animals Less Than Adults Do, *Psychological Science* 1-12, doi:10.1177/0956797620960398

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

401. ~~Further, A.R.S § 14-2907 and A.R.S. § 14-10408 now authorize dogs to become beneficiaries of trusts created for their benefit. Foxy is a beneficiary of such a trust: FOX RANCH COMPANY, an irrevocable trust established under Colorado's analogous statute, C.R.S. § 15-5-408, designates Foxy and her heirs apparent as cestuis que trustent.~~

402. ~~Moreover, so far as legal theory is concerned, "a person is any being whom the law regards as capable of rights or duties…Persons are the substances of which rights and duties are the attributes." John W. Salmond, Jurisprudence § 108 (4th Ed. 1914). Foxy meets this standard through her enforceable rights as a trust beneficiary.~~

403. ~~While Plaintiff claims a property interest in Foxy under the bill of sale, Foxy is now a *person*, and the personal property status historically ascribed to dogs is inadequate.~~

404. ~~On information and belief, Plaintiff is entitled to consequential, hedonic, and exemplary damages against all Defendants for his loss of consortium with Foxy.~~

405. ~~Plaintiff is also entitled to a declaration pursuant to A.R.S. § 12-1832 to confirm that Foxy is indeed a person, and how her legal personhood status affects Plaintiff's rights under ViaGen's Bill of Sale, in light of the 2015 changes to A.R.S. § 1-215.~~

### **DEMAND FOR RELIEF**

Plaintiff has no adequate remedy at law to redress many of the wrongs, injuries, and legal and human rights violations set forth in this Complaint, and is entitled to the equitable relief requested with respect to those matters. Plaintiff has suffered and will continue to suffer irreparable harm as a result of the unlawful acts, omissions, policies, and practices of Defendants as complained of herein, unless Plaintiff is granted the relief



MATTHEW PHILLIP SOLAN
301 NORTH TWENTY-EIGHTH STREET
PHOENIX, ARIZONA, 85008-6056

1 | he requests.

2 | **WHEREFORE**, Plaintiff demands judgment against all Defendants herein, and
3 | requests that the Court order the following relief, to-wit:

4 | A. Award Plaintiff actual, compensatory, hedonic, statutory, nominal, special,
5 | incidental, consequential, aggravated, exemplary, punitive, and treble damages;

6 | B. Adjudge and decree that ~~the acts, omissions,~~ policies and practices of the State, ~~the~~
7 | ~~Trustee, and their agents, officers, employees, and all persons acting in concert~~
8 | ~~with them, under color of state law or otherwise, as~~ complained of herein, violate
9 | the ADA, Section 504, and Plaintiff's rights in and to Foxy;

10 | ~~C. Adjudge and decree that Sheldon, and the relevant Defendants acting in concert~~
11 | ~~with him, engaged in a conspiracy to violate Plaintiff's civil rights;~~

12 | D. Adjudge and decree that Sheldon, Bowen, Carter, and Coleman defamed Plaintiff
13 | and cast him in a false light;

14 | ~~E. Adjudge and decree that Defendant Cunico usurped the trusteeship of the ASH~~
15 | ~~Trust, and/or that as *de facto* trustee, she breached the trust by causing or ratifying~~
16 | ~~acts of against Plaintiff, a beneficiary, on the basis of his disability;~~

17 | ~~F. Adjudge and decree that Foxy is a juridical person;~~

18 | G. Preliminarily and permanently restrain and enjoin all Defendants herein, their
19 | agents, officers, employees, and all persons acting in concert with them, and the
20 | successors of any of them, from denying Foxy entry to the ASH facilities, or
21 | otherwise denying Plaintiff accompaniment by Foxy while Plaintiff is confined at
22 | ASH;

MATTHEW PHILLIP SOLAN
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6656

1    H. Issue a Writ of Replevin directing the U.S. Marshals to take possession of Foxy

2        and deliver her to Plaintiff at the Arizona State Hospital;

3    I.  Issue a Writ of Mandamus directing the U.S. Attorney's Office to commence an

4        inquest into the institutional discrimination occurring at ASH;

5    J.  Order the restitution of and for all of Plaintiff's rights in and to Foxy which have

6        been taken, restrained, or obstructed by Defendants without due process of law;

7    K. Disgorge the funds disbursed to ASH by the Arizona Legislature for patient care,

8        in an amount equal to the daily cost of Plaintiff's care, as advertised on ASH's

9        website, computed over the duration of his confinement, based on the daily

10       Forensic Rehabilitation cost advertised on ASH's website, and impose a

11       constructive trust over the funds so disgorged, to be applied to Foxy's upkeep and

12       Plaintiff's future mental health care and disability related needs;

13   L.  Retain jurisdiction of this case until Defendants have fully complied with the

14       orders of this Court, and there is a reasonable assurance that Defendants will

15       continue to comply in the future absent continuing jurisdiction;

16   M. Award Plaintiff all costs of this suit, reasonable attorneys' fees, and pre and post

17       judgment interest at the maximum rate allowed by law; and,

18   N. Provide such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims herein so triable.

### RESERVATION OF RIGHTS

Plaintiff hereby reserves all his rights, privileges, prerogatives, and immunities,

1    and does not waive, and does not intend to waive any of his rights, privileges,

2    prerogatives, or immunities. Plaintiff does not yield his sovereignty to the agencies that

3    serve him, and does not consent to be governed by the oppressive government of Arizona.

4    **VERIFICATION AND EXECUTION**

5        Plaintiff hereby certifies under penalty of perjury that the foregoing is true and

6    correct, (except for matters stated on information and belief, which matters Plaintiff

7    believes to be true to the best of his knowledge and ability;) that this Complaint is not

8    being presented for an improper purpose; that it is supported by existing law or by a

9    nonfrivolous argument for extending, modifying, or reversing existing law; that the

10   factual contentions herein have evidentiary support or will likely have evidentiary

11   support after a reasonable opportunity for further investigation or discovery; and that

12   Plaintiff is of full legal age and fully competent to testify to the facts set forth herein.

13   **SIGNED, SEALED, AND DATED** this 13th day of ~~November~~ January 20~~2~~54.

14

15

16                                        **Matthew Phillip Solan**
                                           Plaintiff in *Pro. Per.*

17                                      legal@fox-ranch.com
                                        501 North 24th Street

18                                      Phoenix, AZ 85008
                                        +1 (970) 369-9611

19

20

21

22



**EXHIBIT A**

ARIZONA DEPARTMENT
OF HEALTH SERVICES

ARIZONA STATE HOSPITAL

Dear Mr. Solan,

On March 22, 2022, the District Court for the District of Arizona ordered the Arizona State Hospital ("ASH") to conduct a particularized assessment in accordance with Title II of the Americans with Disabilities Act ("Title II") and the relevant Code of Federal Regulations ("C.F.R.") of your request to have your dog, "Foxy," live with you at the ASH Forensic Hospital. I write to inform you that, having completed the required assessment, ASH must deny your request. Our assessment discovered six concerns that justify this denial:

- (1) Even assuming Foxy qualified as a service animal before your index crime and your commitment to the Forensic Hospital, ASH does not believe her services are medically necessary in this setting. You do not need Foxy to navigate the hospital or to otherwise meet your physical needs, and your treating psychiatrist believes that rather than help you cope with your psychiatric disabilities, having her live in the hospital with you would "get in the way" of your behavioral health treatment.

- (2) Even if Foxy qualified as a service animal, Title II requires that while in a public facility she be tethered with a harness, leash, or other tether. However, tethers are ligature risks that in accordance with Hospital policy and Joint Commission regulations, ASH cannot allow at the Forensic Hospital. Therefore, you would be unable to control Foxy as Title II requires.

- (3) Even if Foxy qualified as a service animal, Title II requires that you be solely responsible for her care and supervision while in a public facility. At the Forensic Hospital, however, you could not care for Foxy's daily needs without significant assistance from ASH staff. Therefore, Title II does not require ASH to allow her at the Hospital.

- (4) Foxy requires daily medication for heart disease and osteoarthritis. Consistent with Hospital policy, licensing requirements, and state and federal regulations, however, ASH cannot store or administer veterinary medications. Moreover, one of Foxy's required medications is gabapentin, which though not yet a controlled substance in Arizona is nonetheless commonly abused and should not be readily available to Forensic Hospital patients. ASH policy, licensure, and regulatory requirements prohibit you from storing and administering *any* medication—much less gabapentin.

- (5) Even if Foxy qualified as a service animal, admitting her would fundamentally alter the nature of the Forensic Hospital from an inpatient hospital facility that cares for human beings to one that also must care for an animal. Title II does not require such a fundamental alteration to the Hospital's services, programs, and activities.

- (6) Finally, ASH records show that you have expressed to your peers and staff on multiple occasions a desire to marry Foxy and have intimate relations with her. Although you minimize or deny making these statements, ASH cannot ignore the

1

Douglas A. Ducey | Governor    Don Herrington | Interim Director

2500 East Van Buren Street, Phoenix, AZ 85008    P | 602-220-6000    F | 602-220-6292    W | azhealth.gov
*Health and Wellness for all Arizonans*

ARIZONA DEPARTMENT
OF HEALTH SERVICES
ARIZONA STATE HOSPITAL

risk of animal abuse by allowing Foxy at the Forensic Hospital, where at your request, you are currently occupying a single room on the Cottonwood Unit.

The following report discusses each of our concerns in detail.

1.    **Foxy Is Not Necessary for You to Participate in and Benefit from ASH's Services, Programs, and Activities.**

Under Title II, people with disabilities must have an equal opportunity to participate in and benefit from state and local governments' programs, services, and activities. *See* 42 U.S.C. § 12132. To that end, regulations interpreting Title II require that a public entity "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). Generally, Title II requires a public entity to "modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 35.136(a). In the particular circumstances of this case, however, ASH does not believe that these regulations apply, because it does not believe that Foxy is necessary for you to participate in and benefit from the Forensic Hospital's services, programs, and activities.

At your interview as part of the individualized assessment, you represented that Foxy is a "psychiatric service animal" and as such, "she's not providing much physical assistance at all." "[S]he doesn't pull me around or direct me as if I'm blind." You went on: "There isn't much physical necessity for her to do much as a psychiatric service animal, it's more her mental abilities." Thus you acknowledge that you do not need Foxy to get around the Forensic Hospital or to meet other physical needs, like toileting or hygiene. As for Foxy's "mental abilities," ASH does not believe they are necessary for you to participate in and benefit from the Hospital's services, programs, and activities. As your treating psychiatrist, Dr. Stephen Morris, M.D., has stated in an affidavit that he provided in connection with ASH's particularized assessment: "[I]n a level one psychiatric hospital there is no need for a service animal simply because services are provided by trained people whose job it is to provide these very things as needed to all patients on a regular basis. There is a 24/7 medical staff for that."

Moreover, Dr. Morris believes that having Foxy with you at the Forensic Hospital would actually impede your treatment. Dr. Morris observes that you have been committed to the Forensic Hospital, "in part, to learn how to better get along with <u>people</u> so that [you] can provide for [your] own needs without alienating or provoking people or otherwise getting into trouble with either the law or with friends or with people who work for [you] in the future. With this in mind, a beloved therapy animal would only serve to get in the way." Dr. Morris concludes: "Matthew has said he likes animals better than people, and he says that people are 'tools' to achieve his needs. This needs a reality check."

During your interview, you stated that Foxy's "presence is necessary for [you] to receive the treatment [you're] entitled to" at the Forensic Hospital. Dr. Morris disagrees. He believes that the "necessary part is for Matthew to learn how to deal with people in spite of his autistic spectrum disorder. He tells me that he had the dog as a transition object to remove himself from the 'co-

2

Douglas A. Ducey | Governor    Don Herrington | Interim Director

2500 East Van Buren Street, Phoenix, AZ 85008    P | 602-220-6000    F | 602-220-6292    W | azhealth.gov
*Health and Wellness for all Arizonans*

ARIZONA DEPARTMENT
OF HEALTH SERVICES
ARIZONA STATE HOSPITAL

dependent' relationship he had with his mother. . . . Now, my suggestion to him is to move even further and drop the transition object. He is realizing he is not as disabled as he thought he was and is realizing capabilities he didn't know he had. A transition object is no longer needed."

In sum, Dr. Morris does "not believe that a service animal is clinically appropriate" for you. Based on your treating psychiatrist's professional opinion, ASH must deny your request to have Foxy live with you at the Forensic Hospital.

### 2. Foxy Cannot Be Tethered as Title II Requires While in the Forensic Hospital.

Title II requires that a service animal be under its handler's control. *See* 28 C.F.R. § 35.136(d). Specifically, the law requires that a service animal "shall have a harness, leash, or other tether." *Id.* However, leashes and harnesses are ligatures that ASH policy, in adherence and consistent with definitions from licensure and the Joint Commission, classifies as contraband, meaning that they are not approved for patient possession or use, even under staff supervision, because patients may use ligatures to harm themselves or others. *See* ASH AdmPtRights Policy No. 004 (Patient Property, Storage, and Contraband) and attachment listing Contraband and Controlled Items for the Civil and Forensic Hospitals (specifically identifying "clothing with removable straps, strings/drawstrings, metal, plastic, or wire pieces (i.e., underwire)" and "items that can be used as ligature (i.e., chain, rope/twine, drawstrings, wire, cords, etc.)" as contraband). When conducting licensing and regulatory compliance surveys, State regulators, and the Joint Commission are particularly vigilant about citing potential ligature risks. Rightly so, given the direct threat to patient and staff safety that ligatures present. The conflict between Title II's tethering requirement and ASH's prohibition on items that can be used as ligature cannot be overcome. For this additional reason, ASH must deny your request to have Foxy live with you at the Forensic Hospital.

### 3. You Would Need ASH Staff's Assistance to Care for or Supervise Foxy, Which the ADA Does Not Entitle You To.

Under Title II, "[a] public entity is not responsible for the care or supervision of a service animal." 28 C.F.R. § 35-136(e). In your interview and preliminary injunction briefing, however, you acknowledged that if Foxy is allowed to live with you at the Forensic Hospital, you could not care for her daily needs without substantial assistance from ASH staff in two fundamental respects:

**Feeding:** As you know, ASH policy prohibits you from keeping or consuming food in your room. You therefore propose storing food for Foxy in your bin in the room where patients' hygiene products and electric razors are stored. Patients do not have free access to this room, so you would need a staff member to get Foxy's food and bowl (and to return the clean bowl to storage) in the morning and the evening. These are times that staff is generally involved in supervising patients' meal service and, in the morning, supervising their hygiene activities. You have not suggested where you would feed Foxy (understanding that it could not be in your room), how you would dispose of any leftover food and clean her feeding bowl, or how you would coordinate her feeding times with your own meal times and hygiene practices.

3

Douglas A. Ducey | Governor    Don Herrington | Interim Director

2500 East Van Buren Street, Phoenix, AZ 85008    P | 602-220-6000    F | 602-220-6292    W | azhealth.gov
*Health and Wellness for all Arizonans*

ARIZONA DEPARTMENT
OF HEALTH SERVICES

ARIZONA STATE HOSPITAL

**Toileting/Exercise:** You acknowledge that you do not have free access to the Forensic Hospital's mall, where Foxy would relieve herself and get exercise. You currently are allowed to walk the mall for half an hour once a day under staff supervision. Your current level of supervision is 1(supervisor)-to-5(patients). Assuming that Foxy could accompany you on these mall walks, you have indicated that ASH staff would have to give you access to the mall an additional two or three times a day, according to Foxy's needs. You state that despite being 16 years old, Foxy will be able to sleep through the night while the units are locked down without needing to relieve herself. But in case she does, you can get puppy pads and put them down "in the bathroom" as you did when you were traveling with her years ago. This plan ignores that you do not have a private bathroom, and Foxy could not open the door to the unit bathrooms available for patient use. The reality is that if Foxy uses puppy pads, it will be on the floor in your room. At your April 18, 2022 interview, you stated that this is no different from a patient who requires using adult diapers. If that is so, disposal of the soiled puppy pads, like the soiled adult diapers, will fall to staff. If Foxy misses the puppy pad, the clean-up would also involve staff, as patients do not have unsupervised access to cleaning supplies on the unit or training on necessary cleaning protocols.

In addition to these aspects of Foxy's daily care, Dr. Morris notes that her supervision also would fall exclusively to ASH staff if, as has happened at least twice in the past, you required **seclusion**.

In sum, it is clear that Foxy could not safely reside at the Forensic Hospital without significant assistance from ASH staff, which Title II does not require. This is a third independent reason why ASH will deny your request.

### 4. Foxy's Required Medications Cannot Be Safely Stored or Administered at the Forensic Hospital.

The record shows that Foxy's veterinarian has prescribed her enalapril twice a day for a heart condition and gabapentin once or twice a day for osteoarthritis. Consistent with Hospital policy, licensing requirements, and state and federal regulations, however, ASH cannot store or administer veterinary medications—and Forensic Hospital patients cannot store or administer medications of any kind. Particularly acute are the health and safety issues relating to a forensic patient's possession of gabapentin. While it is not yet a controlled substance in Arizona, it is commonly abused, and forensic patients should not have ready access to it, as they would if you were allowed to store and administer this drug. That Foxy cannot receive her prescribed medications at the Hospital is another reason to deny your request.

### 5. Modifying ASH Policies to Allow Staff to Care for Foxy Would Fundamentally Alter the Nature of the Forensic Hospital's Services.

As discussed above, you could not care for Foxy's daily needs at the Forensic Hospital without help from ASH staff. ASH's existing patient care policies and practices, however, do not provide for giving such assistance and would have to be modified to address various concerns, including issues arising from interactions between humans and animals, animal waste, and the storage, dispensing, and administration of medication to animals. The policies that would have to be modified to allow Foxy to reside at the Hospital include, but are not limited to, ASH

4

Douglas A. Ducey | Governor    Don Herrington | Interim Director

2500 East Van Buren Street, Phoenix, AZ 85008    P | 602-220-6000    F | 602-220-6292    W | azhealth.gov
*Health and Wellness for all Arizonans*

ClinSvsProfSvs Policy No. 002 (Patient Nutrition, Education, and Food Services); ASH Infection Control Plan; ASH Infection Control Risk Assessment and Progress Report; ASH Environment of Care SFY 2021-22 Hazardous Materials and Waste Management Plan; ASH Administering Medications Policy; ASH Medication Management Policy; ASH Medication Safety Policy; and ASH Medications Brought Into the Hospital by a Patient/Patient's Family Policy. Admitting Foxy would also require revising the Task Assignment Sheets (day and night shifts) for the Cottonwood Unit where you currently reside. In ASH's view, such a thorough-going overhaul of its policies, procedures, and practices would require fundamentally altering the Hospital from a facility that cares for humans to one that cares for humans and animals. Title II does not require such a fundamental alteration. *See* 28 C.F.R. § 35.130(b)(7)(i) (when they are necessary to avoid disability discrimination, "[a] public entity shall make reasonable modifications in policies, practices or procedures . . . unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity"). For this additional reason, ASH must deny your request.

### 6. ASH Cannot Ignore Information that Your Relationship with Foxy May Be Abusive or Risk Enabling Such Abuse.

Finally, while you ask ASH to consider Foxy to be a psychiatric service animal, statements that you have made to ASH staff and patients indicate that you consider her to be something other than an animal that is individually trained to perform a task or work that is directly related to your disability, which is how the ADA defines "service animal." *See* "Frequently Asked Questions about Service Animals and the ADA," https://www.ada.gov/regs2010/service_animal_qa.html (last consulted May 3, 2022). Reports are that you consider Foxy to be your "familiar," a "soul mate," a "person," a "woman," and a "fiancée." Additionally, ASH has received information that you have either touched Foxy inappropriately in the past or contemplate doing so in the future. For example:

- In a Progress Note dated December 2, 2020, you describe Foxy as a "co-sovereign" and "like a wife."

- In a Progress Note dated April 24, 2021, you are reported as saying that you and Foxy "put our tongues in each other's mouth."

- In another Progress Note dated April 24, 2021, you are reported as saying that if you were to roast Foxy, she would look like a Cornish game hen, but she probably would not taste like it. You are also reported to have talked to another patient about sticking your fingers in Foxy's rectum and noted that your hand would not fit because it was too big.

- In a Progress Note dated May 8, 2021, you are quoted as saying near the nursing station: "Foxy is my service dog, she is more than a service dog, ASH can't stop me from marrying her. Biden passed a law." Around this time, you applied for a marriage license for you and Foxy. At your interview on April 18, 2022, you stated that "under the common law we'd already be married."

5

Douglas A. Ducey | Governor    Don Herrington | Interim Director

2500 East Van Buren Street, Phoenix, AZ 85008    P | 602-220-6000    F | 602-220-6292    W | azhealth.gov
*Health and Wellness for all Arizonans*

ARIZONA DEPARTMENT
OF HEALTH SERVICES

ARIZONA STATE HOSPITAL

- On June 14, 2021, you enlisted a number of your peers to participate in a "manumission" ceremony, in which you referred to Foxy as a "woman" and a "private person incarnate" and to yourself as a "man" and a "private person incarnate." At your April 18, 2022 interview, you explained that "[m]anumission was used in ancient Rome for releasing a slave to the freedom of a municipality, it meant giving freedom to somebody that wasn't considered a person."

- On August 23, 2021, you reportedly told staff that you are saving yourself for your fiancée Foxy, "who has not consented to intercourse as of yet."

- On September 1, 2021, you reportedly told your treatment team that you identify as a Pomeranian and that is why you refer to Foxy as your fiancée. At your April 18, 2022 interview you admitted making this statement. You explained that "there's all this lately in the news about people claiming to be a different gender identity, so I said why can't I identify as a Pomeranian, I'd rather live with 'em, I like 'em better than people which is true, people are confusing and difficult, I'd be happy living with Pomeranians and no one else but, so why not just identify as a Pomeranian?"

- On November 11, 2021, you reportedly told your occupational therapist (in a conversation about your inattention to personal hygiene) that Foxy "licks the inside of my mouth and cleans all the gunk from my teeth." In your interview on April 18, 2022, you confirmed that at one time, Foxy indeed performed that function for you.

- In a December 12, 2021 Progress Note, you are reported to have said that you wanted a Viagra order so you could have sex with your dog.

- In an IR dated December 22, 2021 you are reported as saying about Foxy during an On-Unit Open Art Group on the Pinon Unit: (1) "yeah baby, we are the superior breed my little fox"; and (2) "I cannot wait to touch you my baby Pomeranian."

During your interview on April 18, 2022, you denied making some of these statements and asserted that your interest in marrying Foxy was "ceremonial" and not sexual. Be that as it may, ASH cannot ignore multiple reports (and your own admissions) that you have inappropriate feelings for Foxy. Nor can it risk that allowing Foxy to reside at the Forensic Hospital would enable you to abuse her in the private room on the Cottonwood Unit that ASH has provided you at your request. Animal abuse is a criminal act and ASH will not facilitate such crimes. For this additional reason, ASH must deny your request to have Foxy live with you at the Hospital.

Sincerely,

Aaron Bowen, Psy.D.
Chief Executive Officer
Arizona State Hospital

6

Douglas A. Ducey | Governor    Don Herrington | Interim Director

2500 East Van Buren Street, Phoenix, AZ 85008    P | 602-220-6000    F | 602-220-6292    W | azhealth.gov
*Health and Wellness for all Arizonans*

**EXHIBIT B**

# Birth Certificate

This certifies that the clone of

## Foxy

was born on November 9th, 2023

weighing 190 grams

measuring 4.5 inches long

VIAGEN
PETS & EQUINE

Lasting Love

**EXHIBIT C**

# Bill of Sale



715 Discovery Blvd, Suite 410
Cedar Park, Texas 78613
Tel: (512) 986-7212   Fax: (888) 765-4088

**Date: January 9, 2024**

**Client:** Matthew Solan
3471 South Apollo Ave.
Williams, AZ 86046

**Comments:** Cloned puppy from Foxy (V6624)

| Description | Quantity | Amount |
|---|---|---|
| Foxy puppy @ $50,000 <br> Female, Pomeranian mix <br> DOB: 11/9/2023 | 1 | $50,000.00 |
| Delivery fee | 1 | $3,500.00 |
| Genetic Preservation Payment (7/14/22) | 1 | ($1,600.00) |
| Storage fee (7/3/23) | 1 | ($150.00) |
| Deposit Payment (8/21/23) | 1 | ($25,000.00) |
| Final Payment (12/27/2023) | 1 | ($26,750.00) |
| **Total** | | $0.00 |

Pursuant to the Canine Cloning Agreement by and between ViaGen Pets and Client, and in consideration of Client's full payment of the amount shown above, ViaGen Pets. hereby conveys all right, title and interest in and to the animal(s) described above to Client. Client agrees to take full ownership, possession and liability for each of the animals listed on this document, and agrees that ViaGen Pets and its associates, as of the date hereof, have no responsibility and liability relating to these animals.

**Genetic Reflections LLC, DBA VIAGEN PETS**
A Texas Limited Liability Corporation

By: *Codi Lamb*
A6CA193852D44AF...
Name: Codi Lamb
Title: Client Service Representative
Date: 1/13/2024

**CLIENT**

By: *M*
82261AB57A144C1...

Name: Matthew Phillip Solan
Date: 1/12/2024

*We thank you for your business!*

**EXHIBIT D**

# CERTIFICATE of COMPLETION

All Dogs Unleashed Graduate

This Certificate acknowledges that

## Foxy

completed the All Dogs Unleashed
Training Program on

## 05/16/24



ALL DOGS UNLEASHED



**EXHIBIT E**

# Coconino County Animal Services

2625 King Street    HHS-4951
Flagstaff, AZ  86004
Phone: (928) 679-8756

**Animal Services Program**

## License / Vaccination Certificate

### License information

| | |
|---|---|
| ID | **SA083** |
| Type | **SERVICE ANIMAL** |
| Effective | **06/07/2022 _TO_ 05/17/2025** |
| Area | **WILLIAMS** |

Matthew Solan
3471 S Apollo Avenue
Williams, AZ 86046

### Vaccination Information

| | |
|---|---|
| ID | **03042025** |
| Type | **RABIES** |
| Effective | **06/07/2022 _TO_ 03/04/2025** |
| Drug | |
| Lot / Serial | |

## About Foxy

| | | | |
|---|---|---|---|
| Species | **DOG  ID#: 11880** | Microchip | **977200010505935** |
| Breed | **POMERANIAN** | | |
| Gender | **FEMALE / STERILIZED** | | |
| Color | **ORANGE** | | |

You can take care of business online. Your online access has already been establised. Visit CoconinoAZ.animalservices.website to access your account. For your account access, the email address you provided is legal@fox-ranch.com.

The license tag issued to a dog will be the permanent tag for the dog.  The number on the tag will be associated with designated dog until the dog passes away or owner no longer has the dog.

Dog owner is responsible for renewing the license and providing updated rabies information.

PLEASE KEEP IN MIND IF DOG'S RABIES EXPIRES, THE LICENSE WILL BE INVALID.

Make sure Animal Services has a current phone number and address in our system.

Use License Fees Below to Determine Amount Owed:

$12.00 1 -year Altered Dog          $25.00 1 -year Unaltered Dog
$20.00 2 -year Altered Dog          $40.00 2 -year Unaltered Dog
$30.00 3 -year Altered Dog          $60.00 3 -year Unaltered Dog

$2.00 Dog License Late Fee (up to 1-year delinquent)
$12.00 Dog License Late Fee (more than 1-year delinquent)

**EXHIBIT F**



**EXHIBIT G**



**MATTHEW PHILLIP SOLAN**
501 NORTH TWENTY-FOURTH STREET
PHOENIX, ARIZONA 85008-6056

## REQUEST FOR A REASONABLE ACCOMMODATION
Pursuant to the Americans with Disabilities Act of 1990

To Michael R. Sheldon, Chief Executive Officer and Superintendent of the Arizona State Hospital, and to all to whom these presents may come (collectively "you"), Greeting:

I am writing to assert my rights under Title II of the Americans with Disabilities Act of 1990[1] (the "ADA") and the Arizonans with Disabilities Act[2] (the "AzDA") to a reasonable accommodation for my service animal Foxy ("Foxy") during my commitment period at the Arizona State Hospital ("ASH"). Specifically, I require that she accompany me full-time on the facility grounds.

As you are aware, I previously brought a legal action against your institution due to its prior administrators' refusal to make a reasonable accommodation for my service animal, resulting in a favorable injunction[3] that affirmed my rights as a service animal handler and status as a qualified individual with a disability. Ask you should also know, Foxy experienced a temporary total cessation of cellular function in 2022. Foxy has since undergone a full anastasis by virtue of Somatic Cell Nuclear Transfer ("SCNT"), carried out by Genetic Reflections LLC d/b/a/ ViaGen Pets and Equine ("ViaGen Pets") at their Rochester, New York Facility. Somatic replication concluded on November 9, 2023.[4]

As of May 16, 2024, Foxy has completed professional training. She received formal training from All Dogs Unleashed in Prescott, Arizona,[5] and continues to receive additional training and training maintenance from her interim handler. Foxy has mastered advanced obedience, and has been trained to perform Deep Pressure Therapy ("DPT") work, which previously provided substantial support in ameliorating the debilitating effects of my neurodevelopmental disabilities.

---

[1] 42 U.S.C. §§ 12131 *et seq.*, 28 C.F.R., Part 35.

[2] A.R.S. §§ 11-1024, 41-1492 *et seq.*; A.A.C. R10-3-401 *et seq.*

[3] *See* Solan v. Arizona State Hospital, 2:20-cv-02209 at 89 (D. Ariz.).

[4] *See* Exhibit A – Foxy's Birth Certificate.

[5] *See* Exhibit B – Training Completion Certificate.

DPT is a very common task that Autism Service Dogs are trained to perform, and is a qualifying function under the "work or task" provision of 28 C.F.R. § 35.136. Foxy is also trained to recognize signs of emotional distress, and intervene by interrupting and lying on her handler, in order to provide comfort and distraction from the distressing stimuli. Additionally, Foxy is trained to serve as a social buffer, to help me to engage more effectively in social settings.

Until I began working with Foxy in 2015, I lived a very isolated life, almost never leaving my condominium. Foxy is extremely outgoing, utterly adorable, and in our time together in the community, has led me into so many social situations that I began to be desensitized to interacting with humans. Because of Foxy, I was confident enough to leave home, travel to Arizona, start a business, and attempt to make my way in the world. The abuse and neglect I have weathered in presentence confinement and at ASH, unfortunately, has caused me to regress to a pre-Foxy social state. This is all the more reason her and I must be reunited as a working team, as soon as possible.

Foxy is up to date on all required vaccinations,[6] and is in perfect health.[7] Her behavior and temperament have been verified by her trainers, and she bears a nearly identical personality and temperament to her prior incarnation, which recent academic papers on SCNT derived animals show, is quite common.[8] She is calm, quite, non-protective, and very attentive to her handlers. She is fully housetrained, both for outdoor toileting and indoor pad use.

My agents are prepared to deliver of Foxy to ASH in the coming weeks. As I previously affirmed, we will provide all supplies necessary for her care and maintenance, and I will personally perform (and, where necessary, outsource) all functions appurtenant to her care and maintenance. I have a full time, salaried agent who, as part of his agency duties to my family, will drive to ASH, in order to provide transportation for Foxy at a moment's notice. Further, one of my attorneys has reached out to several Phoenix-based rescue organizations, who have agreed to facilitate any routine or emergency pickups and drop-offs for veterinary purposes.

---

[6] *See* Exhibit C – Vaccination Certificate.

[7] *See* Exhibit D – Veterinarian's Letter.

[8] *See* Kim MJ, Oh HJ, Hwang SY, Hur TY, Lee BC. Health and temperaments of cloned working dogs. J Vet Sci. 2018 Sep 30;19(5):585-591. doi: 10.4142/jvs.2018.19.5.585. PMID: 29929355; PMCID: PMC6167335 (finding that "[c]loned working dogs have similar anatomical, physiological, neurological, and growth characteristics, as well as similar behavioral patterns, as those of their cell donors," and that "elite working dogs can be produced by cloning a working dog that exhibits both an appropriate temperament and good health.")

Please be aware that I possess full, absolute and unencumbered title to Foxy pursuant the Bill of Sale issued by ViaGen Pets.[9] Foxy is presently held in bailment by my agent. I have over $60,000.00 invested in her SCNT, training and ongoing maintenance. In additional the extreme emotional harm I face, Foxy's functional value as my service animal will be jeopardized, and my corresponding property interests in her unduly prejudiced, by any substantial period of separation from me. Accordingly, time is of the essence, and prompt fulfillment of this accommodation request is essential for my personal wellbeing, and for maintaining Foxy's training and respective value. While I personally disdain the concept of ownership of sentient, self-determining nonhuman animals, under Arizona law, Foxy is my personal property. I reserve all of my rights in her, and ASH cannot interfere with my possessory title in her but by due process of law.[10]

Given our prior interactions and the established legal precedent affirming my right to a service animal accommodation, I trust that we will not encounter the previous challenges. To reiterate, the ADA mandates that a service animal who performs work or tasks directly related to their handler's disability must be allowed to accompany their handler at ASH, unless the state can affirmatively demonstrate an valid exception. ASH must perform a particularized assessment in compliance with the ADA and AzDA, as interpreted by the District Court.[11] You should also be aware that Arizona law criminalizes any interference with a service animal, including denial of access.[12]

Please remember that it is not permissible to require documentation for my service animal, demand a demonstration of her work or task performance, or inquire further about the nature of my disability. As per ADA guidelines, your staff may ask:

1. Whether I am a qualified individual with a disability; and,
2. The specific work or task Foxy has been trained to perform.

As these two matters have been duly addressed in this letter and in the previous lawsuit, I do not expect any further inquiry in these regards. Even so, I have provided certification from Foxy's veterinarians and trainers as to her health, vaccination, and training status, in order to support your ability to render a prompt determination in this matter. I expect this letter to suffice for ensuring your compliance with the ADA and AzDA, thereby avoiding any potential misunderstandings or unnecessary legal disputes. Please confirm your acknowledgment of this accommodation request and any specific procedures my agents should follow to deliver Foxy to me at ASH.

---

[9] *See* Exhibit E – Bill of Sale.

[10] *See* Article II, §§ 4 & 33, Arizona Constitution; *see also* A.R.S. § 36-551.01(A).

[11] *See* Solan v. Arizona State Hospital, *supra*.

[12] *See* A.R.S. §§ 13-2910(H), 11-1024(J).

In conclusion, I am a qualified individual with a disability, Foxy is a service dog for the purposes of both Title II of the ADA and the antidiscrimination provisions of the AzDA, ASH is a "public entity" under the ADA and AzDA,[13] and, as a license psychiatric hospital, ASH is a "public accommodation" under the AzDA,[14] bringing Foxy's access to ASH under the operative scope of AR.S. § 11-1024. As such, ASH must make reasonable modifications to it practices, policies, and procedures to accommodate Foxy living with me during the remainder of my inpatient stay.

Kindly respond **no later than July 4, 2024** with your determination in this matter, and whether you will agree to comply with applicable law by facilitating Foxy's admission to ASH. If no response is received by the above date, I will presume the accommodation request has been denied, and pursue appropriate legal remedies to defend my natural and legal rights.

Please be advised that I am not represented by counsel in this matter, and any response must be in writing, delivered to me at the address above. Thank you for your immediate attention in this critical matter.

**SIGNED, SEALED AND RESPECTFULLY SUBMITTED** this 13th day of June, 2024.

**Matthew Phillip Solan**

*Attachments:*

1. Exhibit A – Foxy's Birth Certificate
2. Exhibit B – Training Completion Certificate
3. Exhibit C – Vaccination Certificate
4. Exhibit D – Veterinarian's Letter
5. Exhibit E – Bill of Sale

---

[13] *See* A.R.S. § 41-1492.01(A); A.A.C. R10-3-403.
[14] *See* A.R.S. § 41-1492(11)(f).

**EXHIBIT H**



ARIZONA DEPARTMENT
OF HEALTH SERVICES

ARIZONA STATE HOSPITAL

July 5, 2024

Matthew Solan
Forensic Hospital -  Cottonwood Unit
501 North 24th St.
Phoenix, AZ 85008

Re:    Request for Service Animal

Dear Mr. Solan:

The Arizona State Hospital Administration (herein, "Hospital") is in receipt of your letter, dated
June 13, 2024, addressed to the Hospital Chief Executive Officer (CEO).  The Hospital has
extensively reviewed the Americans with Disabilities Act (ADA) regulations on service animals
as part of its consideration of your initial and most recent request.  The Hospital will not modify
its existing policies, practices and/or procedures to allow for a service animal at the Forensic
Hospital for several reasons:

- The Hospital has legitimate concerns that, based on your own personal statements,
  your past relationships and interactions with a "service animal" have not only been
  counter-therapeutic, but also inappropriate (sexual in nature). In no way will the
  Hospital facilitate such illicit and illegal behaviors.
- The facilities maintained by the Hospital, including the Forensic Hospital, are secure
  facilities and not accessible to the general public.  Furthermore, the Hospital ONLY
  provides health care services at its facilities to individuals who are under court order
  for treatment (i.e., the Hospital does not provide health care services to the public at
  large).
- There are legitimate medical and safety reasons to exclude a service animal from the
  Hospital.
- The presence of a service animal within an Arizona State Hospital facility would
  require the alteration of services, programs, and/or activities and would fundamentally
  alter many typical functions of the Hospital.
- The proper handling of a service animal, including the toileting, feeding, grooming and
  veterinary care could not feasibly be provided at the sole responsibility of the patient.
  Such activities would require additional staff resources and coordination.

Sincerely,

Arizona State Hospital Administration

Cc:    Erin Cohen, Assistant Attorney General

**EXHIBIT I**

## Special Visit Request Form

Patient: Matthew Phillip Solan

Unit: Cottonwood

Today's Date: June 22, 2024

Requested Date/Time:

*approved*

Choice #1: July 17th, 2024 at 11 o'clock *anti meridiem*

Choice #2 : July 17th, 2024 at 12 o'clock *post meridiem*  } My Birthday

Type of Visit: [Food] [Minor] [Camera] [2hr] [Other]    All of the foreging & legal meeting

Extended visit: [Yes] No

Reason for 2 hour visit: Joseph Cowsert is traveling approx. 400 miles. See also, date *supra*

Visitors: Name / Relationship / Age (if minor)

Visitor #1 : Holly Gieszl, Esq., my attorney-at-law        Visitor #4: Joshua Mozell Esq., my attorney-at-law

Visitor #2 : Joseph Cowsert, my attorney-in-fact

Visitor #3 : Foxy Solan, my service animal (age 8 mo.)  No Dogs are allowed on Campus

Details:                              **NOTICE:**

Subject only to date/time availability, acceptance and approval of this formal visitation request is mandatory pursuant to A.A.C. R9-21-201(A)(8)&(14), A.R.S. §§ 41-1492.01(A), 41-1492.02(A), and 11-1024(A), 42 U.S.C. § 12132, and 28 C.F.R. § 35.136(a). Please do not misplace this form again!

### For Unit Clerk Use Only

☒ PNUM approval received ___M4___ Unit Clerk Initials

☒ Nursing approved date/time ___6-24-24___

☒ Added to wildflower and unit calendar

☒ Form with details transmitted to SW (ForensicSocialWork@azdhs.gov)

### For Social Worker Use Only

☐ Nursing approval received

☐ Input into CEO Approval Sheet (minor, camera, special requests)

☐ Input into Food Visit Tracking Sheet (if applicable)

☒ Approved by CEO

☐ Nursing notified (by Social Work Director) of approval/denial

Revised 10/12/2022

**EXHIBIT J**

### DECLARATION OF BRAD SMITH

I, Brad Smith, hereby certify that the following statements are true and correct, and if called upon as a witness, I would testify as follows:

1. I am a professional dog trainer with over 33 years of experience, and am a managing member of ELITE PET SERVICES, LLC d/b/a All Dogs Unleashed (hereinafter "All Dogs Unleashed") of Prescott, Arizona (www.alldogsunleashed.com/prescott/).

2. Through All Dogs Unleashed, I provide top-tier dog training services, including guard dog and service dog training.

3. Foxy, a cloned Pomeranian mix belonging to Matthew Solan, was enrolled at All Dogs Unleashed for obedience and preliminary service dog training. She underwent an intensive, live-in training program lasting several weeks. Foxy completed our program on May 16, 2024, and was awarded a Certificate of Completion.

4. Foxy naturally possesses a quiet, friendly, and peaceful demeanor, and is dominant, confident, and intelligent. This combination of traits made her an excellent candidate for service dog training, as she is able to maintain focus on her handler, take control of situations, and respond to changing circumstances without fear or aggression.

5. The first phase of obedience training we performed ensured that Foxy mastered standard commands, and could exhibit appropriate behavior in a variety of settings. All Dogs Unleashed laid the foundation for Foxy's service dog training, and Joseph Cowsert completed her task training under our guidance, including Deep Pressure Therapy ("DPT") work, alerting tasks, and the ability to provide consistent grounding support and serve as a social buffer for Mr. Solan.

6. On September 11, 2024, Mr. Cowsert contacted us and requested that we verify the additional training he had performed with Foxy, and certify her status as a service animal. On October 5, 2024, I met with Mr. Cowsert and Foxy, and conducted an evaluation of Foxy and the training Mr. Cowsert had performed.

7. Based on my with Foxy, subsequent evaluation, and discussion with Mr. Cowsert, it is my professional opinion that Foxy demonstrates a consistent ability to perform DPT and alerting tasks, provide grounding support, and serve as a social buffer for her handler. Foxy possesses all the qualities expected of a service dog, including acute sensitivity to her handler's emotional states, exceptional adaptability to stress, and the ability to remain focused and calm in disruptive situations.

8. Foxy performs well on and off leash, consistently responds to her handler's verbal and nonverbal commands, and is fully housetrained. She displays no signs of aggression, and enjoys being picked up and handled by her trainers and strangers alike.

9. Overall, Foxy is a friendly and well-adjusted animal, and has acquired the necessary skills and temperament to effectively assist her handler. I accordingly certify that Foxy is a fully trained service dog, and is prepared to serve as such for Mr. Solan.

I declare under penalty of perjury that the forgoing is true and correct.

**EXECUTED** on October 5th, 2024.

**Brad Smith, Owner**
All Dogs Unleashed
(928) 642-7575

**EXHIBIT K**

1

## DECLARATION OF JOSEPH M. COWSERT JR.

2    I, Joseph M. Cowsert Jr., hereby certify that the following statements are true and

3    correct, and if called upon as a witness, I would testify as follows:

4    1. I am the interim handler and trainer for Matthew Solan's service dog Foxy, and make

5       this declaration based on my personal knowledge related to Foxy's training and care.

6    2. I maintain almost daily communication with Mr. Solan, providing emotional support

7       and addressing his immediate needs. Additionally, I have lived with and cared for

8       Foxy, in both her prior and present incarnations. I worked with Mr. Solan and Foxy

9       when they lived in Williams, Arizona; I cared for Foxy for over three months when

10      she and Mr. Solan were initially separated; and I have lived with the cloned Foxy

11      since she was 2 months old. This equips me with firsthand knowledge of Foxy's

12      temperament and the indispensable role she plays in Mr. Solan's life.

13    3. I also have experience working with Autistic adults. I worked at Rusty's Morning Star

14      Ranch in Cornville, Arizona throughout the 1980's. In my capacity as a Counselor at

15      the ranch, I provided a wide array of assistance in daily life actives to countless

16      individuals on the Autism Spectrum.

17    4. I am a born and bred Arizona cowboy from a long line of Cottonwood ranchers. I

18      grew up around animals, and have been raising dogs for nearly 70 years. From my

19      years on the family ranch, I gained extensive experience breeding and caring for

20      domestic dogs, horses and diverse farm animals, including training working animals

21      such as cattle herding dogs. I also bred and trained coyotes at my family's ranch in the

22      1980s.

5. I met Mr. Solan and the original Foxy in or about November, 2018. Mr. Solan hired me to work at his ranch and drive him and Foxy to and from appointments.

6. After Mr. Solan was taken into custody in January, 2019, his mother hired me to care for the original Foxy, which I did for approximately 6 months.

7. However, due to a series of burglaries and murders in Williams, which claimed the life of Donald Hubert, an elderly man Mr. Solan had befriended, and Alaska, a neighborhood dog that Foxy often played with, Mr. Solan's family decided to send Foxy to live with Angela Bazan in Flagstaff for her personal safety.

8. I continued to work with Mr. Solan and his family, and in 2020 Mr. Solan constituted me his formal agent and attorney in fact under letters of attorney. He also appointed me President of his company, Fox Ranch, LLC to manage its day-to-day business affairs while he remained inpatient at ASH.

9. After Foxy passed away on July 13, 2022, Mr. Solan had her body rushed to Continental Animal Wellness Center in Flagstaff, Arizona. They performed several biopsies and extracted a portion of her ear, and same-day expressed the samples to Genetic Reflections LLC, a Texas limited liability company doing business as ViaGen Pets and Equine in Cedar Park, Texas ("ViaGen"), for somatic cell culture and cryogenic preservation.

10. Over the next few months, Mr. Solan consulted with me on whether he should kill himself and go live with Foxy on the astral plane, or sell everything he owned and clone Foxy's body, so she could reincarnate into it.

11. I suggested he not kill himself. Mr. Solan decided he would attempt to clone Foxy, and asked me to move all personal property from his homestead and the Fox Ranch principal office to a remote parcel he had purchased in 2018.

12. After I did as he asked, Mr. Solan had his ranch subdivided by a licensed surveyor, and sold the ranch house and along with the 12 acres it sat on. Acting under special letters of attorney, I met the title agent and executed the deed of conveyance on behalf of Mr. Solan.

13. Mr. Solan then entered a Canine Cloning Contract with ViaGen and invested $53,500 of the purchase money from the real estate transaction in commissioning a Somatic Cell Nuclear Transfer ("SCNT") derived clone of Foxy.

14. I say this to iterate that Mr. Solan is now homeless; he put Foxy's life above having a home to return to. I am now in the process of helping him retrofit a tiny house to meet residency standards in Coconino County, so he won't be homeless upon discharge.

15. A cloned embryo was procured from Foxy's cryogenically preserved somatic cells, and the puppy was born on November 9, 2023.

16. On or about January 13, 2024, ViaGen delivered Foxy to me on behalf of Mr Solan, and Mr. Solan entrusted her to me for care and training. Except for the several weeks Foxy spent at a board and train program, I have maintained her custody ever since.

17. I have taken Foxy to all of her medical appointments, and she has received all of her scheduled immunizations and examinations, and is in perfect health.

18. Foxy concluded a live-in training program at All Dogs Unleashed in Prescott, Arizona on May 16, 2024.

19. Foxy has been fully trained in advanced obedience and essential service animal skills, and continues to receive ongoing training maintenance under my supervision, and under the advice and guidance of All Dogs Unleashed, to maintain and enhance her skills as a service animal.

20. Foxy is designated to assist Mr. Solan. She performs tasks that are crucial for assisting Mr. Solan in managing the effects of his neurodevelopmental disabilities. Specifically, Foxy is individually trained to perform Deep Pressure Therapy ("DPT") work, which historically has been instrumental in helping Mr. Solan cope with sensory processing and mitigating sensory overstimulation.

21. I am a Viet Nam veteran and still suffer from PTSD as a result of my experiences in the service. I experience occasional flashbacks have trained Foxy to recognize these episodes, interrupt me, and begin her DPT work without prompting.

22. As a result of this training, Foxy is now very attentive to anyone who is experiencing anxiety, and will perform her DPT work on them as well. This I have reinforced so that Foxy will be ready to transition into serving Mr. Solan when they are reunited.

23. Foxy is fully housetrained, very quiet, and gets along exceptionally well with all human and non-human animals she's come in contact with. She especially likes cows and children, and is very tolerant of loud noises and being handled and carried around.

24. I brought Foxy to numerous stores and public places while she was in training, and continue to bring her to public places to maintain her training as a service animal. She is well received by everyone and is perfectly well behaved in public, on and off leash.

25. Since 2018, I have been deeply involved in the lives of Mr. Solan and Foxy. My role extends beyond mere acquaintance. I am a primary caregiver and advocate for both Mr. Solan and Foxy, and have served continuously during Mr. Solan's stay at ASH as his healthcare designated representative, agent, and attorney in fact.

26. I am highly cognizant of Mr. Solan's deeply spiritual relationship with Foxy, and find ASH's assertion that Mr. Solan might sexually abuse her to be absurd and disgusting.

27. Mr. Solan has treated Foxy with the upmost respect and dignity, and the highest degree of care as long as I've known them. I've never witnessed Mr. Solan sexually harass Foxy do anything to distress her, and do not believe he ever would.

28. Mr. Solan clearly does not have much faith left in the human race, and I don't think he even sees himself as a part of it anymore; but he certainly deems Foxy to be a sovereign being worthy of respect and adoration.

29. When Mr. Solan and Foxy's prior embodiment were living together, Mr. Solan fussed over Foxy constantly; he coddled and pampered her, took her everywhere, showered her with gifts, cooked for her, bathed and groomed her, got her the best medical care available, and even bought her a limousine, which I drove for them on occasion. Mr. Solan dedicated his life to Foxy, and the two of them where always happy to together.

30. After the cloned Foxy was delivered into my care, Mr. Solan has endeavored to have weekly video visits with her. He interacts with her over the computer, and she stares right into the screen and listens to him. When I tell her we're having a visit, she jumps into the computer chair and stares at the screen until I get the visit running. If the visit doesn't connect, she lies on the chair and pouts.

31. Mr. Solan is constantly seeking out Foxy's needs and sending her things. Last winter he sent her winter jackets and snow boots, specialized car seats, enclosed dog beds, and everything else she could have needed. This summer he sent her a front pack and dog helmet for riding with me on our ATV, and a whole outfit of service dog gear once she finished her training. And before I've even had to ask, Mr. Solan has bought Foxy new clothes, bedding, and accessories as she's outgrown the old ones.

32. But since Mr. Solan and Foxy have been physically separated, Mr. Solan is not happy anymore. Instead, he's filled with righteous indignation towards the government that dispossessed him of his closest family member and the object of his faith. I have witnessed a profound and growing despair, cynicism, and misanthropy in Mr. Solan, and a crystalizing of his belief that the State's intent is to profit off his subjugation, rather than treat his mental health conditions. Unfortunately, I fully agree with him.

33. Having worked with Mr. Solan and Foxy for almost 6 years, and understanding their relationship and the essential support Foxy provides to Mr. Solan, it is my opinion that allowing Foxy to live with Mr. Solan is absolutely necessary for his wellbeing. Conversely, failing to admit Foxy seems likely result to in a serious mental health crisis with potentially catastrophic consequences.

I declare under penalty of perjury that the foregoing is true and correct.

**EXECUTED** on September 17th, 2024.

Joseph M. Cowser Jr.
(928) 310-5931

Page 6 of 6

**EXHIBIT L**



**U.S. Postal Service™**
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☑ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To  The State of Arizona, c/o Kris Mayes, AG
Street and Apt. No., or PO Box No.  2 000 North Central Ave
City, State, ZIP+4®  Phoenix AZ 85004

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☑ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To  Elizabeth Alvarado Thorson, Director, Risk Mgmt
Street and Apt. No., or PO Box No.  100 North 15th Ave-
City, State, ZIP+4®  Phoenix, AZ 85007

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☑ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To  Jennifer Cunico, ADHS Director
Street and Apt. No., or PO Box No.  150 North 18th Ave.
City, State, ZIP+4®  Phoenix AZ 85007

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☑ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To  Jennifer Cunico, Trustee
Street and Apt. No., or PO Box No.  150 North 18th Ave.
City, State, ZIP+4®  Phoenix, AZ 85007

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☑ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To  Michael B. Sheldon, CEO
Street and Apt. No., or PO Box No.  2500 East Van Buren Street
City, State, ZIP+4®  Phoenix, AZ 85008

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions

---

**U.S. Postal Service™**
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☑ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To  Aaron Bowen, Former CEO
Street and Apt. No., or PO Box No.  2500 East Van Buren Street
City, State, ZIP+4®  Phoenix, AZ 85008

PS Form 3800, January 2023 PSN 7530-02-000-9047   See Reverse for Instructions



**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

Sent To: Steven Kwoh M.D.
Street and Apt. No., or PO Box No.: 2500 East Van Buren Street
City, State, ZIP+4: Phoenix, AZ 85008

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

Sent To: Calvin Flowers M.D.
Street and Apt. No., or PO Box No.: 2500 East Van Buren Street
City, State, ZIP+4: Phoenix, AZ 85008

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

Sent To: Lance Thompson
Street and Apt. No., or PO Box No.: 2500 East Van Buren Street
City, State, ZIP+4: Phoenix, AZ 85008

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

Sent To: Kindra Ochoa
Street and Apt. No., or PO Box No.: 2500 East Van Buren Street
City, State, ZIP+4: Phoenix, AZ 85008

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

Sent To: Leicher Carter
Street and Apt. No., or PO Box No.: 2500 East Van Buren Street
City, State, ZIP+4: Phoenix, AZ 85008

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

Sent To: Millie Coleman
Street and Apt. No., or PO Box No.: 2500 East Van Buren Street
City, State, ZIP+4: Phoenix, AZ 85008

**EXHIBIT M**



**ARIZONA DEPARTMENT OF HEALTH SERVICES**

ARIZONA STATE HOSPITAL

November 5, 2024

Matthew Solan

2500 E. Van Buren Street, Cottonwood Unit

Phoenix, Arizona 85008

Re: **Decision Letter**

**Docket Number: ASH101524S0515C**

Dear Mr. Solan:

The Arizona State Hospital Office of Complaints, Grievances and Appeals (ASH, OCGA) received your complaint on October 15, 2024.  In your complaint you stated that, "On June 13, 2024, I mailed a reasonable accommodation request letter to ASH's CEO, Michael Sheldon ("Sheldon") asserting my rights under Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12031, et seq., 28 C.F.R., Part 35) (the "ADA") and the Arizonans with Disabilities Act (A.R.S. §§ 11-1024, 41-1492, et seq.; A.A.C. R9-3-401, et seq.) (the "AzDA") to an accommodation for my service animal Foxy ("Foxy") during the remainder of my commitment period at the Arizona State Hospital ("ASH").

In the letter, I reminded Sheldon that I had previously brought a legal action against ASH due to its prior administrators' failure to accommodate my service animal, resulting in a favorable injunction that affirmed my rights as a service animal handler and status as a qualified individual with a disability. See Solan v. Arizona State Hospital, 2:20-cv-02209 at 89 (D. Ariz. 2022). I further reminded Sheldon that Foxy had experienced a temporary total cessation of cellular function in 2022, and informed him that Foxy since undergone a full anastasis by virtue of Somatic Cell Nuclear Transfer ("SCNT"), carried out by Genetic Reflections LLC d/b/a/ ViaGen Pets and Equine

("ViaGen Pets") at their Rochester, New York Facility. I informed Sheldon that as of May 17, 2024, Foxy had completed professional retraining, had mastered advanced obedience, was trained to perform Deep Pressure Therapy ("DPT'), and was prepared to serve as my autism service animal.

To be sure, Foxy is a service animal for the purposes of both Title II and Title III of the ADA, and the service animal provisions of Arizona law, including the AzDA, and I am a qualified individual with a neurodevelopmental disability under the same. Further, ASH is both a "public entity" under the Title II of the ADA and the AzDA and, as a licensed psychiatric hospital held in a charitable trust for the benefit of its patients, ASH is also a "public accommodation" within the meaning of the Title III of the ADA and the corresponding provisions of the AzDA. This also brings Foxy's admission, and visitation, under the operative scope of A.R.S. § 11-1024. As such, ASH is required to make reasonable accommodations for Foxy absent a valid exception. No such exception has been, nor can be demonstrated by ASH.

On July 5, 2024, ASH responded to my reasonable accommodation request with a one-page letter, stating "[t]he Arizona State Hospital Administration (herein, "Hospital") is in receipt of your letter, dated June 13, 2024, addressed to the Hospital Chief Executive Officer (CEO). The Hospital has extensively reviewed the Americans with Disabilities Act (ADA) regulations on service animals as part of its consideration of your initial and most recent request. The Hospital will not modify its existing policies, practices and/or procedures to allow for a service animal at the Forensic Hospital for several reasons:

The Hospital has legitimate concerns that, based on your own personal statements, your past relationships and interactions with a "service animal" have not only been counter-therapeutic, but also inappropriate (sexual in nature). In no way will the Hospital facilitate such illicit and illegal behaviors.

The facilities maintained by the Hospital, including the Forensic Hospital, are secure facilities and not accessible to the general public. Furthermore, the Hospital ONLY provides health care services at its facilities to individuals who are under court order for treatment (i.e., the Hospital does not provide health care services to the public at large).

There are legitimate medical and safety reasons to exclude a service animal from the Hospital.

The presence of a service animal within an Arizona State Hospital facility would require the alteration of services, programs, and/or activities and would fundamentally alter many typical functions of the Hospital. The proper handling of a service animal, including the toileting, feeding, grooming and veterinary care could not be feasibly be provided at the sole responsibility of the patient. Such activities would require additional staff resources and coordination".

Sheldon's baseless accusations of bestiality are libelous and border on criminal emotional abuse of a vulnerable adult. ASH's remaining concerns as stated, are frivolous, pedantic, and at any rate do not demonstrate valid exemptions from the ADA's service animal access requirements. By excluding Foxy, obstructing my habilitation, and falsely accusing me of bestiality in retaliation for

asserting my disability and challenging ASH's illegal anti-service animal policies and practices, the State of Arizona, through its agency ASH, our public servants Mike Sheldon and Jenifer Cunico ("Cunico"), and numerous persons acting under them, have blatantly violated the anti-discrimination and anti-retaliation provisions of the ADA, a myriad of the state, federal, and international laws and treaties, and numerous common law rights. Their egregious acts and omissions with respect to the subject matter hereof have caused, and continue to cause me extreme emotional harm, and substantial injury to my legal and human rights. Indeed, from the date I first informed ASH that Foxy had been cloned and retrained as a service animal, through this compliant, I have experienced distress, anguish, and heightened mental health symptoms, including hyper-vigilance, nightmares, flashbacks, sensory overload, increased anxiety, suicidal ideation, and self-injurious stimming behavior, without Foxy present to perform her tasks that alleviate these symptoms. My providers have also noted, and I have been informed charted, that I have engaged in self-injurious actions, including banging my head and hands, and pulling out my hair. These self-injurious behaviors could have been prevented or immediately interrupted by Foxy, but instead have been exacerbated by the flagrant misconduct of my incorrigible public servants, as described herein.

Furthermore, I submitted to ASH "Special Visit Request Form" for an in-person visit on July 17, 2024 (my birthday) with several of my attorneys and designated healthcare representatives, as well as Foxy. I added a notice informing ASH that the service animal accommodation implicit in the visit request was mandatory by law. After two weeks had elapsed without a response, I contacted one of my attorneys, who sent an email to Assistant Attorney General Erin Cohen. Cohen responded on July 11, 2024 with a brief email, which stated only, "ASH's response: Josh and Holly are approved. The dog is not allowed on our grounds". A few days before the food visit, ASH provided me a copy of the visit request form. It was marked "approved," but stated "No dogs are allowed on campus". As a result, I was unable to visit with Foxy and my designated representative Joseph Cowsert, who has 24/7 charge of Foxy's care.

ASH and its administrators have failed to perform particularized assessments, of both my June 13, 2024 reasonable accommodation request and my visitation requests. In compliance with their obligations under Title II of the ADA, as construed by the District Court in Solan v. Arizona State Hospital supra. There is no excuse for this nonfeasance-ASH's obligations in this regard have been clearly spelled out by the Court.

In response the ASH administrators' continued assault on my fundamental rights and human dignity, I timely and property serve Sheldon, Cunico, and other liable parties with notice of my claim for 33,000,000 in damages arising out of the aforementioned violations, which they failed to pay, contest, or adjust within the statutory 60-day settlement window. I also filed an ITDP appeal pursuant to A.A.C. R9-21-401 et seq., which covered ASH's refusal to accommodate Foxy, and initiated judicial proceedings seeking equitable relief for ASH's violations of the ADA and section 504 of the Rehabilitation Act of 1973.

Resolution

ASH OCGA Docket:                                                                    page 4

Admit Foxy to ASH forthwith-this is the only acceptable remedy.

Supply a written response with assurances that ASH will not interfere with Foxy's ability to accompany me during the remainder of my inpatient stay. A response to this complaint must be delivered on or before November 9, 2024.

In default of valid remedy, or assurance of a remedy by that date, I will be compelled to defend my rights through all means at my disposal, which may require me commence an action on my claim for damages aforesaid".

During the interview with you on 10/23/24, you said that you already knew how this case would go. You said that you filed this complaint, so that you could go to the next level. You said that you had an ITDP appeal hearing on 8/1/24 and that you were requesting that your service animal be added to your ITDP, but that you separated this request. You said that Foxy is a trained service animal and that she can be used to assist with providing services to you and other Forensic Hospital patients here at ASH. You said that you had filed a lawsuit, where you requested that you be provided with an alternative plan/service to be put in place, and that this has not happened. You said that you want your personal service animal to live with you, the remaining duration of your stay at ASH. You said that you have had self-harm behaviors, suicidal ideations, pulling your hair out, and banging your head. You said that this is the result of you not having your service animal.

In regards to your request to have your personal dog visit or live with you at ASH, this issue cannot be handled through the Hospital's internal complaint process, due to the litigation history with this issue.

A review of your ITDP dated 9/19/24, shows that Animal Assisted Therapy (AAT) has been written in the ITDP, as an intervention. I interviewed the ASH Rehabilitation Director and he said that the rehabilitation department does not offer AAT at this time. When it becomes available at the forensic Hospital, you will be offered AAT.

Your allegations of self-harm, anxiety, or suicidal ideations, due to not having the requested personal pet Foxy with you, are not supported by any recorded instance of your self-harm, anxiety, or suicidal ideation during the period of time in question.

Based upon the findings of this investigation, your complaint is dismissed.

If you have any questions regarding this letter or the complaint process, please contact ASH OCGA at 602-220-6209.

If you are not satisfied with the Hospital's decision or wish to file a complaint, you may also contact the Arizona Department of Health Services, Public Health Licensing by contacting Medical Facilities Licensing at 150 N. 18th Avenue, Phoenix, Arizona 85007 by mail or by calling (602) 364-3030.

ASH OCGA Docket:                                             page  5

Respectfully,

Cindy Lucious

Cindy Lucious

Hospital Investigator

Office of Complaints, Grievances and Appeals

Arizona State Hospital