Ann Hobart, Bar No. 019129
Jordan Kendall, Bar No. 038647
Assistant Attorneys General
Arizona Attorney General's Office
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-8347
         (602) 542-7687
Facsimile: (602) 542-7644
Ann.Hobart@azag.gov
Jordan.Kendall@azag.gov
EmploymentLaw@azag.gov

Attorneys for Defendants State of Arizona,
Michael R. Sheldon, Aaron Bowen,
Lea'cher Carter, and Unique Coleman

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Matthew Phillip Solan, | Case No: CV-24-02061-JJT-DMF |
| Plaintiff, | **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (DOC. 17)** |
| vs. | |
| The State of Arizona; Jennifer L. Cunico; Michael R. Sheldon; Aaron Bowen, Calvin J. Flowers; Steven Kwoh; Kindra Ochoa, Lea'cher Carter, Unique Coleman; John Does 1-100; Jane Does 1-100; Black Corporations 1-10; and White Entities 1-10, | |
| Defendants. | |

Defendants the State of Arizona, Michael R. Sheldon, Aaron Bowen, Lea'cher Carter, and Unique Coleman hereby respond in opposition to Plaintiff's Motion for Preliminary Injunction ("Motion"). (Doc. 17.) The Court should deny the Motion because Plaintiff Matthew Solan has not shown that he is likely to prevail on the merits of his claims that Title II of the Americans with Disabilities Act ("ADA") and/or Section 504 of the Rehabilitation Act ("Rehab Act") require the Arizona State Hospital ("ASH")

to admit the clone of Solan's deceased service animal Foxy to live with him during his commitment to the ASH Forensic Hospital and because he has failed to establish the other elements for obtaining a preliminary injunction.

## I.     Introduction.

On March 12, 2020, Solan was convicted in the Coconino County Superior Court of one count of aggravated assault and sentenced to a 7.5-year term of imprisonment in the Arizona Department of Corrections, Rehabilitation & Reentry. (Doc. 8, at 3 n. 3.) Because he has been diagnosed as Seriously Mentally Ill and was adjudicated Guilty Except Insane, Solan was committed to ASH's Forensic Hospital under the jurisdiction of the Psychiatric Security Review Board. (*Id.*; Doc. 6 at 13, ¶ 56.) Solan was admitted to ASH on April 1, 2020. (*Id.*)

Shortly following his admission, Solan asked to have his dog Foxy (from which he had been separated in 2019 when he was arrested and placed in a detention facility) live with him at ASH. (Doc. 6 at 14-15, ¶¶ 66-67.) ASH denied his request, citing security and health and safety concerns, and administrative burden. (*Id.* at ¶ 67.) Solan filed a lawsuit and Motion for Preliminary Injunction with this Court, *Solan v. Arizona State Hospital,* CV-20-02209-PHX-JJT (DMF) ("CV-20-02209"), alleging that ASH's refusal to modify its policies and procedures to allow Foxy to live with him at the forensic psychiatric hospital violated the ADA. On March 22, 2022, the Court granted Solan's motion and ordered ASH to conduct a particularized assessment to determine whether reasonable modifications could be made to allow Foxy to live with Solan at ASH "without fundamentally altering ASH's services." (Doc. 6 at 16, ¶ 76.)

On or about May 6, 2022, as the Court had ordered, ASH provided Solan a report of its particularized assessment setting forth six general areas of concern that justified denying his request to have Foxy live with him at ASH. (Doc. 6 at 17, ¶ 81 & 64-69 [Ex. A].) This Court previously had advised Solan that, if he was "again dissatisfied" with ASH's decision following the particularized assessment, he could "again move for preliminary injunctive relief." (CV-20-02209, Doc. 84, at 16.) Solan did not do so,

1   although by the time he received the particularized assessment report, he was represented
2   by counsel.  (Doc. 6 at 19, ¶ 93.)  Solan learned that Foxy had passed away on July 13,
3   2022.  (*Id.* ¶ 94.)  However, he did not stipulate to dismiss his case until January 26,
4   2023.  (CV-20-02209, Doc. 94.)  The stipulation was to dismissal was with prejudice
5   (*id.*) even though, by then, Solan had already arranged to have Foxy cloned (doc. 6 at 19,
6   ¶ 97).
7           On November 9, 2023, Solan claims that Foxy was "reincarnated."  (Doc. 6 at 20,
8   ¶ 105.)  On June 13, 2024, he requested that Foxy's clone be allowed to live with him at
9   ASH.  (*Id.* at 22, ¶ 117.)  ASH denied this request, based on the same concerns that it
10  had articulated in the May 2022 particularized assessment report.  (*Id.* at 22-23, ¶ 123.)
11  These concerns included that "based on [Solan's] own personal statements, [his] past
12  relationships and interactions with a 'service animal' have not only been counter-
13  therapeutic, but also inappropriate (sexual in nature)."  (*Id.* at 23, ¶ 124(a), & 86.)
14          On August 14, 2024, Solan filed this lawsuit complaining that ASH's denial
15  violated the ADA and the Rehab Act.  (Doc. 1.)  In the operative First Amended
16  Complaint ("FAC") filed on November 18, 2024, Solan alleged claims for false light
17  invasion of privacy and defamation as well.  (Doc. 6 at 50, 51.)  These four claims
18  survived screening under 28 § 1915(A) (doc. 8 at 20), and, on March 13, 2024, the
19  remaining Defendants moved to dismiss them for failure to state a claim (doc. 15).  Four
20  days later, Solan filed the present Motion, asking this Court to order ASH to admit
21  Foxy's clone to live with him at the ASH Forensic Hospital during the pendency of his
22  lawsuit.
23          The Court should deny Solan's Motion because he has not shown that he is likely
24  to succeed on the merits of his ADA and Rehab Act claims, for several reasons.  First,
25  having voluntarily dismissed CV-20-02209 with prejudice, Solan is collaterally estopped
26  from arguing that the 2022 particularized assessment is invalid because it did not comply
27  with the Court's Order in Solan's prior case.  Second,  Solan has no factual or legal basis
28  to controvert Defendants' reliance on the 2022 particularized assessment to deny his

current request to have Foxy's clone live with him at the ASH Forensic Hospital. Finally, Solan's complaint that Foxy's clone is a therapy animal that should be allowed to provide Animal Assisted Therapy to all Forensic Hospital patients does not support his claim that she is a service animal who has been individually trained to perform work or tasks related specifically to his psychiatric disabilities. Moreover, Solan has failed to establish the other elements for obtaining a preliminary injunction.

**II.     Solan Has Not Clearly Shown that He is Likely to Prevail on His Claim that the ADA and the Rehab Act Require ASH to Allow Foxy's Clone to Live with Him at the Forensic Hospital.**

"Preliminary injunctive relief is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Jones v. Bonta,* 705 F. Supp. 3d 1121, 1130 (S.D. Cal. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). To obtain a preliminary injunction under Fed. R. Civ. P. 65, a party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Solan's Motion does not come close to making such a showing.

When evaluating motions for preliminary injunction, courts in the Ninth Circuit apply a sliding scale approach. *See Alliance for Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced and where a plaintiff can make a stronger showing of one element it may offset a weaker showing of another." *Jones,* 705 F. Supp. 3d at 1130. However, "[t]he first *Winter* factor, likelihood of success, is a threshold inquiry and is the most important factor in any motion for a preliminary injunction." *Baird v. Bonta,* 81 F.4th 1036, 1042 (9th Cir. 2023).

Solan's Motion does not clear *Winter*'s threshold inquiry.

**A. Issue Preclusion Bars Solan's Argument that ASH's Particularized Assessment Is Invalid Because It Did Not Comply with the Court's Order in CV-20-02209.**

According to Solan, Defendants cannot rely on the 2022 particularized assessment relating to Foxy to exclude her clone from ASH in 2025 because, he argues, the assessment did not comply with the Court's order in CV-20-02209. (Doc. 17 at 7-8.) The issue preclusion doctrine bars this argument, however, because Solan explicitly requested that this Court dismiss CV-20-02209 with prejudice, and this Court granted that request. (CV-20-02209, Docs. 94 & 95.)

"The effect of a dismissal with prejudice is that it acts as a final judgment and cannot be revived or relitigated absent extraordinary circumstances." *Newlin v Idaho Dep't of Health & Welfare,* 2025 WL 622197, *2 (D. Idaho Feb. 26, 2025) (citing *Zapata v. New York*, 502 U.S. 181, 185 (1991) ("A dismissal with prejudice terminates the action and precludes further litigation on the merits"); *Hells Canyon Pres. Council v. United States Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005) ("Final judgment on the merits is synonymous with dismissal with prejudice.") (cleaned up).") "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). "Under federal common law, the elements of issue preclusion are: (1) there was a full and fair opportunity to litigate the issue in the previous action, (2) the issue was actually litigated in that action, (3) the issue was lost as a result of a final judgment in that action, and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." *In re Van Damme*, 651 B.R. 791, 808 (D. Nev. 2022).

Each of the elements of issue preclusion is satisfied in this case. One, Solan had a full and fair opportunity to litigate and, two, did litigate, whether Foxy's exclusion from ASH violated the ADA. After granting Solan's motion for preliminary injunction and ordering ASH to conduct a particularized assessment relating to Foxy, the Court even advised Solan that he could "again move for preliminary injunctive relief," if he was "again dissatisfied" with the outcome of that that assessment. (CV-20-02209, Doc. 84,

at 16.) Three, Solan did not challenge ASH's compliance with the Court's preliminary injunction Order while CV-20-02209 was pending, and he lost the issue when he voluntarily stipulated to dismiss his prior case with prejudice. Four, Solan was the Plaintiff in CV-20-02209 and is the Plaintiff in the present case. Accordingly, Solan is collaterally estopped from arguing in this action that the 2022 particularized assessment is invalid because it did not comply with the preliminary injunction Order in CV-20-02209.

      **B.**      **Solan Has No Legal or Factual Basis to Controvert Defendants' Reliance on the 2022 Particularized Assessment Relating to Foxy I to Deny His Request to Have Foxy's Clone Live with Him at ASH in 2025.**

In denying Solan's request to have Foxy's clone live with him at the Forensic Hospital, ASH invoked the particularized assessment that it had conducted of the same request for Foxy in 2022. (Doc. 6 at 22-23, 86.) Similarly, Defendants relied on the particularized assessment's findings and conclusions in moving to dismiss Solan's ADA and Rehab Act claims in the present matter. (Doc. 15 at 5-14.) Solan asserts that Defendants' reliance is misplaced because the particularized assessment "was from another administration, and for a different service animal." (Doc. 17 at 7.) But he fails to explain what difference that makes. And he can't. The reasons to deny Solan's request to have a service animal live with him at the Forensic Hospital are the same in 2025 as they were in 2022. Solan's scattershot attempts to controvert ASH's particularized assessment are superficial, conclusory, and ineffectual.

For example, Solan accuses Defendants of attempting to "mislead' the Court by not citing the qualification to the requirement under 28 C.F.R. § 35.136(d) that service animals be tethered. (Doc. 17 at 11.) That is, "[a] service animal shall have a harness, leash, or other tether, *unless either the handler is unable because of a disability to use a harness, leash or other tether, or the use of a harness, leash or other tether would interfere with the service animal's safe, effective performance of work or tasks, in which case the service animal must be otherwise under the handler's control (e.g.,*

1    *voice control, signals or other effective means.)*" (*Id.* [citing 28 C.F.R. § 35.136(d)].)
2    But Solan fails to explain why he would be unable to use a tether because of a disability
3    or why using a tether would interfere with Foxy's clone's ability to safely and effectively
4    perform work or tasks for Solan.  Moreover, he fails to explain what work or tasks
5    Foxy's clone was individually trained to do for him, much less how that training was
6    accomplished.  Accordingly, he has failed to show that she is a service animal.  *See C.L.*
7    *v. Del Amo Hospital,* 992 F.3d 901, 910 (9th Cir. 2021) ("The ADA's implementing
8    regulations define a service animal as 'any dog that is individually trained to do work or
9    perform tasks for the benefit of an individual with a disability,' including a psychiatric
10   disability, where the work or tasks are 'directly related to the individual's disability.' 28
11   CFR § 36.104.").  These deficiencies are fatal to Solan's Motion.  "[A] well-trained
12   companion animal that happens to alleviate a person's anxiety," which Foxy's clone may
13   be, is not a service animal protected by the ADA.  (*Id.* at 911.)

14          Ironically, *Del Amo* is one of three cases that Solan cites for the broad (and
15   inaccurate) proposition that "courts have repeatedly granted injunctions, including
16   preliminary injunctions, mandating service animal accommodations for patients residing
17   in locked psychiatric wards." (Doc. 17 at 5.)  Contrary to Solan's Motion, *Del Amo* did
18   not involve residency in a locked psychiatric facility or an injunction of any kind.  It
19   involved a plaintiff who on multiple occasions voluntarily sought inpatient treatment for
20   PTSD from Del Amo and each time asked to be accompanied by her service dog.  992
21   F.3d at 907.  Each time, Del Amo denied the request because clinicians determined that
22   the dog's presence would interfere with the plaintiff's therapy. *Id.*

23          Following a bench trial, the district court entered judgment for Del Amo on the
24   grounds that plaintiff had not shown that her dog, whom she had personally trained to
25   perform work related to her PTSD, was a service animal.  *Id.* at 908.  The court did not
26   reach the question of whether Del Amo had proven its affirmative defense that allowing
27   the dog to participate in plaintiff's hospitalization would "fundamentally alter" the
28   psychiatric services that it offered and therefore was not required under the ADA.  *Id.*

1   On appeal, the Ninth Circuit found that, as a matter of first impression, the district court
2   had erred as a matter of law by requiring plaintiff's dog to meet formal certification
3   standards in order to qualify as a "service dog" under the ADA, and remanded the case
4   to the district court for further proceedings consistent with its opinion.  992 F.3d at 915.
5   　　　*Del Amo* is no help to Solan because ASH has never disputed that Foxy, whom
6   Solan personally trained, was a service dog.  Moreover, he has not alleged facts to
7   suggest that, like Foxy, he personally trained Foxy's clone to perform tasks or work for
8   him that are directly related to his psychiatric disabilities.  Accordingly, *Del Amo*
9   provides no support for the injunction that Solan seeks with this Motion, which is an
10  Order requiring that ASH allow Foxy's clone to live with him at the Forensic Hospital
11  "during the pendency of this suit."  (Doc. 17 at 17.)
12  　　　Solan's second case is *Tamara v. El Camino Hosp.*, 964 F. Supp. 2d 1077 (N.D.
13  Cal. 2013).  (Doc. 17 at 5.)  *Tamara* did involve a brief (13-day) stay in a "locked
14  psychiatric ward," but the Plaintiff in that case used a service dog for "independence and
15  mobility" following back surgeries, not to perform work or tasks related to her
16  psychiatric disabilities.  *Id.* at 1079-80.  Therefore, unlike in *Del Amo* (or this case),
17  whether the use of plaintiff's service animal would be countertherapeutic or interfere
18  with the psychiatric services the hospital provided was not at issue.  Rather, plaintiff
19  contested the hospital's blanket ban on service animals in certain restricted areas,
20  including the hospital's psychiatric ward, based on health and safety concerns.  *Id.* at
21  1081.
22  　　　Plaintiff moved for a preliminary injunction requiring El Camino Hospital to
23  change its policy to admit service dogs throughout the facility unless it has "substantial
24  evidence that a dog poses a 'direct threat' to the health and safety of others that cannot
25  be mitigated by reasonable modifications of its policies, practices, or procedures."  *Id.*
26  The district court granted plaintiff's motion and, pending resolution of the case, issued
27  an order precluding El Camino Hospital from automatically excluding service animals
28  from its psychiatric ward and requiring that it conduct "individualized assessments . . . to

1  determine whether a specific service animal poses a direct threat to the health or safety
2  of others based on reasonable judgment that relies on current medical knowledge or the
3  best available objective evidence." *Id.* at 1088.  The court also made clear, however, that
4  "[n]othing in this order should be construed as necessarily saying that [plaintiff's]
5  service dog must be allowed in the psychiatric ward." *Id.*  Accordingly, *Tamara* lends
6  no support for an injunction mandating that Foxy's clone be allowed to accompany
7  Solan at ASH's Forensic Hospital at this early phase of the litigation.

8        Solan's third case is the Court's March 22, 2022, Order in CV-20-02209 (doc.
9  84).  (Doc. 17 at 5.)  As previously discussed, Solan is collaterally estopped from relying
10 on this Order in the present action.  (*See* Section I.A, above.)  Defendants note, however,
11 that although this Court followed the reasoning in *Tamara* to require ASH to conduct a
12 particularized assessment of Solan's request, the Court also expressly declined to
13 mandate that Foxy be allowed to live with him at the Forensic Hospital.  (CV-20-02209,
14 Doc. 84 at 15-18.)  Defendants having performed painstakingly the particularized
15 assessment that this Court ordered, and Solan having failed to timely object to that
16 assessment before agreeing to dismiss CV-20-02209 with prejudice, the Court's March
17 22, 2022, Order in the previous action provides no support for mandating that Foxy's
18 clone, which Solan has not even shown is a service animal, to accompany him at ASH
19 during the pendency of this action.

20       **C.**     **Solan's Argument that Foxy's Clone Is a Therapy Animal Who Should
21            Be Allowed to Visit the Forensic Hospital Does Not Support his Claim
              that She Is a Service Animal Who Must Be Allowed to Reside with Him
22            There.**

23       Solan devotes a significant portion of his Motion to complaining that ASH is not
24 (1) providing him with Animal-Assisted Therapy ("AAT") as required under his
25 Individualized Treatment and Discharge Plan ("ITDP" or "Plan"); or (2) allowing Foxy's
26 clone to "provid[e] AAT services to all the forensic patients at ASH." (Doc. 17 at 3-4,
27 16.)  Solan has not raised either of these claims in his operative First Amended
28 Complaint.  (Doc. 6.)  Moreover, both of them are at odds with his demand for relief in

this Motion, which is predicated on the assumption that Foxy's clone is a service animal (not a therapy dog) who has been individually trained to perform tasks or work for Solan specifically.

First, while in the summer of 2021, Solan succeeded through litigation in having "ASH animal services therapy, along with an explanation of its availability or unavailability at this time," added to his ITDP, he failed to have "the issue of a 'personal service dog,'" which at the time was "under litigation" in CV-20-02209, added to the Plan. (Doc. 17 at 60-61.) Accordingly, the administrative law judge clearly distinguished between "ASH animal services therapy" on the one hand and Solan's "personal service dog" on the other. The former would be appropriate when it became available; the second expressly would not be required.

Second, despite Solan's assertion that "ASH has a therapy dog they are refusing to utilize," Foxy's clone and her "interim caretaker, Joseph Cowsert" were not qualified to provide AAT as that term is defined in ASH's Animal Assisted Activities & Animal Assisted Therapy policy ("the Policy"). (Doc. 17 at 3, 117.) According to the Policy, "AAT is directed and/or delivered by a health/human service professional with specialized expertise, and within the scope of practice of his/her profession." (*Id.* at 117.) Solan has not alleged that Cowsert is a health or human services professional with specialized expertise, and Cowsert has not claimed otherwise. Instead, in a February 6, 2025, memorandum to the Director of ASH's Rehab Services, he identified himself as "a manager for the Fox Ranch Company" and offered to provide, with Foxy's clone, "volunteer animal therapy services to the patients of [ASH's] forensic campus." (Doc. 17, at 70.) In other words, he is offering to provide Animal-Assisted Activity ("AAA") as that term is defined in the Policy, not AAT. Specifically, "AAA provides opportunities for motivational, educational, recreational and/or therapeutic benefits to enhance quality of life. AAA is delivered in a variety of environments by specially trained professional, paraprofessionals, and/or *volunteers*, in association with animals that meet specific criteria." (*Id.* at 117 [emphasis added].) In short, Solan fails not only

to establish that Foxy's clone is a service animal but also that she and Cowsert are a "Pet Partner Team" qualified to provide AAT under the Policy. (*Id.*)

### III. Solan Has Not Established that Denying This Motion Would Likely Lead to Irreparable Harm, that the Requested Relief Is in the Public Interest or that the Balance of Equities Tips in His Favor.

As discussed above, Solan has failed to establish the threshold element for obtaining the preliminary injunction he seeks, i.e., likelihood of success on the merits of his ADA and Rehab Act claims. Solan has also failed to establish the other elements for obtaining preliminary injunctive relief. He asserts that "[d]eprivation . . . of a service animal is *per se* irreparable harm." (Doc. 17 at 13.) But that assumes that Foxy's clone is a service animal, which he has not established. He also asserts that it is "always in the public interest to prevent the violation of a party's constitutional rights." (*Id.* at 15 (internal quotation omitted.) The rights that he purports to vindicate are statutory, however, not constitutional, and he has failed to establish the likelihood that they have been violated. His balancing of the "minor administrative inconvenience required by law" that Defendants will suffer if Foxy's clone is allowed to live with Solan at the Forensic Hospital, against the "unnecessarily prolonged hospitalization and protracted involvement in the criminal justice system" that he will continue to suffer if she is not, assumes a likelihood of success on the merits of his ADA and Rehab Act claims that he has not established and reflects a fundamental failure to the consequences of his own actions and choices.

### Conclusion

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction. (Doc. 17.)

11

Respectfully submitted this 18th day of April, 2025.

Arizona Attorney General's Office

/s/ Ann Hobart
Ann Hobart
Jordan Kendall
Assistant Attorneys General
Attorneys for Defendants

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing this 18th day of April, 2025.

COPY emailed this 18th day and mailed the 21st day of April, 2025, to:

Matthew P. Solan
c/o Arizona State Hospital
501 N. 24th Street
Phoenix, Arizona 85008-6056
legal@fox-ranch.com
Plaintiff

COPY of the foregoing to be mailed on the 21st day of April, 2025, to:

The Honorable Deborah M. Fine
U.S. District Court, Suite 321
401 W. Washington Street, SPC 15
Phoenix, AZ 85003-2120

/s/      Ann Hobart