Ann Hobart, Bar No. 019129
Jordan Kendall, Bar No. 038647
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone   (602) 542-8347
            (602) 542-7687
Facsimile   (602) 542-7644
Ann.Hobart@azag.gov
Jordan.Kendall@azag.gov
EmploymentLaw@azag.gov

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Phillip Solan,<br><br>  Plaintiff,<br><br>  vs.<br><br>The State of Arizona, *et al.*,<br><br>  Defendants. | Case No: CV-24-02061-JJT-DMF<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT (DOC. 15)** |

Defendants the State of Arizona, Michael R. Sheldon, Aaron Bowen, Lea'cher Carter, and Unique Coleman hereby reply in support of their Motion to Dismiss Counts One, Four, Eleven, and Twelve of the First Amended Complaint ("MTD"). (Doc. 15.) Plaintiff has failed to state a claim upon which relief can be granted against the State under Title II of the Americans with Disabilities Act ("ADA") (Count One); against the State under Section 504 of the Rehabilitation Act ("Rehab Act") (Count Four); against Defendants Sheldon, Bowen, Carter, and Coleman on a false light invasion of privacy theory (Count Eleven); and/or for defamation against Defendants Sheldon and Bowen (Count Twelve).

I.   **Solan Has Failed to State a Claim that Denying His Request for Foxy's Clone to Live with Him at ASH Violates the ADA and the Rehab Act.**

   A.   **Issue Preclusion Bars Solan's Argument that ASH's 2022 Particularized Assessment Is Invalid Because It Did Not Comply with the Court's Order in CV-20-02209.**

According to Solan, Defendants cannot rely on the 2022 particularized assessment relating to Foxy to exclude her clone from ASH in 2025 because, he argues, the assessment did not comply with the Court's order in CV-20-02209. (Doc. 24 at 12 [asserting that "[n]either Bowen's 2022 assessment letter, nor Sheldon's 2024 denial letter meet the requirements set by the Court" in the prior case].) The issue preclusion doctrine bars this argument, however, because Solan explicitly requested that this Court dismiss CV-20-02209 with prejudice, and this Court granted that request. (CV-20-02209, Docs. 94 & 95.)

"The effect of a dismissal with prejudice is that it acts as a final judgment and cannot be revived or relitigated absent extraordinary circumstances" not present in this case. *Newlin v Idaho Dep't of Health & Welfare,* 2025 WL 622197, *2 (D. Idaho Feb. 26, 2025) (citing *Zapata v. New York*, 502 U.S. 181, 185 (1991) ("A dismissal with prejudice terminates the action and precludes further litigation on the merits."); *Hells Canyon Pres. Council v. United States Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005) ("Final judgment on the merits is synonymous with dismissal with prejudice.") (cleaned up).") "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). "Under federal common law, the elements of issue preclusion are: (1) there was a full and fair opportunity to litigate the issue in the previous action, (2) the issue was actually litigated in that action, (3) the issue was lost as a result of a final judgment in that action, and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action." *In re Van Damme*, 651 B.R. 791, 808 (D. Nev. 2022).

Each of the elements of issue preclusion is satisfied here. One, Solan had a full and fair opportunity to litigate and, two, did litigate, whether Foxy's exclusion from ASH violated the ADA.[1] After granting Solan's motion for preliminary injunction and ordering ASH to conduct a particularized assessment relating to Foxy, the Court even advised Solan that he could "again move for preliminary injunctive relief," if he was "again dissatisfied" with the outcome of that that assessment. (CV-20-02209, Doc. 84, at 16.) Three, despite the Court's invitation, Solan did not challenge ASH's compliance with the Court's preliminary injunction Order while CV-20-02209 was pending, and he lost the issue when he voluntarily stipulated to dismiss his prior case with prejudice. Four, Solan was the Plaintiff in CV-20-02209 and is the Plaintiff in the present case. Accordingly, Solan is collaterally estopped from arguing in this action that the 2022 particularized assessment is invalid because it did not comply with the preliminary injunction Order in CV-20-02209.

      **B.**    **Even If Issue Preclusion Did Not Bar Solan's Reliance on the Court's Order in CV-20-02209, the Order Does Not Support His Untimely Challenge to the 2022 Particularized Assessment.**

The Order in CV-20-02209 on which Solan relies was a ruling on his Motion for Preliminary Injunction, which sought a broad order directing ASH "to admit service dogs into the hospital unless and until it proves by substantial evidence that a particular dog poses a 'direct threat' to the health and safety of others that cannot be mitigated." (CV-20-02209, Doc. 24 at 16.) The Court found that Solan was entitled to a preliminary injunction, but not to the one he asked for. (*Id.*, Doc. 84 at 15-16.) Instead, the Court ordered ASH to "conduct a particularized assessment of [Solan's] request to have Foxy accompany him at the Forensic Hospital in accordance with the ADA and the relevant Code of Federal Regulations" and to provide Solan a written report containing a "detailed discussion" of the ordered assessment. (*Id.* at 16.) The Court also clarified that

---

[1] Solan "concurs that there is no significant difference in the analysis of rights and obligations created by Title II of the ADA and Section 504 of the [Rehab Act]." (Doc. 24 at 15.)

3

1  "[n]othing in this order should be construed to imply that Foxy must be allowed to
2  accompany Plaintiff at the Forensic Hospital." (*Id.*)  Regardless of this explicit
3  disclaimer, in response to the MTD, Solan cited the Court's discussion of perceived
4  deficiencies in ASH's response to Solan's motion for preliminary injunction in CV-20-
5  02209 to argue that the Court has already decided that Defendants did not cure those
6  deficiencies in the report of the particularized assessment.  (Doc. 24 at 9 & 11.)  This
7  argument defies logic and the facts.

8        Under Title II, "[a] public entity is not responsible for the care or supervision of a
9  service animal." 28 C.F.R. § 35-136(e).  In ruling on Solan's motion for preliminary
10 injunction in CV-20-02209, however, the Court accepted his argument that any
11 assistance that ASH staff would need to provide in caring for and supervising Foxy
12 "would be, at most, a minor inconvenience for Defendant, and would not amount to *de*
13 *facto* responsibility for [her]." (CV-20-02209, Doc. 84 at 9 [citing Doc. 40 at 3].)
14 Defendants disagree with the premise that a public entity like ASH is responsible in any
15 way for the care and supervision of a service animal, regardless of the level of
16 inconvenience it may entail.  Moreover, the 2022 particularized assessment report
17 discusses in granular detail how involved ASH staff would have to be in feeding,
18 toileting, and exercising Foxy (or, for that matter, her clone) should she be allowed to
19 live with Solan at ASH, and asserts specifically that 28 C.F.R. § 35-136(e) does not
20 require them to take on those additional responsibilities.  (Doc. 6 at 66-67.)  Solan did
21 not contest these findings and conclusions before voluntarily dismissing CV-20-02209
22 with prejudice.  In response to the MTD, Solan did not even acknowledge that the
23 particularized assessment report went beyond Defendant's response to his motion for
24 preliminary injunction in CV-20-02209, which the Court had found deficient.  (Doc. 24
25 at 10 [falsely asserting that "[t]he State has not raised any new arguments as to why [he]
26 'could not care for [Foxy's] daily needs without substantial assistance from ASH
27
28

staff'")[2]].) Solan's failure to rebut ASH's conclusion that he could not be wholly responsible for Foxy's (or Foxy's clone's) care and supervision while he resides at the Forensic Hospital is fatal to his claims under the ADA and the Rehab Act.

      **C.**      **Even If Issue Preclusion Did Not Bar Solan's Remaining Arguments Against the 2022 Particularized Assessment, Those Arguments Are Not Persuasive.**

      ***Foxy or her clone is not medically necessary and counter-therapeutic for Solan.*** Title II requires that a public entity "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 130(b)(7)(i). Generally, Title II requires a public entity to "modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 136(a). However, based on the opinion of Solan's treating psychiatrist at the time of the particularized assessment (Dr. Stephen Morris, M.D.), Defendants do not believe that Foxy was (or her clone is) medically necessary for Solan to participate in and benefit from the Forensic Hospital's services, programs, and activities. (Doc. 6 at 65; Doc. 15 at 6.) On the contrary, Defendants believe that Foxy's (or her clone's) presence would be counter-therapeutic for Solan. (Doc. 6 at 65-66; Doc. 15 at 6-7.)

      Solan's response to this is that is that Dr. Morris hasn't been his psychiatrist since 2023 and that his "current psychiatric providers consider Foxy one of his primary strengths." (Doc. 24 at 6.) This is misleading. What Solan's current Individualized Treatment and Discharge Plan ("ITDP") actually says is that Solan himself considers that

---

[2] Equally illogically, Solan argues that, in ordering ASH to conduct the particularized assessment, the Court also dismissed as "nonsense" ASH's conclusion (following the particularized assessment) that modifying ASH policies to allow staff to care for Foxy would fundamentally alter the nature of the Forensic Hospital's services. (Doc. 24 at 11-12.) The Court should disregard this manifestly fallacious argument.

1  "his primary support is his 'autism service dog, Foxy.'" (Doc. 17 at 41-44.) The Court
2  ordered that the particularized assessment "be based on reasonable judgment that relies
3  on current medical knowledge or the best available objective evidence." (Doc. 84 at 19.)
4  Dr. Morris's opinions provide a reasonable basis for Defendants' conclusion that Foxy
5  (or her clone) is not medically necessary for Solan and that allowing her to live with him
6  at ASH would be counter-therapeutic. Solan's subjective belief to the contrary does not.

### *Foxy could not be tethered at ASH as the ADA requires.*

8  Title II requires that a service animal be under its handler's control. *See* C.F.R.
9  § 35.136(d). Specifically, the law requires that a service animal "shall have a harness,
10 leash, or other tether." (*Id.*) However, as ASH advised Solan after the particularized
11 assessment, tethers are ligature risks that in accordance with ASH policy and Joint
12 Commission regulations cannot be allowed at the Forensic Hospital. (Doc. 6 at 64, 66.)
13 Accordingly, the ADA did not (and does not) require that Foxy (or her clone) be allowed
14 to live with Solan at ASH. (Doc. 15 at 7-8, 13-14.)

15 Solan accuses Defendants of an "egregious misstatement of law" by not citing the
16 qualifications to 28 C.F.R. § 35.136(d)'s tethering requirement. (Doc. 17 at 11.) That is,
17 "A service animal shall have a harness, leash, or other tether, unless either the handler is
18 unable because of a disability to use a harness, leash or other tether, or the use of a
19 harness, leash or other tether would interfere with the service animal's safe, effective
20 performance of work or tasks, in which case the service animal must be otherwise under
21 the handler's control (e.g., voice control, signals or other effective means.)*"* (*Id.* [citing
22 28 C.F.R. § 35.136(d)].) Solan fails to explain, however, why he would be unable to use
23 a tether because of his autism disability or why using a tether would interfere with
24 Foxy's clone's ability to safely and effectively perform work or tasks for Solan.
25 Accordingly, he has failed to suggest why he is qualified for an exception to 28 C.F.R.
26 § 35.136(d)'s tethering requirement.

> ***ASH could not ignore information that Solan's relationship with Foxy was abusive or risked enabling such abuse.***

In ordering the particularized assessment, the Court directed ASH to look at what health and safety issues might arise from Foxy joining Solan in his then-current housing arrangement (as opposed to what it had been when he filed his preliminary injunction motion). (CV-20-02209, Doc. 84 at 16, 19.) While the Court focused (as Defendant's counsel had in responding to Solan's motion) on the disruption that Foxy's presence might cause to other patients' health and safety, the particularized assessment disclosed objective evidence that indicating Solan's relationship with Foxy was itself unhealthy, i.e., sexualized. (Doc. 6 at 68-69; Doc 15 at 11-14.) Accordingly, Bowen advised Solan that ASH could not "risk that allowing Foxy to reside at the Forensic Hospital would enable [Solan] to abuse her in the private room on the Cottonwood Unit that ASH ha[d] provided [Solan] at [his] request. Animal abuse is a criminal act and ASH will not facilitate such crimes." (Doc. 6 a 69.)

Solan attempts to discredit the multiple progress notes and incident reports that ASH cited in its particularized assessment report by saying that they were written by Behavioral Health Specialists ("BHT"s) who he claims are not "medical professionals" and, therefore, not qualified to make such observations. (Doc. 24 at 18.) That argument is belied by the BHT job description that Solan attaches to his response to the MTD, which lists "Completing all progress notes and reports to the nurse on unusual incidents/events," "Reporting all unusual incidents as required," and "Observing, reporting and documenting patient psychiatric and medical problems," among a BHT's "Job Duties." (Doc. 24 at 47.) ASH's concerns that allowing Foxy (or her clone) to live with Solan at ASH could enable animal abuse are not speculative or, as Solan alleges, "fantastical." (*Id.* at 18.) The BHTs' notes and reports provide reliable, objective evidence of a significant risk that such abuse might occur.

For all of these reasons, Count One and Count Four should be dismissed because Solan has failed to state a claim that, by denying his request to have Foxy or her clone to live with him at ASH, Defendants violated the ADA or the Rehab Act.

## II. Solan Failed to State a Claim for False Light Invasion of Privacy Against Bowen, Sheldon, Carter, or Coleman.

Solan failed to state a claim for false light invasion of privacy because the statements he alleges placed him in a false light were not publicized. Solan's Amended Complaint and his response to the MTD do not allege that anyone actually heard the statements that Carter and Coleman are alleged to have made. (Doc. 6 at 26, ¶¶ 137-138; Doc. 24 at 16.) Solan's response alleges that the ASH is an echo-chamber for gossip but does not allege that any patients actually overheard Carter and Coleman insult him. (Doc. 24 at 16.) Even if he had alleged that others heard the alleged insults, it "is not an invasion of the right of privacy ... to communicate a fact concerning the plaintiff's private life to … a small group of persons." *See Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 854 (Ariz. Ct. App. 1997). Illustrating what constitutes publicity, the court in *Hart* explained that "any publication in a newspaper or magazine, even of small circulation, ... or statement made in an address to a large audience, is sufficient" *Id.* However, "the mere fact that some interested parties may have heard rumors from sources other than [Solan]… is, without more, insufficient to meet the level of publicity required for a false light claim." *Id.* at 855. Again, Solan has not alleged that anyone heard Carter and Coleman allegedly insult him. He has not alleged that they publicized the alleged insults to a large audience, in a newspaper, or in a magazine. And, he has not alleged that other patients are spreading gossip based upon hearing the alleged insults. Accordingly, Solan has failed to state a claim for false light invasion of privacy against Carter and Coleman.

Solan's false light claim against Sheldon likewise fails because Solan has not alleged that Sheldon publicized the letter denying Solan's request regarding Foxy's clone or caused it to be publicized. The denial letter was sent to Solan and ASH's

attorney, which does not meet the level of publicity required for a false light claim. (Doc. 6 at 86.)

Solan's false light claim against Bowen is time-barred. Solan argues that because the court did not immediately screen his false light claim against Bowen, it need not be timely. (Doc. 24 at 16.) This is incorrect. Solan's claim is untimely, and he has not pleaded any facts that would toll the statute of limitations. His false light claim further fails because he has not alleged that Bowen publicized the particularized assessment report. Even assuming, as Solan argues, that the particularized assessment report was sometime shared among some office staff, this would not meet the publicity requirement because "the mere fact that some interested parties may have heard rumors from sources other than [Solan]… [does not] meet the level of publicity required for a false light claim." *Hart*, 947 P.2d at 854. Accordingly, Count Eleven should be dismissed because Solan has failed to state a claim for false light invasion of privacy.

### III. Solan Failed to State a Claim for Defamation against Bowen or Sheldon

Count Twelve should be dismissed because Solan failed to state a claim for defamation against Bowen or Sheldon.[3] Defamation requires: (1) a false statement; (2) published to a third party; where (3) the defendant (a) knew the statement was false and defamatory or (b) recklessly disregarded or negligently failed to ascertain the truth or defamatory nature of the statement. *ZombieBox Int'l Inc. v. Generac Power Sys. Inc.*, 721 F. Supp. 3d 798, 804 (D. Ariz. 2024). Neither Bowen or Sheldon published a false statement or a statement that they knew to be false and defamatory. The particularized assessment letter and the denial letter each relied upon statements that Solan made to the professionals that provide his treatment—and it is not reckless or negligent to trust what a patient tells his treatment providers on multiple occasions. Consequently, Solan cannot now argue that Bowen and Sheldon should not trust what he says or rely upon what he

---

[3] Additionally, Solan's defamation claim against Bowen is time-barred as argued in the MTD. (Doc. 15 at 17.)

9

has told his treatment providers. Nor can Solan claim that documenting and restating, in letters addressed to him, what he has expressed about Foxy constitutes defamation. As such, Solan has not alleged that Bowen or Sheldon knowingly, recklessly, or negligently made a false statement about him. Accordingly, Count Twelve should be dismissed because Solan has failed to state a claim for defamation.

## Conclusion

For the foregoing reasons as well as those discussed in the Motion to Dismiss First Amended Complaint (doc. 15), Defendants respectfully request that the Court grant the Motion and dismiss the Complaint in its entirety.

Respectfully submitted this 24th day of April, 2025.

Arizona Attorney General's Office

/s/ Ann Hobart
Ann Hobart
Jordan Kendall
Assistant Attorney General
Attorneys for Defendants

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing this 24th day of April, 2025.

COPY emailed this 24th day of April and mailed the 25th day of April , 2025, to:

Matthew P. Solan
c/o Arizona State Hospital
501 N. 24th Street
Phoenix, Arizona 85008-6056
legal@fox-ranch.com
Plaintiff

COPY of the foregoing mailed the 25th day of April, 2025, to:

The Honorable Deborah M. Fine
U.S. District Court, Suite 321
401 W. Washington Street, SPC 15
Phoenix, AZ 85003-2120

/s/Ann Hobart

10