# EXHIBIT Z

Ann Hobart, Bar No. 019129
Jordan Kendall, Bar No. 038647
Assistant Attorneys General
Arizona Attorney General's Office
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-8347
(602) 542-7687
Facsimile: (602) 542-7644
Ann.Hobart@azag.gov
Jordan.Kendall@azag.gov
EmploymentLaw@azag.gov

Attorneys for Defendants State of Arizona,
Michael R. Sheldon, Aaron Bowen,
Lea'cher Carter, and Unique Coleman

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Matthew Phillip Solan,<br><br>Plaintiff,<br><br>vs.<br><br>The State of Arizona; Jennifer L. Cunico; Michael R. Sheldon; Aaron Bowen, Calvin J. Flowers; Steven Kwoh; Kindra Ochoa, Lea'cher Carter, Unique Coleman; John Does 1-100; Jane Does 1-100; Black Corporations 1-10; and White Entities 1-10,<br><br>Defendants. | Case No: CV24-02061-JJT-DMF<br><br>**ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT AARON BOWEN** |

Defendant Aaron Bowen, through counsel undersigned, answers Plaintiff's First Set of Interrogatories to Defendant Aaron Bowen as follows.

**Interrogatory Number 1:** At the time you issued the Particularized Assessment Letter, what was the assessed duration and severity of the purported risk that the [sic] you relied on to conclude that Plaintiff was at risk of having sexual relations with Foxy I, if she were admitted to live at ASH with Plaintiff as his service animal under the ADA?

**ANSWER: Bowen was not required to conduct a separate assessment to determine the severity of the risk that Solan would engage in sexual conduct with his dog, Foxy. That said, it is Solan's statements, recorded in treatment notes, progress notes, and incident reports, that indicate there is a risk that he would engage in sexual conduct with Foxy if provided the chance to do so. See also DF588-DF595.**

**Interrogatory Number 2:** When you determined that ASH could not accommodate Foxy I, what reasonable modifications to ASH's policies practices, or procedures, or provision of auxiliary aids or services did the [sic] you consider to mitigate the purported risk of abuse to Foxy I by the Plaintiff, at the time the Particularized Assessment Letter, that the [sic] you determined would be inadequate to effectively mitigate such risk, and on what basis did the [sic] you determine such modifications, aids, or services would be inadequate to mitigate the purported risk?

**ANSWER: Bowen objects to this interrogatory as far as it implies that Solan's dog, Foxy, could receive any accommodation or that he determined whether to accommodate a dog or not. Bowen, and the ASH generally, are not required to accommodate a dog and had no grounds to do so.**

**Interrogatory Number 3:** What current medical or other objective evidence was reviewed, prior to issuing the Particularized Assessment Letter, to determine the nature, duration, and severity of the purported risk that the Plaintiff would have sexual relations with Foxy I if she were admitted to ASH, the probability that such sexual contact would actually occur, and whether and what reasonable modifications of policies practices, or procedures or the provision of auxiliary aids or services might mitigate any risk of abuse?

**ANSWER: Bowen was not required to conduct a separate assessment to determine the severity of the risk that Solan would engage in sexual conduct with his dog, Foxy. That said, Solan's statements, recorded in treatment notes, progress notes, and incident reports were reviewed and indicated that there is a risk that**

**Solan would engage in sexual conduct with Foxy if provided the chance to do so. This risk, however, is completely mitigated through the ASH's exclusion of Foxy. See also DF588-DF595.**

**Interrogatory Number 4:** When the [sic] you determined that accommodating Foxy I would result in a fundamental alteration to the nature of the services provided by ASH, what reasonable modifications or policies practices, or procedures, or auxiliary aids or services did the [sic] you consider as possible means of mitigating the purported fundamental alteration, and how, and on what basis did the [sic] you determine that the resources available for the use of funding and operating the services, programs, and/or activities of ASH were inadequate to make such modifications or provide such auxiliary aids or services?

**ANSWER: Bowen objects to this interrogatory as far as it implies that Solan's dog, Foxy, could receive any accommodation or that he determined whether to accommodate a dog or not. Bowen, and the ASH generally, are not required to accommodate a dog and had no grounds to do so.**

**Interrogatory Number 5:** Describe all information and Records you provided to ASH's current CEO, Michael R. Sheldon pertaining to Plaintiff, Foxy I, and/or Foxy II, and the approximate dates on which the information and/or Records were so conveyed.

**ANSWER: Defendant Sheldon was on the administration team before he became the ASH's current CEO. The administrative team met frequently and Sheldon was aware of everything pertaining to Solan and his dog, Foxy. Nevertheless, upon becoming the ASH CEO, Sheldon received a copy of Bowen's computer drive and all the files it contained.**

**Interrogatory Number 6:** On what dates did the Plaintiff engage in Animal Assisted Therapy or Animal Assisted Activities at ASH, and what was the therapeutic outcome for the Plaintiff in each of those animal-human interactions? Describe the animal(s) with whom the therapy and/or activities were conducted, and the level of contact the Plaintiff had with such animal(s).

**ANSWER: Bowen lacks the information or knowledge necessary to respond to this interrogatory. As far as a further response is required, Bowen does not believe Solan participated in animal assisted therapy or animal assisted activities at the ASH while Bowen was CEO.**

**Interrogatory Number 7:** On what basis did you determine that accommodating a food visit, animal therapy session, or other visitation between Plaintiff and Foxy I would fundamentally alter the nature of ASH's programs, services, or activities, pose a direct threat to any individual, or otherwise result in a situation by which you could lawfully deny Plaintiff's request to have a food visit with Foxy I?

**ANSWER: Animals are not allowed to visit patients at the ASH. There does not need to be a fundamental alteration or pose a direct threat to deny animals from visiting the ASH.**

**Interrogatory Number 8:** When you made the decision to exclude Foxy I from ASH, what direct threat did you determine Foxy I specifically, as opposed to service dogs generically, posed to the patients and staff on Plaintiff's treatment unit, and what evidence did the ASH Administration rely on to make that conclusion?

**ANSWER: The ASH was not required to identify a direct threat that Solan's dog, Foxy, would pose. The ASH's Particularized Assessment explained the grounds upon which Solan's request to have his dog, Foxy, live with him must be denied. Those reasons include: (1) Even if Foxy qualified as a service animal, she is not medically necessary; (2) Even if Foxy qualified as a service animal, she would be required to be on a tether and that would be a ligature risk not allowed at the ASH; (3) Even if Foxy qualified as a service animal, Solan could not be solely responsible for her and would require significant support from ASH staff; (4) Foxy requires medication that cannot be stored or administered at the ASH per federal and state regulation; (5) Even if Foxy qualified as a service animal, admitting her would fundamentally alter the nature of the ASH; and (6) ASH cannot ignore**

**Solan's statements indicating a risk that he would commit animal abuse. Please see DF146-DF149 and DF588-DF595.**

**Interrogatory Number 9:** How many empty beds, and how many and [sic] single-patient bedrooms were there at ASH's Community Reintegration Unit in April of 2022?

**ANSWER: Bowen objects to this interrogatory on the grounds that it is irrelevant to this litigation. Moreover, Bowen lacks information or knowledge to answer this interrogatory. Subject to these objections, Bowen states that patients must receive Court approval before they can be housed on ASH's Community Reintegration Unit ("CRU"). Furthermore, those patients that receive approval are well-behaved, participate in treatment programs, and earn the privilege to live on a less restrictive unit—Solan does not match the characteristics of a patient in the CRU.**

**Interrogatory Number 10:** Approximately how many hours a day did patients at ASH's Community Reintegration Unit have access to the secured outdoor area surrounding the Community Reintegration Unit building with, and without a staff escort, in April of 2022?

**ANSWER: Bowen objects to this interrogatory on the grounds that it is irrelevant to this litigation. Moreover, Bowen lacks information or knowledge to answer this interrogatory. Subject to these objections, Bowen states that patients must receive Court approval before they can be housed on ASH's CRU. Furthermore, those patients that receive approval are well-behaved, participate in treatment programs, and earn the privilege to live on a less restrictive unit—Solan does not match the characteristics of a patient in the CRU.**

Respectfully submitted this 20th day of January, 2026.

Arizona Attorney General's Office

/s/ Jordan Kendall
Ann Hobart
Jordan Kendall
Assistant Attorneys General
Attorneys for Defendants

EMAILED and MAILED
this 20th day of January, 2026, to:

Matthew P. Solan
c/o Arizona State Hospital
501 N. 24th Street
Phoenix, Arizona 85008-6056
legal@fox-ranch.com
Plaintiff

/s/ Jordan Kendall

**VERIFICATION**

I, Aaron Bowen, hereby declare under penalty of perjury that I am a Defendant and a former employee of the State of Arizona Department of Health Services, that I have reviewed Defendant Aaron Bowen's Answers to Plaintiff Matthew Solan's First Set of Interrogatories to Defendant Aaron Bowen mailed on December 17, 2025, and that the information contained therein is true and accurate to the best of my information, knowledge, and belief.

| | |
|---|---|
| 01/20/2026 | |
| Date | Aaron Bowen |

# EXHIBIT AA

Ann Hobart, Bar No. 019129
Jordan Kendall, Bar No. 038647
Assistant Attorneys General
Arizona Attorney General's Office
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-8347
(602) 542-7687
Facsimile: (602) 542-7644
Ann.Hobart@azag.gov
Jordan.Kendall@azag.gov
EmploymentLaw@azag.gov

Attorneys for Defendants State of Arizona,
Michael R. Sheldon, Aaron Bowen,
Lea'cher Carter, and Unique Coleman

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Matthew Phillip Solan,

Plaintiff,

vs.

The State of Arizona; Jennifer L. Cunico; Michael R. Sheldon; Aaron Bowen, Calvin J. Flowers; Steven Kwoh; Kindra Ochoa, Lea'cher Carter, Unique Coleman; John Does 1-100; Jane Does 1-100; Black Corporations 1-10; and White Entities 1-10,

Defendants.

Case No: CV24-02061-JJT-DMF

**RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT MICHAEL R. SHELDON**

Defendant Michael R. Sheldon, through counsel undersigned, responds to Plaintiff's First Request for Admissions to Defendant Michael R. Sheldon as follows.

**Request for Admission No. 1:** After you became CEO of ASH, and before the ASH Administration issued the Denial Letter, you did not conduct, nor did you direct the ASH Administration to conduct an investigation of the conclusions asserted by Aaron Bowen

in his Particularized Assessment Letter, including, but not limited to conducting a review of Plaintiff's patient charts at ASH.

☒ Admit ☐ Deny

**Sheldon was the Chief Operating Officer at the ASH when the Particularized Assessment was conducted and aware of the facts and information supporting its conclusions. Sheldon is, and was aware, of Solan's treatment notes, progress notes, and the incident reports pertaining to Solan. There is and was no reason to investigate the conclusions of the Particularized Assessment.**

**Request for Admission No. 2:** The security camera recordings from the ASH Cottonwood day room and dining area, converting [sic] May 22, 2024, were Altered by an ASH Employee.

☐ Admit ☒ Deny

**The security camera footage at ASH is retained or recoverable for up to about 90 days. After that time, the footage is automatically overwritten by new recordings. If a complaint or an incident occurs at ASH and is reported to administration, then the recordings relevant to the complaint or incident are set aside and saved from automatic deletion.**

**Request for Admission No. 3:** To the best of your knowledge, Dr. Stephen Morris never testified or produced any Record stating that he believed Plaintiff's relationship with Foxy I was sexual in nature.

☒ Admit ☐ Deny

**Defendant objects to this request for admission on the grounds that it is vague and ambiguous. Specifically, it is unclear what "never testified or produced any Record" means in this context. Moreover, Defendant is unable to admit or deny what another person did or may have done. That said, Plaintiff's treatment notes, progress notes, and incident reports regarding Plaintiff indicate there may have been an inappropriate relationship between Plaintiff and Foxy and that there may**

**be a risk of future abuse. Please also see Defendants' Disclosures including DF441-DF445 and DF448-DF482.**

**Request for Admission No. 4:** To the best of your knowledge, none of the licensed providers, who presently or previously served as members of Plaintiff's treatment team, testified or produced any Record prior to June 14, 2025, stating or implying that they the [sic] Plaintiff's relationship with Foxy I or Foxy II was sexual in nature.

☒ Admit ☐ Deny

**Sheldon objects to this request for admission on the grounds that it is vague and ambiguous. ASH employees have not produced a record stating their personal belief as to whether Solan has or desires to engaged in a sexual relationship with Foxy. However, ASH employees have recorded Solan's statements to them in which he refers to Foxy as his wife and discusses the sexual nature of his relationship with her. Please see DF441-DF445 and DF448-DF482.**

**Request for Admission No. 5:** To the best of your knowledge, none of the incident reports or progress notes cited in the Particularized Assessment Letter were interpreted, in writing, by any of the Plaintiff's licensed medical providers, as indicating that the Plaintiff has had, has intended to have, or is at risk of having sexual relations with Foxy I or Foxy II.

☐ Admit ☒ Deny

**Sheldon objects to this request for admission on the grounds that it is vague and ambiguous. It is unclear what "were interpreted, in writing" means. The treatment notes, progress notes, and incident reports regarding Solan indicate there may have been an inappropriate relationship between him and his dog, Foxy, and that there may be a risk of future abuse. The Particularized Assessment contains the result of Dr. Aaron Bowen's, a licensed medical provider and former ASH CEO, review and interpretation of the treatment notes, progress notes, and incident notes pertaining to Solan and Foxy. Please also see Defendants' Disclosures including DF441-DF445, DF448-DF482, and DF578-DF587.**

**Request for Admission No. 6:** Before the Denial Letter was issued, you did not review any evidence that demonstrated an actual risk that the Plaintiff would have sexual relations with Foxy II if she were admitted to live with him at ASH.

☐ Admit ☒ Deny

**Sheldon reviewed the prior Particularized Assessment, Solan's treatment and progress notes, and many incident reports pertaining to Solan before issuing the Denial Letter. Those records indicate that there may have been an inappropriate relationship between Solan and his dog, Foxy, and that there may be a risk of future abuse. Please also see the Particularized Assessment at DF588-DF595 and Defendants' Disclosures including DF441-DF445 and DF448-DF482.**

**Request for Admission No. 7:** You prohibited the Plaintiff from having a food visit with Foxy II on July 17, 2024, without conducting any individualized assessment to determine if the Plaintiff visiting with Foxy II for a food visit would pose any risk to the Plaintiff, to Foxy II, or to any other person, or would fundamentally alter the nature of ASH's services.

☒ Admit ☐ Deny

**Defendant objects to this request on the basis that it is irrelevant and outside the scope of this litigation. Whether a person or an animal is authorized to visit the ASH is not relevant to the issues in this litigation and an individualized assessment is not necessary to deny visitation.**

**Request for Admission No. 8:** ASH was, as of September, 2023, unable to meet the developmental-disability related needs of patients with a primary diagnosis of Autism Spectrum Disorder.

☐ Admit ☒ Deny

**The ASH has been equipped to treat patients with Autism for decades including the times up and around September 2023. The ASH continues to be able to meet the needs of patients with Autism. The ASH employs many qualified providers including psychiatrists, psychologists, nurses, and masters-level**

**therapists who can provide treatment to patients with Autism. Solan, however, continually refuses to receive and participate in treatment.**

**Request for Admission No. 9:** ASH is presently unable to meet the developmental-disability related needs of patients with a primary diagnosis of Autism Spectrum Disorder.

☐ Admit ☒ Deny

**The ASH is able to meet the needs of patients with Autism. The ASH employs many qualified providers including psychiatrists, psychologists, nurses, and masters-level therapists who can treat patients with Autism. That said, Solan is not a patient at the ASH because of an Autism diagnosis—he is a patient because of his other disorders that rendered him guilty except insane. Nevertheless, the ASH seeks to provide treatment for Solan's Autism but he continually refuses to receive and participate in that treatment.**

Respectfully submitted this 20th day of January, 2026.

Arizona Attorney General's Office

/s/ Jordan Kendall
Ann Hobart
Jordan Kendall
Assistant Attorneys General
Attorneys for Defendants

EMAILED and MAILED
this 20th day of January, 2026, to:

Matthew P. Solan
c/o Arizona State Hospital
501 N. 24th Street
Phoenix, Arizona 85008-6056
legal@fox-ranch.com
Plaintiff

/s/ Jordan Kendall

# EXHIBIT BB

Ann Hobart, Bar No. 019129
Jordan Kendall, Bar No. 038647
Assistant Attorneys General
Arizona Attorney General's Office
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-8347
(602) 542-7687
Facsimile: (602) 542-7644
Ann.Hobart@azag.gov
Jordan.Kendall@azag.gov
EmploymentLaw@azag.gov

Attorneys for Defendants State of Arizona,
Michael R. Sheldon, Aaron Bowen,
Lea'cher Carter, and Unique Coleman

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Matthew Phillip Solan,<br><br>Plaintiff,<br><br>vs.<br><br>The State of Arizona; Jennifer L. Cunico; Michael R. Sheldon; Aaron Bowen, Calvin J. Flowers; Steven Kwoh; Kindra Ochoa, Lea'cher Carter, Unique Coleman; John Does 1-100; Jane Does 1-100; Black Corporations 1-10; and White Entities 1-10,<br><br>Defendants. | Case No: CV24-02061-JJT-DMF<br><br>**RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT STATE OF ARIZONA** |

Defendant State of Arizona, through counsel undersigned, responds to Plaintiff's First Request for Admissions to Defendant State of Arizona as follows.

**Request for Admission No. 1:** Between June 12, 2024 and July 6, 2024, the State did not conduct a Particularized Assessment of Plaintiff's request to be accompanied by Foxy II at ASH.

☐ Admit ☒ Deny

**Defendant states that it assessed Solan's request to have his dog accompany him at the Arizona State Hospital ("ASH") and determined, for many of the same reasons previously articulated to Solan in the Particularized Assessment, it could not permit entrance to Solan's dog. Please see the Particularized Assessment at DF588-DF595 and Denial Letter at DF2626 for further information.**

**Request for Admission No. 2:** All or most of the security camera recordings from the ASH Cottonwood day room and dining area, for May 22, 2024, were Altered by one or more ASH Employees.

☐ Admit ☒ Deny

**The security camera footage at ASH is retained or recoverable for up to about 90 days. After that time, the footage is automatically overwritten by new recordings. If a complaint or an incident occurs at ASH and is reported to administration, then the recordings relevant to the complaint or incident are set aside and saved from automatic deletion.**

**Request for Admission No. 3:** Dr. Stephen Morris never testified in any proceeding, or documented in Plaintiff's medical record, or in any other communications to any other ASH staff member that he believed Plaintiff's relationship with Foxy I was sexual in nature.

☒ Admit ☐ Deny

**Dr. Morris focused his efforts on providing treatment to Solan. However, Solan's treatment notes, progress notes, and incidents regarding him, indicate that there may have been an inappropriate relationship between him and his dog Foxy. They likewise indicate that there may be a risk of Solan abusing Foxy in the future. Please see DF441-DF445 and DF448-DF482.**

**Request for Admission No. 4:** Between April 1, 2020 and June 14, 2025, none of the licensed providers, who presently or previously served as members of the Plaintiff's treatment team, testified or produced any Record while employed at ASH, stating or

implying that any of them believed Plaintiff's relationship with Foxy I or Foxy II was sexual in nature.

☒ Admit in part ☐ Deny

**Defendant objects to this request for admission on the grounds that it is vague and ambiguous. Defendant's employees have not produced a record stating their personal belief as to whether Solan has or desires to engaged in a sexual relationship with Foxy. However, Defendant's employees have recorded Solan's statements to them in which he refers to Foxy as his wife and discusses the sexual nature of his relationship with her. Please see DF441-DF445 and DF448-DF482.**

**Request for Admission No. 5:** Between April 1, 2020 and July 5, 2024, no member of Plaintiff's ASH treatment team was specially trained to provide treatment of patients with a primary diagnosis of Autism Spectrum Disorder.

☐ Admit ☒ Deny

**The treatment providers at the ASH are licensed, highly educated, and well trained to care for the gambit of patient needs. Specifically, there are psychiatrists, psychologists, masters-level clinicians, registered nurses, and others all capable of treating patients with autism. However, Solan refuses to receive the offered treatment and does not participate in the ASH's multitude of offered services. For example, in Fiscal Year 2025, Solan participated in just 8 hours of rehabilitation treatment while the average forensic patient participated in 254 hours of rehabilitation treatment. Solan's refusal of services is not limited to rehabilitation treatment but extends to all regularly offered services and treatments at the ASH.**

**Request for Admission No. 6:** Between June 12, 2024 and the date of this request, Plaintiff has not received any habilitation services specifically designed to treat Autism Spectrum Disorder.

☐ Admit ☒ Deny

**Moreover, if Solan does not receive treatment it is because he has refused it.**

**Request for Admission No. 7:** Between June 12, 2024 and the date of this request, Plaintiff has not received any trauma therapy for his Post-traumatic stress disorder.

☐ Admit ☒ Deny

**Moreover, if Solan does not receive treatment it is because he has refused it.**

Respectfully submitted this 20th day of January, 2026.

Arizona Attorney General's Office

/s/ Jordan Kendall
Ann Hobart
Jordan Kendall
Assistant Attorneys General
Attorneys for Defendants

EMAILED and MAILED
this 20th day of January, 2026, to:

Matthew P. Solan
c/o Arizona State Hospital
501 N. 24th Street
Phoenix, Arizona 85008-6056
legal@fox-ranch.com
Plaintiff

/s/ Jordan Kendall

# EXHIBIT CC

Date Created: 04/25/2022 at 01:33 PM MST
Form Name: Psychiatric Annual Assessment
Client's Name: SOLAN,MATTHEW (000035310)
Client's DOB: [redacted]

Ex No.: 14
Solan, Matthew
02-04-2026 GL
Jennifer Honn, AZ 50885

Arizona State Hospital
Phoenix, AZ

**Annual Psychiatric Assessment**
Assessment Date: 04/25/2022

Brief Summary of Reason for Admission:

Matthew Solan is 32year old Caucasian male deemed SMI who was admitted from Coconino County Department of Corrections to the Arizona State Hospital on 4/1/2020 after being adjudicated guilty except insane (GEI) for one count of aggravated assault with a presumptive sentence of 7.5 years. His projected discharge date is 09/16/2026. Reports confirm Mr. Solan was on probation at the time of his index offense. Reports also indicate that he had three other felony convictions preceding this offense. Mr. Solan has reportedly been ordered for two years of standard probation, upon release from the Arizona Department of Correction and the AzSH, for a theft of means of transportation.

Hospital Course Since Last Admission/Annual Exam:

On 04/06/21, Mr. Solan was seeing Dr. Walayat who was prescribing carbamazepine 800 mg and melatonin 3 mg HS. He told Dr. Walayat that he was "not attending groups if they don't attend my needs." He also said "I'm suing the doctor for moving me from sago to pinon." He also "fired" his social worker after threatening her with a police report.
04/12/21 - Matthew told his psychologist that he was "tortured" and that staff are "mean and rude." He complained he is not allowed his "service animal."
04/13/21 - He said he didn't like his roommate and wants him removed from his room.
04/23/21 - Matthew took a nursing sheet listing the names and diagnoses and attendings of patients. He threatened to throw out his roommate's possessions into the hallway and called the charge nurse "a bitch and a cunt."
05/03/21 - Pt called staff "cunt and bitch" and "cockroach."
05/04/21 - Pt called staff "public servant" which seems to be his go-to when he wants to upset staff.
05/05/21 - Pt left a voicemail for Jacqueline Bachelier in Quality Control and told her that on 17 May he was arranging a marriage with his dog and that the hospital can't interfere as it's a religious ceremony. He called it a "manumission ceremony, a marriage and a blood covenant."
05/06/21 - The patient continued to not be compliant in attending groups and was often anxious and irritable.
05/12/21 - Matthew was told his special visit for a marriage to his dog with a "blood covenant" was not approved. He demanded to have his lawyer and the Phoenix Police at all his team meetings. He advised Dr. Holmes that he is a

Date Created: 04/25/2022 at 01:33 PM MST
Form Name: Psychiatric Annual Assessment
Client's Name: SOLAN,MATTHEW (000035310)
Client's DOB: [redacted]

Arizona State Hospital
Phoenix, AZ

"party" in a new lawsuit.
06/02/21 - He stated "I'm being abused," and "you are raping me." He was taken out of the morning group and put into locked seclusion after he postured towards staff in a threatening manner calling them "fucking jerk" and "bitch." He accused staff of "raping" him.
06/10/21 - Matthew called the nurse "you fucking cunt ass bitch." "You want problems tonight, you get them bitch." He demanded medication nurse stop dispensing medication to the patient and remove the other nurse. Security was called.
06/12/21 - The patient exploded after demanding that the nurse make him a copy of his driver's license and was told that nursing doesn't do that
06/21/21 - The patient was allowed to make a legal call in the conference room and staff dialed the number. Staff left the room for privacy, but observed Matthew hang up and redial another number. Staff then intervened but Matthew refused to leave the room.
06/24/21 - Matthew called the nurse "stupid," and "you can't speak English." He then called the nurse "a dick," and refused to leave the medication window. He then said the staff and the nurse are "a bunch of retards, and I am going to get them all fired." Peers then started complaining he was holding up the medication line.
06/25/21 - The patient called the Phoenix PD and complained about staff. He called the nurse "ass hole," and "incompetent piece of shit." He threatened that the nurse "will soon be fired and lose his license."
06/29/21 - The patient told the nurse "I'm going to be like this all the time fucking Jew. Go eat some Zyklon B and hide in an oven, I'm going to make you're life a living hell."
06/30/21 - Matthew commenced beating on the nursing station window and was asked to stop, but escalated the banging and a code grey was called. He called a nurse "lizard" and stated "why do you get so mad when I call you lizard or did your daddy call you lizard while raping you."
07/03/21 - Matthew stated "we need to get the nurse Yani fired. I already got them to agree he touched their breasts, and if I can get you to say that too, we can get him fired. He visually molests you anyway so it doesn't matter."
07/07/21 - The patient was asked by staff to strip his bed so the sheets can be washed. He said "go fuck off" and walked away. He followed the social worker around the unit saying "why are you here?" "You are incompetent!" "Can you believe they found someone more incompetent!" "Hey, public servant, what are you doing?" "When will your replacement pick up my B-one's after I get you fired?" "She is a piece of shit."
07/06/21 - The patient was transferred to Dr. Jaffe and Mr. Solan reported he could see some of the capsules of carbamazepine ER in his stool. He was switched to regular carbamazepine and said he felt better.



DF2646

Date Created: 04/25/2022 at 01:33 PM MST
Form Name: Psychiatric Annual Assessment
Client's Name: SOLAN,MATTHEW (000035310)
Client's DOB: [redacted]

Arizona State Hospital
Phoenix, AZ

07/10/21 - Mr. Solan called the Phoenix PD again saying he had been threatened by a peer.
07/12/21 - Mr. Solan said "I'm willing to put myself in a position where somebody will hurt me." He also said he would escalate patients to a level where they will get their levels taken away. "I like upsetting people."
07/13/21 - The patient got the TV remote control from a peer and took out the batteries and tossed the remote across the hallway.
07/16/21 - The patient was moved from Cottonwood (where he was being threatened by a peer) to Pinon by Dr. Morris (awaiting Sago to go off of lockdown for covid-19 where it was expected he would ultimately be moved). The patient went into the nutrition room and took an ice cream and went back to his room. The nurse went to his room and saw him eating dinner in his room and asked him to eat in the dining room. He cussed at the nurse.
07/17/21 - After being asked not to sit on the ping pong table, Matthew said "shut the fuck up nigger." "You're my public servant so go and get me some water."
07/19/21 - Pt tossed his flexi pen cross the room when asked to return it to staff. "I don't have to get up off my fucking ass to give it to you."
07/20/21 - Matthew said "fuck no, I'm not dealing with that bitch." "Take me to pop run now, I'm going to get that nigger. I'm going to make her life a living hell, and I'm going to get her fired." He later said "fuck you nigger, I'm going to get you fired." After continuously calling the staff "nigger," one of Matthew's peers got up out of his chair and said "you're not going to keep saying that word." Matthew then said it again, and the peer punched him in the chest and the face. Staff separated the two and Matthew ran to his room.
07/21/21 - This AM patient yelled racial slurs at staff in front of peer who took offense and got up and punched him in the face when Matthew continued with the "N word." Dr. Morris told him we had just moved him from Cottonwood where a peer wanted to beat him up and now he is again goading a peer to assault him on his new unit. Dr. Morris also discussed how behaviors that worked when you are very young may not work as an adult (repetition compulsion). He agreed to try lorazepam 1 mg tid to see if it would help his temperament. There was also a trial of methylphenidate, but it was also not helpful.
07/27/21 - One peer told Matthew "nobody likes your whining," and another peer told him to "shut your mouth."
07/29/21 - The patient called the Phoenix PD to report that a peer was threatening to hurt him.
07/30/21 - He called the Phoenix PD again to report "staff abuse."
08/04/21 - Matthew used the weighted blanket for the first time last night and said he didn't feel any better today and that the room was too warm to use it. He talked about how he forgets to brush his teeth and complained that he

Date Created: 04/25/2022 at 01:33 PM MST
Form Name: Psychiatric Annual Assessment
Client's Name: SOLAN,MATTHEW (000035310)
Client's DOB: [redacted]

Arizona State Hospital
Phoenix, AZ

wanted more than 4 hours of computer time daily.
08/20/21 - Matthew got on the unit phone and called the Phoenix PD and started screaming "get away, get away" when the staff were 2-3 feet away. He told the Phoenix PD that staff were assaulting him which was clearly not true. A female peer than came up and assaulted him and the staff separated the two.
09/13/21 - He reports he is avoiding stressful situations and that the carbamazepine helps him not be overly responsive to stressful situations. Dr. Morris had staff place a thermometer in his room and noted the room to be 73 degrees at 8 PM, 9 PM and 10 PM.
10/05/21 The patient called peers and staff "nigger" and "public servants" repeatedly.
10/15/21 - Pt refused to meet with individual therapist as he was "busy."
10/18/21 - Pt stated that the computer time and making lawsuits were the number one priority for him in the hospital. He insisted that he didn't call black people names to their faces, but Dr. Morris told him the record says otherwise. He insisted he can't be held responsible for what he does when he loses control and stresses out. Dr. Morris told him that losing control when he is stressed is the very thing he needs to work on in the hospital. He said he was doing better now because he has a single room and is getting better sleep.
10/19/21 - The patient threatened staff saying they will lose their jobs. He said "I will fake an allergic reaction so the nurse will have to come talk to me."
10/26/21 - Matthew threatened the OT therapist Diane with his finger in her face. She stopped the session.
11/01/21 - He said he wanted to replace his individual rehab therapist Diane because he didn't like her. His individual counseling is now twice weekly. He insisted he couldn't use the weighted blanket as his room was too warm, and he says the neoprene vest doesn't seem to help. He said he wanted the toy puppy to take to bed (item not currently available, however).
11/08/21 - He "fired" Diane (rehab therapist) and said he couldn't meet with music therapist Tim if it conflicted with his morning computer time. He is now going out in the AM for morning walk. He remains on carbamazepine 800 mg and melatonin 6 mg HS.
11/29/21 - Pt called the Phoenix PD complaining that he didn't want a roommate.
12/06/21 - Matthew complained about roommate and his lack of canine therapy. He completed the psychological interviews for diagnostic testing. He reports dealing with "trauma" issues in individual therapy. He complains that his roommate wakes him up at night, and he, therefore, gets poor sleep.
12/08/21 - Matthew was overhead agreeing to buy a female peer snacks if she agreed to flirt with his male roommate and get him in trouble by filing for sexual harassment. She agreed to do it in front of a hospital camera, and so

he bought her snacks.
12/09/21 - The patient called the Phoenix PD to report an assault by his peer.
12/15/21 - Matthew reports his roommate snores, and he talked about how he tried to get a female peer to seduce him in front of a camera so he could get him into trouble for sexual harassment. He warned staff in the evening that "there is going to be a problem." He ran screaming to his room and when his roommate tried to go into the room, Matthew yelled at him "get out of my room." He then began calling staff "niggers." In the evening he tossed water into the face of a nurse and tech because he had to wait for a prn medication. He was escorted to the seclusion room.
01/06/22 - Dr. Morris confronted Matthew with his continued use of the "N word" with a peer on 1 January 22. Matthew insisted he didn't remember the event and wouldn't address it.
02/10/22 - Matthew moved to Cottonwood again, but this time the unit is a Phase I unit with Matthew and one other patient being the only non-Phase I patients. He was moved to the high functioning unit because the high functioning patients might provide a role model and also because the high functioning patients would have more to lose if they assaulted him. He "fired" his treatment team, however, in the transfer staffing when his lawyer didn't make the meeting and he insisted he wouldn't stay if his lawyer wasn't there. Dr. Morris told him that leaving was his choice, but the treatment team would go ahead and review his treatment plan even if he wasn't there. He threatened to sue and report Dr. Morris to the Medical Board. The diagnosis was formally changed to:
Narcissistic Personality Disorder
Antisocial Personality Disorder
Autistic Spectrum Disorder
Trichotillomania
03/07/22 - Matthew stated he wanted an advocate to help him fight his legal cases when he already has an attorney.
04/04/22 - He said he "won" his lawsuit against the hospital and will soon be able to have his dog living with him in his single room in the hospital. He reports doing well in his single room as he sleeps better and that he appreciates the higher functioning peers on Cottonwood. He, however, wants to move to CRU (for Phase II and above patients) where it is quieter due to "carpet on the floors."
04/10/22 - Matthew was upset about not being able to go into the multi-purpose room and get "my chocolate" due to the barber cutting hair that day in the same room. He then refused to talk to the nurse because she was black.
04/15/22 - Matthew wanted to go into the computer room, but was told he needed to take his prescribed medication first. Matthew exploded and called staff "a piece of shit." while screaming and disrupting the medication line. He then

Date Created: 04/25/2022 at 01:33 PM MST
Form Name: Psychiatric Annual Assessment
Client's Name: SOLAN,MATTHEW (000035310)
Client's DOB: [redacted]

Arizona State Hospital
Phoenix, AZ

began screaming "I will get you fired you stupid fuck." He then said "take that stupid English you speak and shove it up your ass."
He currently continues to take carbamazepine 800 mg and melatonin 6 mg HS.

Significant medical conditions and laboratory findings:
Mr. Solan presently occasionally has headaches helped by prn sumatriptan but no other current problems. He is on fish oil for hypertriglyceridemia. He also has:
Bilateral hyperopia and astigmatism
GERD
Allergic Rhinitis
Petrous retention cysts within the right maxillary and left sphenoid sinuses
Bilateral infraorbital Haller cells

Labs of Consequence:
07/16/21 CT of head w/o contrast was WNL
02/22/22 Serum Zinc 59.4
03/21/22 Urine Kryptopyrrole Level 7.91 with specific gravity of 1.008 (0 - 10 Is Optimal Kryptopyrrole Level)
04/04/22 Serum Zinc 97.4

Appearance/attitude/behavior:
Mathew has long black hair and wears black clothing with a BMI of 32.42 (obese).

Mood/Affect:
He reports his mood as good and his affect has a broad range and is appropriate to thought content.

Thought process/speech:
His thought process is goal directed and his speech is normal.

Disturbance in Thought Content:
He evidences no delusions and expresses no thought content disturbance, but is focused upon filing lawsuits which he is fairly adept at doing. He is almost constantly asserting that he is a victim of one thing or another while the facts generally reveal him as the bully mistreating others.

Disturbance in Perceptions/Hallucinations:

Date Created: 04/25/2022 at 01:33 PM MST
Form Name: Psychiatric Annual Assessment
Client's Name: SOLAN,MATTHEW (000035310)
Client's DOB: [redacted]

Arizona State Hospital
Phoenix, AZ

He denies all types of perceptual problems.

Presence of Suicidal/Homicidal Ideation:
He denies any suicidal or homicidal ideations.

Insight/Judgment:
He appears to understand that he can't get along with people, but he views it as largely their problem and not his. He says he is here in the forensic psychiatric hospital "because of a plea agreement." His gross objective judgment is good while subjective judgement is deemed poor in actual daily situations. He, for example, will call the Phoenix police to complain that the hospital has given him a roommate that he doesn't like. He also expects people to do what he wants them to do if he threatens to sue them or report them to some authority.

Sensorium/Orientation/Attention:
Matthew is alert and oriented to time , place, person and situation. He makes no errors on the MSQ.

Memory:
He denies any memory problems nowadays, but reports after he was attacked by police a few years ago he had memory problems for a while thereafter. He is able to recall three things immediately and after five minutes.

Calculations:
Doing serial seven subtraction, he made 4 errors in seven subtractions. He asked how he did and I told him he missed a few and he laughed knowingly. He is able to accurately spell the word "world" both forwards and backwards.

General Fund of Knowledge/Information:
His general fund of knowledge is really very good.

Comprehension of Instructions:
He has good comprehension of instructions.

Abstractions/Comparisons:
He is able to do comparisons and simple proverbs.

MMSE score (if applicable): 29

Estimate of Intelligence:
He appears to be above average in intelligence.

Date Created: 04/25/2022 at 01:33 PM MST
Form Name: Psychiatric Annual Assessment
Client's Name: SOLAN,MATTHEW (000035310)
Client's DOB: [redacted]

Arizona State Hospital
Phoenix, AZ

Muscles of facial expression: 0

Lips and Perioral Area: 0

Jaw: 0

Upper (Arms, wrists, hands, and fingers): 0

Lower (Legs, knees, ankles, and toes): 0

Neck, shoulders, and hips: 0

Severity of abnormal movements overall: 0

Incapacitation due to abnormal movements: 0

Patient's awareness of abnormal movements: 0

Current problems with teeth and/or dentures: No

Are dentures usually worn: No

Assets:
Matthew is intelligent, articulate, creative, and has many interests that he follows.

Diagnoses:
Autism Spectrum Disorder
Antisocial Personality Disorder
Narcissistic Personality Disorder
Trichotillomania

Treatment plan goals/strategies for psychiatric services:
LTG #1 is that Matthew will continue to engage in discussion about his psychiatric symptoms, and share one appropriate communication skill he has used with hospital staff. LTG #2 is that Matthew will be willing to participate in opportunities that enhance his social skills to progress to a less restrictive environment and strengthen his community supports.

Justification for continued hospitalization:

Date Created: 04/25/2022 at 01:33 PM MST
Form Name: Psychiatric Annual Assessment
Client's Name: SOLAN,MATTHEW (000035310)
Client's DOB: [redacted]

Arizona State Hospital
Phoenix, AZ

Patient is under the PSRB and is admitted to AzSH for treatment after adjudicated GEI. He continues to incite people to attack him even as he claims to be the victim. He manipulates and deceives people and has no regard for rules or laws and sees himself as superior to most everyone else, and, therefore, entitled to special considerations that are almost endless.

Justification for any changes in diagnosis:
Observation over two years along with psychological testing has eliminated the diagnosis of bipolar disorder. Matthew becomes enraged and explosive when confronted with people telling him to do things he doesn't want to do. That... is not a manic episode. He is able to focus well and sits for hours working at tedious legal work on a computer. That... is not ADHD. The diagnosis of "unspecified" personality disorder is replaced by narcissistic and antisocial as he evidences a clear disdain for rules, laws, and social norms along with manipulation and deceitfulness, and he also possesses an inflated sense of his own importance with a deep need for attention and admiration and no regard, whatsoever, for others except as tools to obtain his needs. Trichotillomania is added because he plucks his eyebrow out unconsciously when tense.

Barriers to Discharge:
The patient has not changed since admission and does not engage in the treatment program generally as he sees no need to do so. He says he is here "because of a plea agreement." He believes that if he doesn't harm himself or harm others, he should be allowed to go home. As recently as 04/15/22 he has attacked people then claimed to be their victim while calling them his "servants." The risk to repeat the index offense remains unacceptably high as this recent event demonstrates.

Prognosis:
The mixture of personality disorder along with autistic disorder and no motivation to change portends a poor prognosis.

Draft/Final: Final

---

Electronically Signed by: Stephen Morris MD on 04/25/2022 at 01:33 PM MST Author