Ann Hobart, Bar No. 019129
Jordan Kendall, Bar No. 038647
Assistant Attorneys General
Arizona Attorney General's Office
2005 N. Central Avenue
Phoenix, Arizona 85004
Telephone: (602) 542-8347
(602) 542-7687
Facsimile: (602) 542-7644
Ann.Hobart@azag.gov
Jordan.Kendall@azag.gov
EmploymentLaw@azag.gov

Attorneys for Defendants State of Arizona,
Michael R. Sheldon, Aaron Bowen,
Lea'cher Carter, and Unique Coleman

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Matthew Phillip Solan,<br><br>Plaintiff,<br><br>vs.<br><br>The State of Arizona; Jennifer L. Cunico; Michael R. Sheldon; Aaron Bowen, Calvin J. Flowers; Steven Kwoh; Kindra Ochoa, Lea'cher Carter, Unique Coleman; John Does 1-100; Jane Does 1-100; Black Corporations 1-10; and White Entities 1-10,<br><br>Defendants. | Case No: CV24-02061-JJT-DMF<br><br>**RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 113)** |

Defendants State of Arizona, Michael R. Sheldon, Aaron Bowen, Lea'cher Carter, and Unique Coleman hereby respond to Plaintiff's Motion for Summary Judgment (doc. 113) ("Motion"). Defendants support this Response with their Motion for Summary Judgment (doc. 65) ("DMSJ"), Separate Statement of Facts in Support of Motion for Summary Judgment (docs. 66 to 66-4), and Notice of Errata Regarding Exhibits AA and BB to Defendants' Separate Statement of Facts (doc. 125), which are incorporated here

by this reference; Defendants' Controverting Statement of Facts being filed today; and the record in this matter.

As discussed in the DMSJ, the Court should grant summary judgment to Defendants because Solan lacks sufficient evidence to establish a genuine dispute of material fact and Defendants are entitled to judgment as a matter of law on his claims against (1) the State under Title II of the Americans with Disabilities Act ("Title II") and the Rehabilitation Act ("RA"); (2) Bowen, Sheldon, Carter, and Coleman on his false light invasion of privacy claim; and (3) Bowen and Sheldon on his defamation claim. Fed. R. Civ. P. 56(a). It follows that Defendants have, at minimum, sufficient evidence to show that Solan is not entitled to summary judgment on those claims and, therefore, that the Court should deny his Motion.

**A. Solan Lacks Facts and Law to Support His Title II and RA Claims.**

In the operative First Amended Complaint ("FAC"), Solan alleged claims under Title II of the ADA (Count One) and the Rehabilitation Act (Count Four). (Doc. 6 at 31-33, 37.) Both statutes require that people with disabilities have an equal opportunity to participate in and benefit from state and local governments' programs, services, and activities. *See* 42 U.S.C. § 12132 (Title II); 29 U.S.C. § 794 (Rehabilitation Act). The Parties agree that the Court may analyze Count One and Count Four coextensively because "there is no significant difference in the analysis of rights and obligations created by the two Acts." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021) (cited in Doc. 113 at 8).

To prove discrimination under Title II and the RA, Solan must show that (1) he is a "qualified individual with a disability," (2) he was either excluded from participating in or denied the benefits of the Arizona State Hospital's ("ASH") services, programs, or activities, or the State otherwise discriminated against him; and (3) "'such exclusion, denial of benefits, or discrimination was by reason of his disability.'" *Pruett v. Arizona,* 606 F. Supp. 2d 1065, 1072 (D. Ariz. 2010) (quoting *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)). Defendants do not dispute that

Solan is a qualified individual with a disability. (Doc. 113 at 8.) They do dispute, however, that the State ever excluded him from ASH, denied him the benefits of ASH's services, programs, or activities, or otherwise discriminated against him—much less that they did so because of his disability. The State denied Solan's request to have his putative service animal Foxy (and later her clone, Foxy II) live with him while he was committed to ASH for treatment of his mental illness, but it did so for legitimate, non-discriminatory reasons.

**1. The evidence reasonably supports the conclusion that a service animal was not medically necessary and would interfere with Solan's treatment at ASH.**

Regulations interpreting Title II require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). Generally, a public entity must "modify its policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 35.136(a). Based on evidence developed during the particularized assessment of Solan's request during Solan I, however, the State does not believe that these regulations apply here because it does not believe that Foxy II (any more than the original Foxy) is necessary for Solan to participate in and benefit from ASH's services, programs, and activities. On the contrary, the State believes that admitting Foxy II to ASH would interfere with Solan's mental-health treatment, just as the original Foxy would have done.

The State's belief is based largely on the opinions of Solan's treating psychiatrist during Solan I, Dr. Stephen Morris, M.D., which were memorialized in an Affidavit dated April 28, 2022. (Doc. 66-3 at 11-14.) Based on his experience working directly with Solan, and to a reasonable degree of psychiatric certainty, Dr. Morris did not believe that a service animal was "clinically appropriate" for Solan. (*Id.* at 11.)

According to Dr. Morris, "[a] major overriding issue [was] that in a level one psychiatric hospital there is no need for a service animal simply because services are provided by trained people whose job it is to provide these very things as needed to all patients on a regular basis. There is a 24/7 medical staff for that." (*Id.*at 12.)

> Another overriding issue is that [Solan] is [at ASH], in part, to learn how to better get along with <u>people</u> so that he can provide for his own needs without alienating or provoking people or otherwise getting himself into trouble with either the law or with friends or with people who work for him in the future. With this in mind, a beloved therapy animal would only serve to get in the way. He already spends about 4 hours a day alone working on the hospital unit's computer (which he says makes him feel capable and competent), and it wouldn't be helpful for him to spend more time alone with his dog. [Solan] has said he likes animals better than people, and he says that people are "tools" to achieve his needs. This needs a reality check.

(*Id.*)

> Finally, . . . [i]n [Solan]'s case, it's difficult to see medical necessity for a service animal. . . . . [T]he necessary part is for [Solan] to learn how to deal with people in spite of his autistic spectrum disorder. He tells me that he had the dog as a transition object to remove himself from the 'co-dependent' relationship he had with his mother. He feels it has been successful to establish himself in another state attempting to do other things apart from his mother. Now, my suggestion to him is to move even further and drop the transition object. He is realizing he is not as disabled as he thought he was and is realizing capabilities he didn't know he had. A transition object is no longer needed.

(*Id.* at 13.)

When deciding Solan's motion for a preliminary injunction "restraining [the State] from excluding" Foxy II from ASH (doc. 17 at 1), this Court ruled that "Dr. Morris' opinion provides a strong basis to question whether [Solan] needs a service animal to benefit from the mental health services provided by ASH, as Plaintiff claims, or whether having a service animal will instead impede his ability to receive those benefits." (Doc. 31 at 26-27.) Accordingly, it concluded that Solan was unlikely to be able to show, contrary to Dr. Morris' views, that he required Foxy II to live with him at

ASH to be able to benefit from ASH's mental health programs and services. (*Id.* at 27.) On that basis, the Court denied Solan's preliminary injunction motion. (*Id.*)

On Solan's appeal, the Ninth Circuit affirmed, ruling that this Court had appropriately "applied the ADA's regulatory text to consider whether Solan's requested accommodation was 'necessary' to prevent disability discrimination, 28 C.F.R. § 35.130(b)(7)(i)." (Ex. 1 hereto [May 5, 2026, Memorandum Decision in *Solan v. State of Arizona et al.* (9th Cir. Case. No. 25-3769)] at 2.]) The Ninth Circuit's ruling precludes summary judgment for Solan on this issue.

**2. Solan's statements sexualizing Foxy raised justifiable concerns that allowing Foxy II to live at ASH risked allowing Solan to engage in countertherapeutic behavior that would fundamentally alter the nation of ASH's mental health services.**

As an alternative basis for denying Solan's preliminary judgment motion, this Court ruled that, even if he could prove that Foxy II was specifically trained to complete tasks that were necessary for him to benefit from ASH's mental health programs and services, Solan could not prevail on his ADA claim "if the State [could] show that permitting Foxy II to stay with him will 'fundamentally alter the nature of the service, program or activity' ASH provides. 28 CFR §130(b)(7)(i)." (Doc. 31 at 27.) The Court further ruled that "the State's documented concerns about [Solan's] suspected sexual intentions toward Foxy in the 2022 Particularized Assessment and reiterated in the July 2024 denial letter appear sufficient, on their own, to make that showing." (*Id.*)

In affirming denial of Solan's preliminary injunction motion, the Ninth Circuit ruled that "the district court properly relied on Solan's alleged out-of-court statements in finding that his requested accommodation would 'fundamentally alter' the nature of Arizona's services and thus excuse Arizona from granting his request. *See* 28 C.F.R. §35.130(a)(3), (b)(7)(i)." (Ex. 1 at 3.) Solan argues that fundamental alteration is an affirmative defense that Defendants did not "preserve" in their Answer. (Doc. 113 at 9.) But whether or not Defendants explicitly pled "fundamental alteration," this Court ruled

that the affirmative defense was available to them. And the Ninth Circuit's affirmance precludes summary judgment for Solan on this issue as well.

**B. Solan Lacks Facts to Support His False Light Invasion of Privacy Claims.**

In Count Eleven of the FAC, Solan alleged a claim for false light invasion of privacy against Bowen, Sheldon, Carter, and Coleman for "falsely" accusing him of "engaging or planning to engage in, inappropriate and illegal sexual activities with Foxy." (Doc. 6 at 50, ¶¶ 279-80.) Solan claimed that these statements were "made to or in the presence of ASH staff and/or patients." (*Id.* ¶ 280.)

To prove this claim, Solan must show that (1) any one of the individual Defendants "with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing [Solan] in a false light, and (2) the false light in which [Solan] was placed would be highly offensive to a reasonable person in [Solan's] position." *Spears v. Arizona Bd. of Regents*, 372 F. Supp. 3d 893, 922 (D. Ariz. 2019). In this context, "publicity" "'means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded substantially certain to become one of public knowledge.'" *Hart v. Seven Resorts, Inc.,* 190 Ariz. 272, 280 (Ct. App. 1997) (quoting Restatement (Second) of Torts § 652D cmt. a.). "'[I]t is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.'" *Id.* Solan cannot prove these elements for any one of the individual Defendants.

***Lea'Cher Carter and Unique Coleman***

Solan bases his false light claim against Carter and Coleman on the allegation that "[o]n numerous occasions throughout 2024," each "made various lewd and defamatory statements about Plaintiff and Foxy, in Plaintiff's presence and in front of other ASH patients, including 'you eat dog p***y' and 'you eat dog a**.'" (Doc. 6, ¶ 137.) Solan also alleges that, "[o]n or about May 22, 2024, Defendant Carter openly made these

statements and also declared that Plaintiff's 'd*** is so small you need a magnifying glass to see it.'" (Doc. 6, ¶ 138.)

As discussed in the DMSJ, Solan has no evidence beyond his own allegations that Carter and Coleman ever made such statements, much less gave them "publicity" sufficient to establish false light invasion of privacy liability. In response to Solan's requests for admissions, Carter and Coleman both denied having done so. (Doc. 66-4 at 9-10 [Carter]; Doc. 66-4 at 18-19 [Coleman].) And at his deposition, Solan effectively conceded that he had no witnesses to corroborate his version of events. (Doc. 66 at 14, ¶ 53 n.2.)

On August 26, 2024, Solan filed a grievance with the Arizona Health Care Cost Containment System ("AHCCCS") complaining that Carter had verbally harassed him for months before pressing allegedly false charges that he threw hot coffee in her face and threatened to kill her on May 22, 2024. (Doc. 66-2 at 46, ¶ 12.) Specifically, Solan accused Carter of "telling [him] in front of other patients [he was] 'nasty,' that [he] 'eat[s] dog ass,' that [he] 'eat[s] dog pussy,' and that his 'dick is so small you need a magnifying glass to see it.'" (Doc. 66-2 at 46, ¶ 13.)[1]

AHCCCS referred Solan's grievance concerning Carter to ASH for investigation. (Doc. 66-2 at 47, ¶ 14.) The ASH investigator interviewed Solan and asked him if there were any witnesses to Carter's alleged verbal abuse. Solan responded, "'I'm sure there were, but since this happened along [sic] time ago no one is going to remember.'" (*Id.*) At his deposition, Solan affirmed that this quote "sounds pretty accurate." (Doc. 66-2 at 8.) In support of the present Motion (months after the close of discovery), Solan submitted a declaration of a fellow ASH patient who claims that "[o]ne time" Carter told him that "Matthew Solan fucks dogs." (Doc. 114 at 68.) Notably, the declarant did not declare that Carter made that statement in front of others. Accordingly, only Solan can testify to facts that might support a false light invasion of privacy claim. Because

[1] Unlike Carter, ASH has no record that Solan filed any sort of complaint against Coleman based on allegations that she made any such statements. (Doc. 66-2 at 47, ¶ 16.)

Defendants have substantial evidence controverting those facts, the Court should deny Solan's Motion as to them.

***Aaron Bowen and Michael E. Sheldon***

Solan based his false light invasion of privacy claim against Bowen on his letter to Solan explaining why, after a particularized assessment, the State was denying his request to have Foxy live with him at ASH. (Doc. 6, ¶ 289.) He based his false light claim against Sheldon on the letter Sheldon sent to him explaining why the State was denying his request to have Foxy II live with him at ASH. (*Id.* ¶ 290.) Solan asserts that, in both letters, Bowen and Sheldon knowingly implicated him in "bestiality and animal abuse." (*Id.* ¶¶ 289, 290.) But Solan has not produced any admissible evidence that either Bowen or Sheldon publicized the letter. Instead, he relies on the following conclusory allegations: "ASH is a closed institutional community; Bowen and Sheldon knew or reasonably should have known that scandalous statements . . . would quickly spread through the ASH rumor mill and become public knowledge among patients and staff. That is exactly what happened here." (Doc. 113 at 17.) Solan's only support for these conclusions is his own declaration. (Doc. 114 at 32-33, ¶ 145.) Because the declaration "provides no indication how [Solan] knows [these conclusions] to be true," the Court may disregard it. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5 (9th Cir. 2002). At a minimum, Carter's and Coleman's denials that they made the statements that Solan alleges they made, much less that they were induced to make those statements based on information in Bowen's and Sheldon's letters, creates a triable issue that precludes summary judgment for Solan's false light invasion of privacy claim against Bowen and Sheldon—as well as against Carter and Coleman.

**C. Solan Lacks Facts to Support His Defamation Claims.**

Solan also bases his defamation claim on Bowen's and Sheldon's letters denying his requests to have Foxy and then Foxy II live with him at ASH. (Doc. 6, ¶¶ 289, 290.) "To be defamatory, a publication must be false and must bring the defamed person into disrepute, contempt or ridicule, or must impeach plaintiff's honesty, integrity, virtue or

reputation." *Breeser v. Menta Group, Inc.*, 934 F. Supp. 2d 1150, 1160-61 (D. Ariz. 2013) (quoting *Godbehere v. Phoenix Newspapers, Inc.,* 783 P.2d 781,787 (Ariz. 1989).) To be liable for defamation against a private individual like Solan, a defendant must publish a false and defamatory communication "(a) know[ing] that the statement is false and it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them." Restatement (Second) of Torts § 580(B) (1977).[2] In the FAC, Solan assertion that Bowen and Sheldon negligently published letters that falsely implicated him in "bestiality and animal abuse." (Doc. 6, ¶¶ 289, 290.) In the Motion, Solan wildly asserts that Bowen and Sheldon, "in no uncertain terms, accused [Plaintiff] of raping his service dog." (Doc. 113 at 16.)

Bowen and Sheldon may easily dispute the second assertion by simply referencing the letters, which make no such accusation. (Doc. 66-3 at 2-7 [Particularized Assessment Letter]; Doc. 66-4 at 22 [Request for Service Animal Denial Letter].) As for the first assertion, the Ninth Circuit has affirmed that "in finding that [Solan's] requested accommodation would 'fundamentally alter' the nature of Arizona's services and thus excuse Arizona from granting his request," this Court properly considered the progress notes and incident reports on which Defendants relied as a basis for denying Solan's request to have Foxy or her clone live with him at ASH. (Ex. 1 at 3.) The Ninth Circuit's ruling defeats Solan's argument that Bowen and Sheldon negligently or recklessly disregarded whether the progress notes and incident reports upon which they relied accurately recorded Solan's statements about Foxy. Accordingly, this Court should deny him summary judgment on his defamation claims.

## Conclusion

For the foregoing reasons, as well as for those set forth in Defendants' Motion for Summary Judgment, Defendants respectfully request that deny Plaintiff's Motion for Summary Judgment (doc. 13).

[2] "Arizona courts follow the *Restatement (Second) of Torts* absent authority to the contrary." *Koepnick v. Sears Roebuck & Co.*, 762 P.2d 609, 617 (Ariz. App. 1988).

Respectfully submitted this 28th day of September, 2025.

Arizona Attorney General's Office

/s/ Ann Hobart
Ann Hobart
Jordan Kendall
Assistant Attorneys General
Attorneys for Defendants

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing this 28th day of September, 2025.

COPY mailed and emailed this 29th day of September, 2025, to:

Matthew P. Solan
2121 E. Valencia Road
Williams, AZ 86046
legal@fox-ranch.com
Plaintiff

COPY of the foregoing mailed this 29th day of September, 2025, to:

The Honorable Deborah M. Fine
U.S. District Court, Suite 321
401 W. Washington Street, SPC 15
Phoenix, AZ 85003-2120

/s/ Deb Sawyer